# Attachment 2
# Appendix of Exhibits

# Volume III

# TABLE OF EXHIBITS

| | |
|---|---|
| Exhibit 229 | App. 391 |
| Exhibit 231 | App. 425 |
| Exhibit 232 | App. 428 |
| Exhibit 233 | App. 430 |
| Exhibit 234 | App. 432 |
| Exhibit 235 | App. 433 |
| Exhibit 237 | App. 439 |
| Exhibit 239 | App. 441 |
| Exhibit 241 | App. 446 |
| Exhibit 242 | App. 449 |
| Exhibit 245 | App. 450 |
| Exhibit 249 | App. 462 |
| Exhibit 253 | App. 470 |
| Exhibit 255 | App. 476 |
| Exhibit 256 | App. 479 |
| Exhibit 258 | App. 490 |
| Exhibit 259 | App. 501 |
| Exhibit 260 | App. 502 |
| Exhibit 261 | App. 507 |
| Exhibit 262 | App. 509 |
| Exhibit 264 | App. 511 |
| Exhibit 265-A | App. 520 |

| Exhibit 265-B | App. 522 |
|---|---|
| Exhibit 266 | App. 526 |
| Exhibit 268 | App. 527 |
| Exhibit 269 | App. 529 |
| Exhibit 270 | App. 537 |
| Exhibit 272 | App. 540 |
| Exhibit 273 | App. 542 |
| Exhibit 275 | App. 555 |
| Exhibit 276 | App. 556 |
| Exhibit 280 | App. 557 |
| Exhibit 346 | App. 559 |
| Exhibit 347-A | App. 561 |
| Exhibit 347-B | App. 563 |

STATE OF MICHIGAN

THIRTIETH JUDICIAL CIRCUIT COURT (INGHAM COUNTY)

FAMILY DIVISION

In the matter of:

BRAELYNN KNOBLAUCH and MADILYNN BALDWIN,

File No. 76442-1/2-NA

Minor Children.

_____/

EXCERPT OF PROCEEDINGS
TESTIMONY OF DOMINIQUE DELAGNES

BEFORE THE HONORABLE LISA MCCORMICK, CIRCUIT JUDGE

Lansing, Michigan – Friday, February 5, 2021

**APPEARANCES:**

| | |
|---|---|
| For the People: | MS. LAURIE FREED (P61255)<br>Ingham County Prosecutor's Office<br>303 West Kalamazoo Street<br>Lansing, Michigan 48933<br>517-483-6108 |
| For the Respondent Mother: | MR. GREGORY CROCKETT (P45289)<br>Crockett Law Offices<br>2196 Commons Parkway<br>Okemos, Michigan 48864<br>(517) 349-9090 |
| For the Respondent Father: | MS. DENISE LAFAVE SMITH (P65521)<br>LaFave Smith Center for Family Law<br>1918 East Michigan Avenue<br>Lansing, Michigan 48912<br>(517) 485-3595 |
| Guardian Ad Litem: | MR. MICHAEL STAAKE (P69707)<br>230 North Sycamore Street, Suite E<br>Lansing, Michigan 48933<br>(517) 484-1534 |
| Recorded & Transcribed By: | Lauren Vela, CER 9341<br>Certified Electronic Recorder<br>(517) 483-6429 |

**CONFIDENTIAL**

aver000533

## TABLE OF CONTENTS

WITNESSES: PEOPLE                                                    PAGE

DOMINIQUE DELAGNES

    Direct Examination by Ms. Freed                          3
    Cross-Examination by Mr. Staake                         11
    Cross-Examination by Mr. Crockett                       12
    Cross-Examination by Mr. Crockett, continuing           29
    Cross-Examination by Ms. Lafave Smith                   32


EXHIBITS:                                              MARKED    ADMITTED

NONE

OFFICIAL COURT REPORTER/RECORDER
**30TH JUDICIAL CIRCUIT COURT**
LANSING, MICHIGAN

2

App. 392
**CONFIDENTIAL**

aver000534

| 1 | Lansing, Michigan |
|---|---|
| 2 | Friday, February 5, 2021 - 2:58 p.m. |
| 3 | THE COURT: All right, Ms. Freed, who's next? |
| 4 | MS. FREED: I would call Dominique Delagnes. |
| 5 | THE COURT: All right. I'm gonna bring her in |
| 6 | from the meeting -- or, I'm sorry, from the waiting room. |
| 7 | All right, Ms. -- is it Ms. Dela -- Delagnes? |
| 8 | MS. DELAGNES: It's Delagnes. |
| 9 | THE COURT: All right. All right, Ms. Delagnes, |
| 10 | can you raise your right hand? |
| 11 | Do you swear or affirm the testimony you're about |
| 12 | to give today will be the truth, the whole truth, and |
| 13 | nothing but the truth under penalty of perjury? |
| 14 | MS. DELAGNES: I do. |
| 15 | DOMINIQUE DELAGNES |
| 16 | (At 2:59 p.m., called by Ms. Freed and sworn by |
| 17 | the Court, testified as follows) |
| 18 | THE COURT: All right. Please state your full |
| 19 | name and spell your first and last name for the record. |
| 20 | THE WITNESS: Sure. It's Dominique Delagnes, and |
| 21 | it's D-o-m-i-n-i-q-u-e. Delagnes, D-e-l-a-g-n-e-s. |
| 22 | THE COURT: Go ahead, Ms. Freed. |
| 23 | MS. FREED: Thank you. |
| 24 | DIRECT EXAMINATION |
| 25 | BY MS. FREED: |

CONFIDENTIAL                                        aver000535

| | | |
|---|---|---|
| 1 | Q. | Ms. Delagnes, where are you employed? |
| 2 | A. | Averhealth. |
| 3 | Q. | And in what capacity? |
| 4 | A. | I'm our chief operating officer. |
| 5 | Q. | And how long have you been the chief operating officer? |
| 6 | A. | Since January of 2014. |
| 7 | Q. | Thank you. While being the chief operating officer, have |
| 8 | | concerns been brought to Averhealth that there have been |
| 9 | | some concerns in regards to the accuracy of drug testing? |
| 10 | A. | There have. |
| 11 | Q. | Can you give the Court an idea of what the concerns were and |
| 12 | | what happened? |
| 13 | A. | Sure. So we have an employee that was employed for us for |
| 14 | | less than six weeks, who was disgruntled, and upon her |
| 15 | | departure had made claims that Averhealth had some quality |
| 16 | | issues. And since that time, you know, they've been |
| 17 | | completely not substantiated, and we've had other |
| 18 | | independent individuals look at our processes and basically |
| 19 | | not come to the same conclusion that there were any quality |
| 20 | | issues with the testing that is being conducted by |
| 21 | | Averhealth. |
| 22 | Q. | Okay. Now, the State Court Administrator's Office came out |
| 23 | | with a memo to the court systems that there was, in 2019, an |
| 24 | | employee error that led to 13 false positive test results. |
| 25 | | Can you talk about that a little bit, please? |

App. 394
**CONFIDENTIAL**

aver000536

| 1 | A. | Sure. There -- back in 2019, there was a human error as we |
| 2 | | were -- as the individual was loading a tray of specimens |
| 3 | | for confirmation testing, and when it was identified, |
| 4 | | obviously we looked into it. We identified the root cause |
| 5 | | of the issue that had occurred. We corrected all of the |
| 6 | | test results so the appropriate results were there. |
| 7 | | In addition to that, we added two additional |
| 8 | | checkpoints. So, you know, the samples were checked as they |
| 9 | | were loaded. They're also checked twice after they come off |
| 10 | | as well, because that was the root cause -- that we realized |
| 11 | | there was a human error loading that -- to prevent that |
| 12 | | error from occurring in the future. |
| 13 | Q. | Okay. Can I back you up a little bit? Can you explain the |
| 14 | | process first as to what happens in the laboratory? |
| 15 | A. | Absolutely. So, obviously, the -- do you want me to start |
| 16 | | from collection? The laboratory -- |
| 17 | Q. | Yes, please. |
| 18 | A. | Okay. |
| 19 | Q. | Yes, please. |
| 20 | A. | So, samples are collected during the collection process. |
| 21 | | They are -- tamper tape is put over the top and down the |
| 22 | | sides of it depending upon how that collection is done. If |
| 23 | | it is done in a brick-and-mortar TPA, there's also a barcode |
| 24 | | that is placed for that individual on the sample tube that |
| 25 | | is shown to that individual before the collection happens. |

CONFIDENTIAL

aver000537

1    If it is being collected out in the field, there's

2    a two-ply form that's used, and on that two-ply form is a

3    specimen identifier that the -- either the caseworker or the

4    -- whosever collecting that collection will keep one copy of

5    it, and another of that copy comes to the laboratory.

6    When samples are arrived at the laboratory,

7    they're opened.  They're inspected to ensure that that

8    tamper tape is intact, and then the testing process begins.

9    Throughout the entire process, all the individuals that

10   handle the sample -- there is a chain of custody.  We know

11   who touched the sample throughout that entire process, and

12   only one sample is handled at a time at each step through

13   the process.

14   For the -- the testing, it is done by LC-MS-MS,

15   which is liquid chromatography tandem mass spectrometry.

16   And so the samples are prepped and then they get loaded onto

17   an instrument that then tests the sample.  The -- it's --

18   it's first and second reviewed and reported out.  So during

19   that process of loading the tray -- we do batches of 40

20   samples, so they're sequenced on a tray.  You can imagine

21   multiple spots to load those samples.

22   There was an individual -- in loading them, they

23   put one of the samples -- they skipped a spot and put it in

24   the next slot, and so all of those sequentially behind it

25   ended up in a different spot based on what accession number

CONFIDENTIAL

aver000538

| 1 | | was in the computer versus what sample was actually injected. |
| 2 | | Those were off. |
| 3 | Q. | I'm gonna stop for just a minute. Okay, so how was that |
| 4 | | identified that that had happened? |
| 5 | A. | So, we had an individual that had concern about test |
| 6 | | results, and so we were asked to retest that specific sample |
| 7 | | again. And in doing that -- that retest -- when we looked |
| 8 | | at those results when -- when they were not consistent with |
| 9 | | the original result, we dug into exactly what happened in |
| 10 | | that batch. And because of that root cause chain of |
| 11 | | custody, we were able to backtrack and determine what had |
| 12 | | happened. |
| 13 | Q. | What procedures were put in place to prevent this from |
| 14 | | happening again? |
| 15 | A. | So, when the samples are loaded they actually have a small |
| 16 | | little barcode that gets wanded into the computer and then |
| 17 | | gets placed in that tray. So there is an individual who |
| 18 | | loads them, and then also there's two individuals -- after |
| 19 | | those samples are run, there's another verification step, |
| 20 | | and then there's a third step. |
| 21 | | So instead of just having one individual check |
| 22 | | that sequence, we now have three different people that check |
| 23 | | that sequence to prevent that error from occurring in the |
| 24 | | future. |
| 25 | Q. | Thank you. So this was more of a batch problem than an |

**CONFIDENTIAL**

aver000539

| 1 | | individual test result that was a false positive; is that my |
| 2 | | understanding? |
| 3 | | MR. CROCKETT:  I would object to leading there. |
| 4 | | THE COURT:  Well, I think she's just trying to |
| 5 | | follow up with confirmation.  I mean, I don't think it's |
| 6 | | leading.  Go ahead, Ms. Freed.  You can ask the question. |
| 7 | BY MS. FREED: | |
| 8 | Q. | So the -- the example that you've just been testifying to in |
| 9 | | regards to this tray, that was more of a batch problem than |
| 10 | | a false positive on one test; is that my understanding? |
| 11 | A. | That is correct, yes. |
| 12 | Q. | Okay.  And since this report came out from the State Court |
| 13 | | Administrator's Office, have there been any other problems |
| 14 | | with false positives? |
| 15 | A. | There have not been any problems with false positives.  I'd |
| 16 | | like to -- can I clarify just -- I guess sometimes -- |
| 17 | Q. | Yes, please. |
| 18 | A. | -- false positives are misinterpreted.  So, through our |
| 19 | | testing processes, you know, some of the things that can |
| 20 | | happen.  The question -- and Dr. Glenn has done quite a bit |
| 21 | | of testimony on this based on where that positive test |
| 22 | | result comes from. |
| 23 | | And there's -- there's been misunderstanding that |
| 24 | | positives -- and Averhealth is following what the MDHHS |
| 25 | | contract has stipulated as far as what those cutoff levels |

**CONFIDENTIAL**                    aver000540

1  need to be, and so there's been questions around that

2  positive -- where did that come from. And so it's not that

3  the test results -- the test results analytically are

4  positive. Where did that actual drug for that positive

5  result happen to come from.

6  Q. Okay. Now, the State Court Administrator's memo indicated

7  there was a subsequent false positive in a court hearing.

8  Do you know anything about that?

9  A. I believe that what it was is -- actually was not a false

10  positive that occurred. That there was a sample that

11  originally was tested, and then when it was retested several

12  months later, we -- there was a circumstance where the

13  actual specimen reconfirmed, but there was a computer error

14  that caused the overall result to indicate as negative. The

15  actual drug indicated as positive -- the overall drug.

16  We had done a -- an upgrade to our software, so

17  the interpretation of that test result on that computer

18  software was not accurate. It actually applied our standard

19  cutoff and not our custom Michigan cutoff, and so we

20  identified that and corrected that test result so it

21  accurately reflected the result. It actually was not a

22  false positive.

23  Q. Thank you. Now, we're asking the Court to rely on these

24  results from Averhealth. What are the standards that you

25  use to do the testing?

CONFIDENTIAL

aver000541

| | |
|---|---|
| 1 | A. | So that's a broad question, but we are both a CLIA and a
| 2 | | CAP-FDT certified laboratory. We have processes in place.
| 3 | | Before reporting any sample, it is reported out. We run
| 4 | | quality control materials both at the beginning and at the
| 5 | | end of every single batch. And in addition to testing each
| 6 | | particular one, we actually add in what's called an
| 7 | | "internal standard" that is similar molecular structure but
| 8 | | slightly off of that.
| 9 | | And so all of these quality control checks to
| 10 | | ensure QC at the beginning of the sample plus all the
| 11 | | samples run, the QC at the end of the material, and then
| 12 | | also the internal standard that's added that allows us to be
| 13 | | able to testify forensically that those test results are
| 14 | | accurate.
| 15 | Q. | Okay. And, in this case, the -- Averhealth has provided the
| 16 | | documents in regards to Ms. Faith Baldwin for her testing
| 17 | | and the positive screens. Can you testify or can you
| 18 | | explain whether those could be false positives?
| 19 | A. | I'm not a toxicologist, so you start getting outside of my
| 20 | | realm. Hopefully, Dr. Schwilke could have done that. I can
| 21 | | tell you that -- I know looking at those test results that -
| 22 | | - and I've not looked at the specific batches, but, you
| 23 | | know, looking at those, there is no reason to believe that
| 24 | | those are false positives.
| 25 | | MS. FREED: Thank you. I have nothing further of

App. 400

**CONFIDENTIAL**

aver000542

| | |
|---|---|
| 1 | this witness. |
| 2 | THE COURT: Mr. Staake? |
| 3 | MR. STAAKE: Thank you. |
| 4 | CROSS-EXAMINATION |
| 5 | BY MR. STAAKE: |
| 6 | Q. Ms. Delagnes, if you know, approximately how many -- how |
| 7 | many samples does Averhealth deal with in a given week -- an |
| 8 | average week? How many samples are actually tested? |
| 9 | A. We test about 7,000 to 8,000 a day, so I don't know if we |
| 10 | can do the math. |
| 11 | Q. And, Ms. Delagnes, for the -- those three events -- you |
| 12 | indicated the disgruntled employee, the batch -- there was |
| 13 | an issue with sequence -- and then this third issue that you |
| 14 | said was not technically a false positive, was there |
| 15 | anything else in 2020 that rose to the level of being a |
| 16 | concern on any of -- on a level similar to any of those |
| 17 | other instances? |
| 18 | A. Not that I'm aware of, no. |
| 19 | Q. Do you know if there's pending litigation about improper |
| 20 | tests for Averhealth at this point that would give you pause |
| 21 | about whether a specific results in this case might be |
| 22 | incorrect? |
| 23 | A. No, there's not. |
| 24 | MR. STAAKE: Your Honor, I have no additional |
| 25 | questions. |

| | |
|---|---|
| 1 | THE COURT:  Ms. Lafave Smith, any questions? |
| 2 | MS. LAFAVE SMITH:  I have no questions.  Thank |
| 3 | you. |
| 4 | THE COURT:  Mr. Crockett. |
| 5 | CROSS-EXAMINATION |
| 6 | BY MR. CROCKETT: |
| 7 | Q.  Now, the memorandum that the prosecutor was reading to you |
| 8 | goes on to say that in addition -- I'm quoting now. |
| 9 | "In addition, we have been informed that |
| 10 | allegations have been raised regarding Averhealth |
| 11 | employee practices not complying with the company's |
| 12 | accreditation standards." |
| 13 | What do you say to that? |
| 14 | A.  There has been nothing that has said that we are not |
| 15 | following our standards.  We do -- our employees do follow |
| 16 | our SOP's on a consistent basis. |
| 17 | Q.  So you're saying you disagree with the State Court |
| 18 | Administrator of the Supreme Court, correct? |
| 19 | A.  I'm saying that based on the information that was alleged by |
| 20 | that individual, that nothing has corroborated that to be |
| 21 | true. |
| 22 | Q.  That was the individual from 2019? |
| 23 | A.  No.  That individual was from 2020. |
| 24 | Q.  Have you sent any information to DHHS regarding that? |
| 25 | A.  We've not been asked to send anything to DHH -- I'm not sure |

CONFIDENTIAL

aver000544

| | |
|---|---|
| 1 | I understand your question. |
| 2 | Q. So, in the year 2020, did the state of Michigan investigate |
| 3 | anything about false positives? |
| 4 | A. They are currently going through an independent investigation |
| 5 | that has not been concluded yet. |
| 6 | THE COURT: Who's "they," ma'am? |
| 7 | MR. CROCKETT: Are you -- |
| 8 | THE WITNESS: The -- MDHHS. |
| 9 | THE COURT: Oh, okay. |
| 10 | THE WITNESS: The contracting officer. |
| 11 | THE COURT: All right. |
| 12 | BY MR. CROCKETT: |
| 13 | Q. So you're under investigation at this time, correct? |
| 14 | A. Correct. |
| 15 | Q. Now, you -- |
| 16 | THE COURT: Well, wait a minute. Wait, wait. Mr. |
| 17 | Crockett, I just wanna be clear on this. Is Averhealth |
| 18 | under investigation, or is DHHS doing their own independent |
| 19 | investigation? |
| 20 | THE WITNESS: We are not under investigation. |
| 21 | DHHS is doing their own independent investigation. |
| 22 | THE COURT: All right, I just wanted to clarify. |
| 23 | Okay. Go ahead, Mr. Crockett. |
| 24 | BY MR. CROCKETT: |
| 25 | Q. As far as you know, is DHHS investigating your company? |

CONFIDENTIAL

aver000545

| | | |
|---|---|---|
| 1 | A. | They are doing their own independent review to ensure that |
| 2 | | we are producing accurate test results. |
| 3 | Q. | Do you know why they're doing that? |
| 4 | A. | I don't know specifically why they're choosing to do that. |
| 5 | | I think just to put to rest the allegations that have been |
| 6 | | made. |
| 7 | Q. | What's the scope of their investigation? |
| 8 | A. | They've already had several independent people go through |
| 9 | | and look at what our practices are, and there was an |
| 10 | | individual from the Michigan State Police. There was |
| 11 | | several other individuals from different entities through |
| 12 | | Michigan -- I'm not sure of all the details -- who've looked |
| 13 | | through at our polices and procedures, and all of them have |
| 14 | | indicated that what we're doing is industry standard and |
| 15 | | good practices. In addition to that, they -- |
| 16 | Q. | So -- excuse me, ma'am. Who are these people -- |
| 17 | | THE COURT: Well, Mr. Crockett -- |
| 18 | | MR. CROCKETT: -- you're talking about? |
| 19 | | THE COURT: Mr. Crockett, I think she's entitled |
| 20 | | to finish her answer, and then you can certainly follow up, |
| 21 | | but she was still answering her question. Go ahead, ma'am, |
| 22 | | if you want to finish. |
| 23 | | THE WITNESS: Sure. Since I'm not the one doing |
| 24 | | the investigation, I apologize, I don't have the names and |
| 25 | | the details of all of those individuals. Like I said, I do |

CONFIDENTIAL

aver000546

1  know that they had somebody from Michigan State Police.

2  There was also a gentleman who is well-known in

3  the treatment court setting -- his name is Paul Kerry -- who

4  also looked at the practices, and then there was a third

5  individual that I don't remember the name of offhand who

6  looked at what our testing processes are, and have all come

7  to conclusion that what we're doing are valid forensically

8  defensible processes.

9  BY MR. CROCKETT:

10 Q.  Now, you just stated what somebody's conclusions are, but

11     you also stated that the investigation's not over yet.

12 A.  Correct.

13 Q.  Which one is it?  Which one is true?

14 A.  So they had independent individuals look at it.  There are

15     some other items that they're doing.  Unfortunately, I

16     didn't get an opportunity to finish what I was trying to

17     say.

18     And they are -- in addition to that, they have had

19     two independent individuals come and spend two days at our

20     laboratory to do their own investigation as well to ensure

21     that our practices are valid, and they are putting together

22     a report that they're giving back to Michigan.

23 Q.  Now, you've worked for Avertest for -- since when?  2014?

24 A.  That is correct.

25 Q.  All right.  So you'd be aware of various other lawsuits

CONFIDENTIAL
aver000547

| 1 | | against Avertech, wouldn't you? |
| 2 | A. | Yes. |
| 3 | Q. | All right. Such as Mack versus Avertest, a 2019 case in |
| 4 | | Pennsylvania? |
| 5 | A. | Yes, I am. |
| 6 | Q. | All right. And that was somebody who sued your company |
| 7 | | because of a false positive, correct? |
| 8 | A. | That is not entirely correct, no. That's what they're |
| 9 | | alleging. |
| 10 | Q. | That's what they're alleging. And you're saying that that |
| 11 | | didn't happen, so it's your company versus the plaintiff, |
| 12 | | right? |
| 13 | A. | So, a little bit different. The test results that we |
| 14 | | provide for Michigan DHHS are all confirmatory test results |
| 15 | | that are done by LC-MS-MS prior to being reported. |
| 16 | | In this particular case, it was -- that particular |
| 17 | | contract had us doing an immunoassay screen and then the |
| 18 | | confirmation tests are done on request by the probation |
| 19 | | officer, and the probation officer chose to take action on |
| 20 | | the individual prior to conducting that confirmatory test. |
| 21 | Q. | Now, have you -- has Avertech been sued by other persons |
| 22 | | over false positives? |
| 23 | A. | We have not. |
| 24 | Q. | Now, you described the laboratory procedures, and we heard |
| 25 | | quite a bit about that, but these procedures are dependent |

CONFIDENTIAL

aver000548

| | | |
|---|---|---|
| 1 | | upon a proper sample being collected. Would that be |
| 2 | | accurate to say? |
| 3 | A. | Yes, that would. |
| 4 | Q. | Okay. Now, the people who take the samples -- what kind of |
| 5 | | education do they have? |
| 6 | A. | In this particular case -- I've not looked at these, but I |
| 7 | | would need to take a look at it. I know in certain |
| 8 | | circumstances it's actually the caseworkers who do |
| 9 | | collections, and in other circumstances it is -- they're |
| 10 | | being done at a collection site or location. |
| 11 | Q. | Now, in this case, it was done at a collection site located |
| 12 | | in Jackson, Michigan. Are you familiar with -- with the |
| 13 | | people who work there? |
| 14 | A. | I am not. |
| 15 | Q. | Would it be common for them to have anything more than a GED |
| 16 | | or a high school diploma? |
| 17 | A. | I'm not sure. I'm not -- I do not know specifically who -- |
| 18 | | who are doing the collections there. |
| 19 | Q. | Do you require people to have more than a high school degree |
| 20 | | or a GED to do collections? |
| 21 | A. | We do not. |
| 22 | | THE COURT: Well, Mr. -- Mr. Crockett, what are we |
| 23 | | talking about here? Are we talking about ADAM? |
| 24 | | MR. CROCKETT: I'm talking about -- |
| 25 | | THE COURT: Are you talking about the -- |

OFFICIAL COURT REPORTER/RECORDER
**30TH JUDICIAL CIRCUIT COURT**
LANSING, MICHIGAN

17

App. 407
**CONFIDENTIAL**

aver000549

| | |
|---|---|
| 1 | MR. CROCKETT: -- the collection site. |
| 2 | THE COURT: All right. Well, is Averhealth in |
| 3 | control of ADAM's employees? Ma'am, are you in charge of |
| 4 | ADAM's employees? Do you have any control over the |
| 5 | collection site? |
| 6 | THE WITNESS: They're a subcontracted vendor of |
| 7 | ours. |
| 8 | THE COURT: All right. |
| 9 | THE WITNESS: They do go through a very thorough |
| 10 | background check process before they're able to conduct any |
| 11 | collections for MDHHS. |
| 12 | THE COURT: All right. |
| 13 | THE WITNESS: They're not directly Averhealth |
| 14 | employees. |
| 15 | THE COURT: All right, Mr. Crockett. Go ahead. |
| 16 | BY MR. CROCKETT: |
| 17 | Q. So as far as their work hours such -- such as that, you |
| 18 | haven't checked on any of that because it's a subcontractor; |
| 19 | would that be true? |
| 20 | A. I'm not quite sure what you mean by their work hours. |
| 21 | Q. Well, are they working eight hours a day, ten hours a day, |
| 22 | four hours a day? |
| 23 | A. I am not sure. |
| 24 | Q. Okay. You don't know what they're paid either, do you? |
| 25 | A. I do not. |

**CONFIDENTIAL**                    aver000550

| | | |
|---|---|---|
| 1 | Q. | Now, these samples have to be sent from Jackson to your |
| 2 | | laboratory, and that's located where? In Illinois, is it? |
| 3 | A. | It's in St. Louis, Missouri. |
| 4 | Q. | St. Louis. Okay. Are any of these samples damaged in |
| 5 | | transit? |
| 6 | A. | It does happen on occasion. Anything that's damaged in |
| 7 | | transit is projected and not tested. |
| 8 | Q. | Do you know that that's always true? |
| 9 | A. | Yes. |
| 10 | Q. | How often are cross-tests done to make sure that a sample is |
| 11 | | accurate? |
| 12 | A. | I'm not sure I understand the question by "cross-tests." |
| 13 | Q. | Do you ever check your equipment to make sure it's properly |
| 14 | | calibrated? |
| 15 | A. | We do. That's what the QC process would be. That's done to |
| 16 | | ensure the quality of control material that's gonna be at |
| 17 | | the beginning and the end of each confirmation batch ensures |
| 18 | | that the instrumentation is running appropriately. |
| 19 | Q. | Have you worked for other states other than Michigan? |
| 20 | A. | Have I work -- I don't work for the state of Michigan. |
| 21 | Q. | I'm sorry. By "I," I mean does your employer, Avertest -- |
| 22 | | do they have contracts with other government agencies other |
| 23 | | than Michigan? |
| 24 | A. | We do. We currently provide services to over 30 states |
| 25 | | across the United States. |

**CONFIDENTIAL**

aver000551

| | | |
|---|---|---|
| 1 | Q. | Have there been questions regarding false positives with any |
| 2 | | of those states? |
| 3 | A. | There have not. |
| 4 | Q. | How would you know that? |
| 5 | A. | They would alert us to let us know that they have concerns |
| 6 | | about false positives. |
| 7 | Q. | And no one has had any -- any concerns other than that |
| 8 | | lawsuit out of Pennsylvania and the state of Michigan? |
| 9 | A. | That is correct. |

10        MR. CROCKETT: That's all the questions I have.

11        THE COURT: All right. So I have a couple

12   questions. You had said in your testimony that the Michigan

13   cutoff and the standard cutoff are different. Can you help

14   me understand the different cutoffs; why Michigan is

15   different?

16        THE WITNESS: Sure. And, actually, Michigan

17   changed on December 1st of 2020. So, prior to Averhealth

18   taking over, it's my understanding that the prior provider

19   that was providing drug testing had provided education about

20   setting cutoff levels, and so based on those, they

21   determined that's what the cutoff levels that they wanted to

22   use.

23        THE COURT: So I guess I don't follow you. What -

24   - what changed on December 1st of 2020?

25        THE WITNESS: So we have been providing some

CONFIDENTIAL

aver000552

1    education to them. So one of the challenges I think I

 2    talked about when we said false positives -- based on the

 3    information that our laboratory directors and toxicologists

 4    could provide, especially some of those positives at

 5    extremely low level, the question becomes where did that

 6    positive come from for certain analytes. Could it be

 7    potentially from environmental, or could it be from the

 8    actual individual ingesting?

 9        And so we have provided some guidance to MDHHS to

10    actually increase those cutoffs to be more industry standard

11    so then as we have positive test results, it more clearly

12    indicates that there's no way that it could be from

13    environmental factors but actually from an individual

14    ingesting the substance.

15        THE COURT: So, basically, DHHS was relying on the

16    old provider cutoff levels, and then when this all came to

17    light, they have now changed the cutoff levels to be more of

18    an industry standard here in Michigan; is that fair?

19        THE WITNESS: That's correct.

20        THE COURT: All right. So now let's go back to,

21    like, these three problems, right? So you testified that

22    the first issue was a disgruntled employee was there for six

23    weeks, and upon departure, this employee made a complaint

24    about quality control issues; is that fair?

25        THE WITNESS: Yes.

App. 411

CONFIDENTIAL

aver000553

1    THE COURT: All right. So did that -- does that

2    have anything to do with the 13 false positives? Is that

3    how that came --

4    THE WITNESS: It does --

5    THE COURT: -- to light, or that's a separate

6    issue altogether?

7    THE WITNESS: That's a separate issue. That was a

8    human error that somebody made --

9    THE COURT: Right.

10    THE WITNESS: -- while loading a tray.

11    THE COURT: All right. We'll get back to the 13

12    false positives. I first want to try to figure out that.

13    So when the disgruntled employee complained about the

14    quality control issues, you did an investigation, and you

15    said it was unsubstantiated; is that correct?

16    THE WITNESS: That is correct.

17    THE COURT: All right. So that has nothing to do

18    with the 13 false positives, and that doesn't have anything

19    to do with the one sample that was submitted to the court,

20    right?

21    THE WITNESS: Correct.

22    THE COURT: And then that doesn't have anything to

23    do with this batching problem.

24    THE WITNESS: Right. The 13 would be the batching

25    problem.

CONFIDENTIAL                    aver000554

1  |  THE COURT: The 13's the batching problem. Okay,
2  |  so then let me get to the batching problem. So if I
3  |  understand you right, you had indicated that for the 13
4  |  false positives -- and from what I'm gathering is, is that
5  |  they were not false positives, from your testimony -- at
6  |  least that's your position -- but that there's a tray that
7  |  loads 40 samples -- right? -- and that one of the -- in the
8  |  line of samples when they were putting them in the tray, one
9  |  was missed, right? Is that what happened? And then --
10 |  THE WITNESS: Correct.
11 |  THE COURT: -- since they're all barcoded, then
12 |  every one was off. So my sample actually, with my name,
13 |  went to a different sample, and that's what was tested.
14 |  THE WITNESS: That is correct.
15 |  THE COURT: So if my sample was in the batch and
16 |  it's in this batch where the 13 false positives came in, and
17 |  let's just use Mr. Crockett -- his sample was next to mine,
18 |  every one got bumped, and my name got associated with Mr.
19 |  Crockett's sample.
20 |  THE WITNESS: Correct.
21 |  THE COURT: So then when they were tested, the
22 |  results were accurate -- I'm assuming. This is based on
23 |  what I've heard you testify -- is that the results were
24 |  accurate except they all went to the wrong people.
25 |  THE WITNESS: That's correct.

CONFIDENTIAL                                                    aver000555

| | |
|---|---|
| 1 | THE COURT: All right. All right, so that goes to |
| 2 | the batching issue, all right? Unless I said something |
| 3 | wrong on the batching issue. |
| 4 | THE WITNESS: You did not. You explained that |
| 5 | very well. |
| 6 | THE COURT: Okay. All right. I just want to make |
| 7 | sure I have it straight because this false positive thing |
| 8 | is, I think, causing a lot of these issues that's in this |
| 9 | SCAO memorandum. |
| 10 | So then it says that -- the next issue was it |
| 11 | looks like that there's a false positive that was submitted |
| 12 | in a court proceeding, right? And I know you -- |
| 13 | THE WITNESS: And it actually was not. |
| 14 | THE COURT: It was not -- |
| 15 | THE WITNESS: Yes. And it -- |
| 16 | THE COURT: -- a false positive, right? All |
| 17 | right, but that had -- |
| 18 | THE WITNESS: Correct. |
| 19 | THE COURT: -- nothing to do with the batching |
| 20 | problem, correct? |
| 21 | THE WITNESS: That is correct. |
| 22 | THE COURT: That was a computer error problem. |
| 23 | THE WITNESS: So the batching problem wasn't a |
| 24 | computer error problem. So the batching of the 13 was not. |
| 25 | THE COURT: Right, right. |

App. 414

**CONFIDENTIAL**

aver000556

| | |
|---|---|
| 1 | THE WITNESS: The -- what they're -- |
| 2 | THE COURT: I'm not saying it was. |
| 3 | THE WITNESS: -- saying is a false -- sorry. I |
| 4 | apologize. |
| 5 | THE COURT: I'm saying that you had testified |
| 6 | previously that the false positive that was submitted in the |
| 7 | court case was a computer error. |
| 8 | THE WITNESS: Correct. And -- |
| 9 | THE COURT: And that's when you talked about the |
| 10 | cutoff standards. |
| 11 | THE WITNESS: Correct. So that was -- we |
| 12 | originally reported a positive, and then we were asked to |
| 13 | retest the specimen several months later. And when we |
| 14 | retested the sample, it actually was analytically positive, |
| 15 | and the -- but the -- on the report, the overall result had |
| 16 | indicated negative, so that was entered. |
| 17 | So the question became that the original result |
| 18 | was false. The original result was actually analytically |
| 19 | positive, and so was the retest. |
| 20 | THE COURT: But it sounds like the only reason why |
| 21 | it was positive in -- well, was it negative in court or |
| 22 | positive in court? |
| 23 | THE WITNESS: The result that was shown in court |
| 24 | was negative. The overall result showed negative, but |
| 25 | analytically it was actually positive, so that was the |

CONFIDENTIAL

aver000557

1    computer error that caused that report to display as
2    negative.
3              THE COURT:  And that's because of the cutoff
4    because you said that they applied a standard cutoff and not
5    the Michigan cutoff.
6              THE WITNESS:  Correct.
7              THE COURT:  All right.  So we have a negative
8    result in court, and then they applied the standard cutoff
9    to it which made it negative.  But if you took that same
10   report and applied the Michigan cutoff, you're saying it
11   would have been positive.
12             THE WITNESS:  That is correct.
13             THE COURT:  Because the cutoff levels in Michigan
14   were lower than the standard.
15             THE WITNESS:  At that time.
16             THE COURT:  At that time.
17             THE WITNESS:  At that -- mhm.
18             THE COURT:  Yes, you have to say yes or no.
19             THE WITNESS:  Yes.
20             THE COURT:  All right.  All right, so you had
21   indicated -- getting back to the -- once you realized you
22   had this batching problem with the person who put it in
23   there and you put all these precautions in place, when did
24   you put the precautions in place for -- once you realized
25   that this loading error happened with an employee?

CONFIDENTIAL

aver000558

CONFIDENTIAL

1          THE WITNESS:  So it was several weeks that it was

2     identified.  I would have to go back and look at the exact

3     timeframe, but it was when an individual had asked to have

4     their sample retested, and we retested that one and had a

5     different result.  It caused us to dig into that root cause.

6          So I think it was about a month between when the

7     original was reported and when we identified the issue.  As

8     soon as we knew the issue and got to the root cause, that's

9     when the new processes were in place, and it would have been

10     in September of 2019.

11          THE COURT:  When this --

12          THE WITNESS:  September or October.

13          THE COURT:  September or October of '19 was when

14     you put in this second and third check.

15          THE WITNESS:  Correct.

16          THE COURT:  So how do you know that this batching

17     thing didn't happen in prior batches?

18          THE WITNESS:  We have not had anybody that -- that

19     has asked us to, you know, question a result and ask us to

20     do a retest that has not reconfirmed for us to dig into it.

21          THE COURT:  But at least from September and

22     October of 2019, the batching process has been changed to

23     get all these check-offs so that there's a double and triple

24     check now.

25          THE WITNESS:  That is correct, yes.

**CONFIDENTIAL**                                                    aver000559

| | |
|---|---|
| 1 | THE COURT: All right. Let me just make sure -- |
| 2 | and when you -- Mr. Staake asked you a question about how |
| 3 | many tests you conduct a day and had said 7,000. Do you |
| 4 | know how many you conduct that are just Michigan? |
| 5 | THE WITNESS: 300 to 500. |
| 6 | THE COURT: A day? |
| 7 | THE WITNESS: Correct. |
| 8 | THE COURT: All right. So then Mr. Crockett was |
| 9 | asking you questions about the accreditation standards, and |
| 10 | you said that there was an allegation by an individual in |
| 11 | 2020. Is that a different disgruntled employee that we've |
| 12 | already talked about? |
| 13 | THE WITNESS: Same person. |
| 14 | THE COURT: Same person. All right. All right, |
| 15 | and you also indicated that two independent people were |
| 16 | reviewing the lab, and they're gonna give a report back to |
| 17 | DHHS. Do you know what the timeline is for when that |
| 18 | report's gonna be completed and physically handed to DHHS? |
| 19 | 'Cause I know completed and handed to them might be two |
| 20 | different dates. |
| 21 | THE WITNESS: My understanding is the next few |
| 22 | weeks, but I do not have an exact date. |
| 23 | THE COURT: All right. All right, Mr. Crockett, I |
| 24 | think I'm done with my questions. Do you have any follow-up |
| 25 | questions based on my questions? |

**CONFIDENTIAL**                                                aver000560

| | |
|---|---|
| 1 | MR. CROCKETT: Yes. |
| 2 | CROSS-EXAMINATION (CONTINUING) |
| 3 | BY MR. CROCKETT: |
| 4 | Q. You mentioned this disgruntled employee. Isn't that -- |
| 5 | couldn't you also call that person a whistleblower? |
| 6 | THE COURT: Well, Mr. Crockett, I'm gonna stop you |
| 7 | there for a second because that is more of a legal term, and |
| 8 | so I don't -- that's -- I guess I'm just gonna ask you to |
| 9 | rephrase that. |
| 10 | I mean, certainly, you can -- whether she's -- |
| 11 | whether this employee is disgruntled or just being a good |
| 12 | Samaritan is -- I don't know really a point that we have to |
| 13 | address here since I'm not judging the credibility on that |
| 14 | issue. It's just that it -- the information came forward. |
| 15 | But I think a whistleblower's a legal term, and she's |
| 16 | already testified she's not an attorney. |
| 17 | BY MR. CROCKETT: |
| 18 | Q. What's the name of this person? |
| 19 | A. Sarah Riley. |
| 20 | Q. And is that S-a-r-a-h? |
| 21 | A. Correct. |
| 22 | Q. R-i-l-e-y? |
| 23 | A. Correct. |
| 24 | Q. Does that Sarah Riley still work for your company? |
| 25 | A. She does not. |

CONFIDENTIAL

aver000561

| | |
|---|---|
| 1 | Q. Where is she located now? |
| 2 | A. I am not sure. |
| 3 | Q. Do you know how I can get in touch with Sarah Riley? |
| 4 | A. I do not know how you could get in touch with her. |
| 5 | Q. What state did she live in? |
| 6 | MR. STAAKE: Your Honor, I'm gonna object to the |
| 7 | relevance of this individual. I understand we're talking |
| 8 | about credibility for this witness, but I'm unclear as to |
| 9 | what this has to do with Ms. Baldwin. |
| 10 | THE COURT: Well, I'll give Mr. Crockett a little |
| 11 | bit of latitude here because the credibility of the company |
| 12 | and whatever she's disgruntled about, I think he can |
| 13 | discover in regards to what her gripe was with the company |
| 14 | or what she feels they weren't following practices 'cause |
| 15 | there's -- it was clearly brought to light. So, Mr. |
| 16 | Crockett, I'll give you some latitude. |
| 17 | MR. CROCKETT: Thank you. |
| 18 | BY MR. CROCKETT: |
| 19 | Q. What state was Sarah Riley in when she was making these |
| 20 | allegations? |
| 21 | A. In Missouri. |
| 22 | Q. What position did Sarah Riley hold? |
| 23 | A. Our laboratory director. |
| 24 | Q. So your laboratory director in Missouri was disgruntled and |
| 25 | made allegations on two occasions? |

App. 420

CONFIDENTIAL

aver000562

| | | |
|---|---|---|
| 1 | A. | On one. It was one instance, and she worked for us for -- |
| 2 | | for less than six weeks. |
| 3 | Q. | Okay. So that wasn't in -- that wasn't in 2019? That was |
| 4 | | in 2020? |
| 5 | A. | Correct. |
| 6 | Q. | Are you bringing a lawsuit against her? |
| 7 | A. | I'm -- that's outside of my purview and my role. |
| 8 | Q. | Heard of any lawsuits against her? I mean, if she's lying |
| 9 | | about your company. |
| 10 | A. | Again, that's outside of my purview and my role. |
| 11 | Q. | I didn't ask you if it was your purview. I just asked you |
| 12 | | if you were aware of it or not, ma'am. |
| 13 | | THE COURT: Mr. Crockett, this really goes beyond |
| 14 | | this issue -- of whether she's suing the company or they're |
| 15 | | suing her, what difference does that make to whether these |
| 16 | | results are accurate or not? |
| 17 | | MR. CROCKETT: I believe it is relevant because if |
| 18 | | this -- if someone is actually defaming the company, they'd |
| 19 | | be liable for it. But if they are -- |
| 20 | | THE COURT: But what -- that's -- |
| 21 | | MR. CROCKETT: -- for example -- |
| 22 | | THE COURT: That is absolutely true, but a |
| 23 | | separate matter that is not gonna be -- have anything to do |
| 24 | | with this court. It certainly -- she's answered the |
| 25 | | question. I think you can move on. |

CONFIDENTIAL

aver000563

```
 1          MR. CROCKETT:  Thank you.  That's all the other
 2     questions I have, your Honor.  Thanks.
 3          THE COURT:  Mr. Staake -- or, I'm sorry, Ms.
 4     LaFave Smith, any -- I mean, you haven't asked any questions
 5     so -- I know this isn't your issue.
 6          MS. LAFAVE SMITH:  I know.  I do have one
 7     question, though.
 8          THE COURT:  Go ahead.
 9                    CROSS-EXAMINATION
10  BY MS. LAFAVE SMITH:
11  Q.  You mentioned that the state of Michigan -- or, MDHHS was
12     using a cutoff that was below the standard and now they've
13     changed their cutoff to the standard; is that correct?
14  A.  That -- the standard becomes difficult.  I mean, there --
15     for different reasons, different standards are adopted.
16     They did have a lower cutoff, and they've chosen to raise
17     those cutoffs.
18  Q.  And when was that cutoff changed?
19  A.  December 1st of 2020.
20          MS. LAFAVE SMITH:  All right, thank you.  No
21     further questions.
22          THE COURT:  Mr. Staake.
23          MR. STAAKE:  I have no additional questions for
24     this witness.  Thank you.
25          THE COURT:  Ms. Freed, any redirect?
```

App. 422

**CONFIDENTIAL**

aver000564

|   |   |
|---|---|
| 1 | MS. FREED:  No, your Honor.  Thank you. |
| 2 | THE COURT:  All right.  Can -- I'm gonna pronounce |
| 3 | your name wrong, ma'am -- is Ms. Delagnes allowed to be |
| 4 | excused? |
| 5 | MS. FREED:  Yes, your Honor. |
| 6 | THE COURT:  Mr. Staake? |
| 7 | MR. STAAKE:  Yes.  Thank you, your Honor. |
| 8 | THE COURT:  Mr. Crockett, can the witness be |
| 9 | excused? |
| 10 | MR. CROCKETT:  Yes, your Honor.  Thank you. |
| 11 | THE COURT:  It's Delagnes, right, ma'am? |
| 12 | THE WITNESS:  It is. |
| 13 | THE COURT:  All right. |
| 14 | THE WITNESS:  Thank you, your Honor. |
| 15 | THE COURT:  All right.  Ms. LaFave Smith, can the |
| 16 | witness be excused? |
| 17 | MS. LAFAVE SMITH:  Yes.  Thank you, your Honor. |
| 18 | THE COURT:  All right.  Ms. Delagnes, you're all |
| 19 | set with the court.  Thank you very much.  Have a good rest |
| 20 | of your day. |
| 21 | MS. DELAGNES:  Thank you, your Honor. |
| 22 | (At 3:39 p.m., witness excused) |
| 23 | |
| 24 | |
| 25 | |

App. 423

CONFIDENTIAL

aver000565

STATE OF MICHIGAN    )

                     )

COUNTY OF INGHAM     )


I certify that this transcript, consisting of 33 pages, is a complete, true, and correct transcript of the testimony of Dominique Delagnes taken in this case, via Zoom, on Friday, February 5, 2021.


February 24, 2021

*Lauren Vela*

Lauren Vela, CER 9341
Veteran's Memorial Courthouse
313 West Kalamazoo Street
Lansing, Michigan 48933
517-483-6429

**CONFIDENTIAL**

aver000566

**From:** Machen, Shayne (DHHS)
**To:** Cross, Jason (DHHS)
**Subject:** FW: Aver Health
**Date:** Thursday, May 27, 2021 10:46:00 AM
**Attachments:** Midland County Probate & Family Court Averhealth Order.docx

---

Just in case you wanted to know what I was dealing with today. Cheers.

---

**From:** Kelly Wagner <WagnerK@courts.mi.gov>
**Sent:** Thursday, May 27, 2021 10:44 AM
**To:** Starling, Demetrius (DHHS) <StarlingD@michigan.gov>; Machen, Shayne (DHHS) <MachenS@michigan.gov>
**Cc:** Casey Anbender <anbenderc@courts.mi.gov>
**Subject:** FW: Aver Health

---

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

---

Good morning,
I wanted to give you a heads up on this, as Judge Allen used an old email list for the Child Welfare Judicial Leadership Workgroup. The Averhealth employee error that occurred in 2019 was a case in her court, and the subsequent errors that were discovered (and felt underscored) exacerbated her concerns. We have a CW Judicial Leadership Workgroup meeting scheduled for June 10 (10:00 – 12:00) – I can add this to the agenda, if you think it's appropriate to discuss? I defer to you – just wanted to give you a heads up.

Thanks,
-Kelly

---

**From:** Judge Dorene S. Allen <doreneallen@co.midland.mi.us>
**Sent:** Thursday, May 27, 2021 10:16 AM
**To:** Darla Brandon <BrandonD@courts.mi.gov>; Andrea Hutchinson <HutchinsonA@courts.mi.gov>; Ann LaHaine <LaHaineA@michigan.gov>; Casey Anbender <AnbenderC@courts.mi.gov>; Cheryl Hill <Chill@mqtco.org>; Jake Cunningham (cunninghamjj@oakgov.com) <cunninghamjj@oakgov.com>; Janet Reynolds Snyder <janet@michfed.org>; Jennifer Wrayno <wraynoj@michigan.gov>; Jocelyn Fabry <jfabry@saulttribe.net>; Joe Ryan <JoRyan@umich.edu>; Jolene Clearwater <JClearwater@ALLEGANCOUNTY.ORG>; Joo Yeun Chang <ChangJ4@michigan.gov>; Judge Sue Dobrich <sued@cassco.org>; Kelly Sesti (SestiK@michigan.gov) <SestiK@michigan.gov>; Kelly Wagner <WagnerK@courts.mi.gov>; Kristin Triplett <TriplettK@courts.mi.gov>; Lisa Langton <LangtonL@oakgov.com>; Nancy Thane <NThane@tuscolacounty.org>; Richard Smart <Richard.Smart@3rdcc.org>; Sheila Russ <russs@oakgov.com>; Terence Ackert <terence.ackert@kentcountymi.gov>; Vivek Sankaran <vss@umich.edu>; Kelly Wagner <WagnerK@courts.mi.gov>

**Cc:** keyesT@michigan.gov
**Subject:** Aver Health

Good Morning All:  I  know this is an "old" contact list but I can't find a more recent one.  I want to be sure that everyone understands that I am sending this in my own capacity as Judge of the Midland County Probate & Juvenile Court.  The most recent "announcement" that Aver Health was now the sole provider for drug tests came as a total surprise to me.  I found out yesterday as a courtesy call from my MDHHS County Director which I really appreciate.  We have had ongoing meetings on the Aver Health quality issues for some time.  Maybe I have missed something, but I don't remember being asked whether the judiciary was satisfied with the "investigation".  I certainly am not.   I have attached the Blanket Order that was entered in my court in all of my child protection cases.

I was also informed that no retesting would be covered as far as expenses.  Clearly, this is contrary to what is needed here for security of the testing.   There were extensive discussions on cut off levels; I see nothing in this announcement that resolves that issue.  It was made clear that the expenses for any alternative other than Aver Health would not be 100% covered by MDHHS but would go under the 50% reimbursement.  This is a local funding issue that is not insignificant.

There are many issues that I could go on about, but the driving force of my communication is how this was done.  It was done without notice to the judges by my understanding.  In order for me to successfully and with security continue drug testing for our child protection cases, I enlisted the services of our local provider.  This was not an easy task.  It was an undertaking that the local provider took seriously and were very effective in their management of the new challenge.  To have the fiat of MDHHS with no warning whatsoever compromises my ability to secure local resources.  This is not the action of an organization that seeks to collaborate but rather the actions of a monolithic entity that is looking to unilaterally "solve" a problem that was created by their contractor.  I am significantly disappointed that the trust base for the Leadership Group on Child Welfare could be so cavalierly discarded.

Until I know that I have the proper testing for my child protection cases, MDHHS will be responsible for those costs.  The trajectory of a child protection case necessarily depends on the progress, or lack thereof, of the parents who we are trying to reunite with their children.  This is not a game; it has serious lifelong consequences to our children and parents who are a part of this process.

The process used by MDHHS is bereft of 1) quality and 2) collaboration.

Dorene S. Allen
Probate & Family Court Judge
301 W. Main
Midland, MI   48640
989-832-6880

*This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to which they are addressed. If you have received this email in error, please notify the originator of this message. This email message has been scanned for the presence of computer viruses. Any views expressed in this message are those of the individual sender, except where the sender specifies and with authority states them to be the views of Midland County.*

**Ex. 232**

| | |
|---|---|
| **From:** | Marner, Shelly J. (DHHS) |
| **To:** | Doane, Amanda (DHHS) |
| **Cc:** | Starling, Demetrius (DHHS) |
| **Subject:** | RE: Quarterly call tomorrow |
| **Date:** | Wednesday, September 15, 2021 9:09:47 PM |

Hello Amanda,

I have spoken with Midland.  Judge Allen refuses to utilize Averhealth for any case in her court.  She is paying Forensic Fluids out of CCF funding.  That would include all persons who would be randomly tested.   Midland DHHS is utilizing Averhealth for CPS investigations but that would not be random testing.  They estimated about 6 or so monthly being referred to Averhealth.  Unfortunately we will never change Judge Allen's mind.  The only thing is she wi

I'm working on getting the information from Lapeer.

Shelly

---

**From:** Dominique Delagnes <ddelagnes@averhealth.com>
**Sent:** Monday, September 13, 2021 1:53 PM
**To:** Lovell, Luther (DHHS) <LovellL3@michigan.gov>; Marner, Shelly J. (DHHS) <MarnerS@michigan.gov>; Williams, Douglas (DHHS) <WilliamsD11@michigan.gov>; Wrayno, Jennifer (DHHS) <WraynoJ@michigan.gov>; Carter, Jordan (DHHS) <CarterJ19@michigan.gov>; Martin, Danielle (DHHS) <MartinD28@michigan.gov>
**Cc:** Doane, Amanda (DHHS) <DoaneA@michigan.gov>; Joel Bailey <jbailey@averhealth.com>; Austin Cady <acady@averhealth.com>
**Subject:** Quarterly call tomorrow

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

Good afternoon BSC Directors,

Looking forward to our quarterly call tomorrow with all of you and Averhealth.  I hope everyone is doing well and are able to join the call.

Below is the proposed agenda:
- Updating client referral in Aversys
- Discuss collection sites that currently are ceasing collections due to low volume
- No show rates by County for each BSC
- County return to Averhealth, including hold outs

Please let us know if there is anything else you would like to cover during our call.

Best,

Dominique

**Dominique Delagnes**
Chief Operating Officer

O 804. 285. 0413
M 817. 913. 5094
2916 Marshall Street, Suite A, Richmond, VA 23230
ddelagnes@averhealth.com | averhealth.com

CONFIDENTIALITY NOTICE: This transmission and any documents accompanying same may contain confidential information which is legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in this transmission is strictly PROHIBITED. If you have received this transmission in error, please immediately notify us by telephone. Thank you.

**From:** Click, Tim (DHHS)
**Sent:** Monday, November 8, 2021 8:00 AM
**To:** Machen, Shayne (DHHS);Willis, Rachel (DHHS)
**Subject:** RE: Averhealth concerns - St. Clair

Send to me if Rachel can't make it.

**From:** Machen, Shayne (DHHS) <MachenS@michigan.gov>
**Sent:** Monday, November 8, 2021 8:25 AM
**To:** Click, Tim (DHHS) <ClickT@michigan.gov>; Willis, Rachel (DHHS) <WillisR4@michigan.gov>
**Subject:** FW: Averhealth concerns - St. Clair

Which one of you picked up the Averhealth issue? There's a meeting at 9 I need to invite you to. Please see below.

Shayne

**From:** Marner, Shelly J. (DHHS) <MarnerS@michigan.gov>
**Sent:** Friday, November 5, 2021 4:58 PM
**To:** Starling, Demetrius (DHHS) <StarlingD@michigan.gov>
**Cc:** Machen, Shayne (DHHS) <MachenS@michigan.gov>
**Subject:** Averhealth concerns - St. Clair

Demetrius,

Wondering if you have some time on Monday to discuss an issue with St. Clair APA and Judge regarding Averhealth? Judge issued an order to not use them and ordered us to pay. Order was received today. Stella reached out to Amanda Doane and Legal but I felt you needed to be brought into the loop, and also wondered if you had any insight on the PA and Judge from your time there. Stella has also sent an email to Mike Wendling, St. Clair PA, to see if they can discuss it.

Long story of course but short version is mom tested positive at Averhealth, but then negative at another location. APA met with county and then put forth a motion against their wishes for alternate testing and DHHS payment, along with ceasing use of Averhealth all together. When Stella told her not to file the motion she told Stella she had already did it and they received the order today. Amanda had Averhealth look into it and basically the other testing agency has a different threshold.

The only appointments on my calendar that I can't move is the ESA meeting at 9:30 and a meeting with Terry and Will at 1:00, and of course we all of ChildStat at 10.

Thanks!

Shelly

Shelly J Marner
BSC 2 Director
MDHHS
989-430-7117

**CONFIDENTIALITY:** This message, including any attachments, is intended solely for the use of the above named recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this e-mail is expressly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy any and all copies of the original message.

| | |
|---|---|
| **From:** | Machen, Shayne (DHHS) |
| **To:** | Bushinski, Vera (DHHS) |
| **Subject:** | Averhealth Meeting |
| **Date:** | Wednesday, November 17, 2021 12:53:00 PM |

Hi Vera,

Can you please add this information to the Averhealth calendar invite:

- Agenda – To discuss recent complaints about Averhealth that have come from SCAO. Specifically, we received documentation that Averhealth incorrectly informed St. Clair County Court that Adderall would not show up on a drug screening as an amphetamine. After seeking testing at another lab, who indicated Adderall *could* show up as amphetamines, Averhealth retracted their statement and agreed with the second lab. Second, in Cheboygan County during testimony at a child welfare hearing, Averhealth staff was not able to answer general questions about the lab results. There are other concerns that Jen Warner is attempting to get more information about. In light of these concerns, the Director would like to meet before our Tuesday meeting with the Justices.
- Who is leading the meeting - Demetrius
- Who requested the meeting be scheduled – Shayne
- Who is required/needed – Demetrius, Jen Warner, Tim Click, Wendy Campau
- Who is optional – Mary Lou, Shayne

I'd like to include this list in every calendar invite.

Shayne Machen, Esq.
Special Advisor to the Children's Services Agency Director
Michigan Department of Health and Human Services
Cell    | 231-655-9857
Email | MachenS@Michigan.gov

Subject:               Alcona AverHealth Order
Location:              Microsoft Teams Meeting

Start:                 Thu 02/03/2022 03:30 PM
End:                   Thu 02/03/2022 04:00 PM
Show Time As:          Tentative


Organizer:             Warner, Jennifer (DHHS)
Required Attendees:    McDougle, Tiffany (DHHS)

---

# Microsoft Teams meeting

Join on your computer or mobile app
Click here to join the meeting

Or call in (audio only)

MCL 15.243(1)(u)                    States, Pontiac

Learn More | Meeting options

---

To: Honorable Laura A. Frawley
From: Michigan Department of Health and Human Services
Date: January 19, 2022
Re: Blanket Order Regarding Substance Use Testing for Alcona County Child Protection Cases

Currently, the Michigan Department of Health and Human Services (DHHS) has contracted Averhealth as the statewide substance abuse testing provider. On December 13, 2021, Honorable Laura A. Frawley, Presiding Probate and Family Court Judge of the Alcona County Probate Court issued an Administrative Order "Blanket Order Regarding Substance Use Testing for Alcona County Child Protection Cases" (Administrative Order). The Court ordered DHHS to use an alternative provider for substance abuse testing, and specifically states that Forensic Fluids is an acceptable alternative. Furthermore, the Blanket Order states that DHHS shall be responsible for all costs associated with the alternative provider.

Though styled as a blanket order, the order is in effect acting as an Administrative Order and is governing external court functions, namely the substance abuse testing provider for child protection cases in all of Alcona County. For a court to issue an administrative order, the court must follow MCR 8.112(B):

(B) Administrative Orders.

(1) A trial court may issue an administrative order governing only internal court management.
(2) Administrative orders must be sequentially numbered during the calendar year of their issuance. E.g., Recorder's Court Administrative Order Nos. 1984-1, 1984-2.
(3) Before its effective date, an administrative order must be sent to the state court administrator. If the state court administrator directs, a trial court shall stay the effective date of an administrative order or shall revoke it. A trial court may submit such an order to the Supreme Court as a local court rule.

Rule 8.112. Local Court Rules; Administrative Orders, 6 Mich. Ct. Rules Prac., Text R 8.112 (7th ed.)

Pursuant to this court rule, an administrative order cannot govern functions external to the court, such as substance abuse testing. Moreover, for a local court to issue an administrative order, the court must follow the procedures set forth under Michigan Court Rule 8.112(B). To the knowledge and belief of DHHS, the Alcona County Probate Court did not submit the Administrative Order to the State Court Administrator Office (SCAO) before its effective date. Therefore, the Alcona County Probate Court did not follow the court rules set forth under 8.112(B) when it issued this order.

Therefore, DHHS respectfully requests the Administrative Order be rescinded.

## BLANKET ORDER REGARDING SUBSTANCE USE TESTING
## FOR ALCONA COUNTY CHILD PROTECTION CASES

This court having been involved in the in the analysis of the quality and reliability of Averhealth a/k/a Aversys and their substance abuse use testing, hereby orders that from this date forward an alternative lab will be used for child protection cases through this Court.

In 2019, this Court was appraised of a false positive result in a pending child protection action. The Court heard sworn testimony from an Averhealth official and it was represented that quality controls were put into place to ensure that this would never occur again. Despite that, currently there are significant questions regarding the reliability of Averhealth. Many courts throughout the state are continuing to question the reliability of Averhealth tests.

There is a requirement that parents and parties to these child protection actions must be confident that the laboratory results of the substance use testing are accurate. The Court must be able to rely on their accuracy as well. Decisions are made as to the welfare of children in these proceedings based upon all the facts. The Court relies upon the accuracy of the information.

ON November 6, 2020, the Michigan Supreme Court State Administrative Office issued this Memorandum:

> Concerns have been brought to our attention regarding the accuracy of drug testing results provided by Averhealth, the company under contract with the Michigan Department of Health and Human Services (MDHHS) to provide substance use testing services to families involved in the child welfare system.

> In 2019, an Averhealth employee error led to 13 false positive test results. This was described as a one-time employee error, and was remedied by Averhealth providing written documentation to each client to explain the error, and adopting new procedures to provide more oversight of the testing processes. Recently, there was another false positive drug test that was submitted in a court proceeding. In addition, we have been informed that allegations have been raised regarding Averhealth employee practices not complying with the company's accreditation standards. MDHHS is currently investigating these allegations. We will provide additional Information as it becomes available.

This court therefore orders that substance abuse testing be conducted by an alternate laboratory to be selected by this Court. Forensic Fluids shall be an acceptable alternate laboratory unless further ordered by the Court. In as much as Averhealth was chosen by Michigan Department of Health and Human Services all expenses for such alternative testing shall be the responsibility of the Michigan Department of Health and Human Services.

This order shall remain in effect until such time as an alternate testing laboratory is available through the Michigan Department of Health and Human Services.

_Laura A. Frawley_  12-13-2021

Hon. Laura A. Frawley
Presiding Probate and Family Court Judge

# Redaction Log

Total Number of Redactions in Document: 1

## Redaction Reasons by Page

| Page | Reason | Description | Occurrences |
|------|--------|-------------|-------------|
| 1 | MCL 15.243(1)(u) | (23) Records of a public body's security measures, including security plans, security codes and combinations, passwords, passes, keys, and security procedures, to the extent that the records relate to the ongoing security of the public body. | 1 |

# Redaction Log

## Redaction Reasons by Exemption

| Reason | Description | Pages (Count) |
|---|---|---|
| MCL 15.243(1)(u) | (23) Records of a public body's security measures, including security plans, security codes and combinations, passwords, passes, keys, and security procedures, to the extent that the records relate to the ongoing security of the public body. | 1(1) |



| Subject/Title | Substance Use Testing |
|---|---|
| Type | ☐ Informational Memorandum<br>☒ Program Instruction<br>☐ Policy Guide |
| Issuance Date<br>Obsolete Date | 3/7/2022<br>6/6/2022 |
| Contact  Name<br>Email<br>Phone | Sarah Goad<br>GoadS@Michigan.gov<br>N/A |
| Due Date<br>Due to | N/A<br>N/A |
| *Distribution* | ☒ CSA Central Office Managers/Staff<br>☒ MDHHS BSC and County Directors<br>☒ MDHHS Juvenile Justice Managers/Staff<br>☒ MDHHS Child Welfare Managers/Staff<br>☒ Native American Tribes<br>☐ Office of Workforce Development and Training<br>☒ Private Agency Child Welfare Managers/Staff<br>☐ Private Residential Abuse/Neglect Managers/Staff<br>☐ Private Residential Juvenile Justice Managers/Staff<br>☐ Other: |

**MDHHS**
Michigan Department of Health & Human Services

**Children's Services Agency**

**Communication Issuance**

**22- 025**
**\*Revised**

The Children's Services Agency (CSA) has determined that effective immediately, CSA will discontinue the use of Averhealth for substance use testing. Staff must access other local providers for testing for the next 90 days.

**Substance Use Testing Liaison**
Each county/district office and private agency provider has established a substance use testing liaison to assist with the substance use contract service. The liaison is responsible for identifying local substance use providers.

Substance use testing liaisons will receive a meeting notice from Amanda Doane by Monday, March 14, 2022, to discuss tracking requirements in greater detail and allow an opportunity for questions to be addressed.

**Court Ordered Drug Testing**
While the local substance use testing liaisons work to set up substance use testing with local substance use testing companies, please work with clients who are court ordered to test to ensure they have the information and resources they need to comply with the court's order.

**Payment and Tracking Process for Substance Use Testing Providers**
The cost of drug testing will be covered by the CSA during this 90-day period.

Services must be paid using the paid case service process in MiSACWIS. Child welfare caseworkers should verify the provider is registered in SIGMA, enrolled in Bridges, and shows as an active medical services provider in MiSACWIS. Ensure that the case service and paid service authorizations are

1

approved by a supervisor prior to case closure. Questions regarding the payment process should be sent to the FCD mailbox: MDHHS-FederalComplianceDivision@michigan.gov.

| | |
|---|---|
| **From:** | Warner, Jennifer (DHHS) |
| **To:** | Machen, Shayne (DHHS); Mahoney, Mary Lou (DHHS) |
| **Cc:** | Starling, Demetrius (DHHS) |
| **Subject:** | FW: Averhealth Drug Testing |
| **Date:** | Thursday, August 19, 2021 10:51:10 AM |
| **Attachments:** | image002.jpg |
| | 42736836.pdf |

Good morning,

Who can assist in providing the information for the US AG?

Thanks,

Jennifer

**From:** Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>
**Sent:** Thursday, August 19, 2021 11:46 AM
**To:** Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>; Evans, Jason (AG)
<EvansJ@michigan.gov>
**Subject:** RE: Averhealth Drug Testing

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

Thank you, Jennifer. This is super helpful. One follow-up question along the same lines: can you confirm how MDHHS first became aware of the issues raised by Dr. Riley? I see from the testimony that in February 2021, MDHHS was in the process of investigating and/or hiring consultants to examine the lab in St. Louis, but the attached memo suggests SCAO was aware of these issues as early as November 2020. I'm just trying to understand how Dr. Riley's complaints made it on your radar, and what happened, if anything, during that intervening period.

Separately, we have the Averhealth contract, but is there a way that we can see the RFP that this contact was based on? It's RFP # 190000000633. Forgive me if this information is already available online somewhere; I just couldn't find it.

Thanks,
Anthony

**From:** Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
**Sent:** Thursday, August 12, 2021 4:02 PM
**To:** Gentner, Anthony (USAMIE) <AGentner@usa.doj.gov>; Evans, Jason (AG)
<EvansJ@michigan.gov>
**Subject:** RE: Averhealth Drug Testing

Good afternoon,

Attached are the two transcripts that were provided to us. One is testimony from Dominique Delagnes (Averhealth staff) and the second is with Dr. Riley.

Please let me know if you need anything else.

-Jennifer

---

**From:** Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>
**Sent:** Thursday, August 12, 2021 12:38 PM
**To:** Evans, Jason (AG) <EvansJ@michigan.gov>; Warner, Jennifer (DHHS)
<WarnerJ19@michigan.gov>
**Subject:** RE: Averhealth Drug Testing

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

Thanks for reaching out, Jennifer. Nothing additional to report from me at this time. However, I was curious if you were able to locate more information on the testimony Dr. Riley appears to have given on February 19, 2021 regarding Averhealth's testing practices, which is cited in the public report. Ideally, we want to see a transcript of the testimony, but any information you have on this would be appreciated. Let me know.

Thanks,
Anthony

---

**From:** Evans, Jason (AG) <EvansJ@michigan.gov>
**Sent:** Thursday, August 12, 2021 11:34 AM
**To:** Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>; Gentner, Anthony (USAMIE)
<AGentner@usa.doj.gov>
**Subject:** RE: Averhealth Drug Testing

Nothing on my end.  Thanks, Jennifer.

---

**From:** Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
**Sent:** Thursday, August 12, 2021 10:17 AM
**To:** Evans, Jason (AG) <EvansJ@michigan.gov>; anthony.gentner2@usdoj.gov
**Subject:** RE: Averhealth Drug Testing

Good morning,
I'm just following up to see if anything ever came out of this conversation that we should be aware of.

Thank you,
Jennifer

Jennifer Warner
*She/Her/Hers*
Children's Services Legal Division Director
Michigan Department of Health and Human Services
517-284-4857

*Confidentiality Notice: This message, including any attachments, is intended solely for the use of the named recipient(s) and may contain confidential and/or priviledged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this email is expressly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

*The Legal Affairs Administration is committeed to Race, Equity, Diversity, and Inclusion and to becoming an anti-racist, diverse, equitable, and inclusive Administration.*

-----Original Appointment-----
**From:** Erb, Holly (DHHS) <ErbH@michigan.gov>
**Sent:** Wednesday, June 30, 2021 11:04 AM
**To:** Erb, Holly (DHHS); Roubal, Lewis (DHHS); Starling, Demetrius (DHHS); Evans, Jason (AG); anthony.gentner2@usdoj.gov
**Cc:** Machen, Shayne (DHHS); Warner, Jennifer (DHHS); LaHaine, Ann (DHHS); Campau, Wendy (DHHS)
**Subject:** Averhealth Drug Testing
**When:** Friday, July 9, 2021 1:00 PM-1:30 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** Microsoft Teams Meeting

# Microsoft Teams meeting

**Join on your computer or mobile app**
**Click here to join the meeting**
**Or call in (audio only)**
+1 248-509-0316,,303665757#   United States, Pontiac
Phone Conference ID: 303 665 757#
Find a local number | Reset PIN
Learn More | Meeting options

**From:** Starling, Demetrius (DHHS) <StarlingD@michigan.gov>
**Sent:** Tuesday, June 29, 2021 9:04:56 PM
**To:** Evans, Jason (AG) <EvansJ@michigan.gov>
**Cc:** Machen, Shayne (DHHS) <MachenS@michigan.gov>; Roubal, Lewis (DHHS) <RoubalL@michigan.gov>; Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
**Subject:** RE: Averhealth drug testing

Hello Jason,

Looping in Chief Deputy Director Lew Roubal, Special Advisor Shayne Machen and Children's Service Legal Division Director Jennifer Warner to this thread. We can certainly look to carve out

App. 443

some time next week, thanks.

Demetrius Starling (He/Him/His)
Childrens Services Administration Executive Director
Department of Health and Human Services
810-493-0770



**From:** Evans, Jason (AG) <EvansJ@michigan.gov>
**Sent:** Tuesday, June 29, 2021 7:12 PM
**To:** Starling, Demetrius (DHHS) <StarlingD@michigan.gov>
**Subject:** Averhealth drug testing

Demetrius,

Our office, along with the U.S. Attorney's Office for the Eastern District of Michigan, is investigating fraud allegations related to drug testing performed by Averhealth through a contract with MDHHS. It appears MDHHS already hired outside experts to investigate the allegations that are the basis of our fraud investigation.

Would you be willing to meet with the assigned Assistant U.S. Attorney and I to discuss? If so, do you have any availability next week?

Thanks,
Jason

Jason Evans
First Assistant
Health Care Fraud Division
Michigan Department of Attorney General
P.O. Box 30218
Lansing, MI 48909
(517) 241-6500

This message, including any attachments, is intended solely for the use of the above named recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this e-mail is expressly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy any and all copies of the original message.

| | |
|---|---|
| **From:** | Machen, Shayne (DHHS) |
| **To:** | Bushinski, Vera (DHHS) |
| **Subject:** | RE: CSA/CSLD Touchpoint |
| **Date:** | Wednesday, July 14, 2021 12:01:00 PM |

LOL. I love when people are surprised by how bad our calendars are.

Yes, please assist her in setting up this series.

Shayne

**From:** Bushinski, Vera (DHHS) <BushinskiV@michigan.gov>
**Sent:** Wednesday, July 14, 2021 12:53 PM
**To:** Machen, Shayne (DHHS) <MachenS@michigan.gov>
**Subject:** FW: CSA/CSLD Touchpoint

Hi Shayne.

Per the message below, we need to schedule 1:1 with Demetrius & Jennifer Warner.  What are your thoughts?  (She would also like you to be included, too.)

Thanks,

Vera

**From:** Clevenger, Jeri (DHHS) <ClevengerJ1@michigan.gov>
**Sent:** Tuesday, July 13, 2021 2:18 PM
**To:** Bushinski, Vera (DHHS) <BushinskiV@michigan.gov>
**Subject:** CSA/CSLD Touchpoint

Good afternoon Vera! You will be seeing my name so I thought I would introduce myself. My name is Jeri Clevenger and I work for Jennifer Warner, Director of Children's Services Legal Division. Below is an email between Demetrius and Jennifer requesting to meet every other week for 30 meeting. They would also like Shayne Machen to attend. I would be happy to send out the invitations. Then I took a look at Demetrius' and Shayne's calendars. So, I am asking you for some guidance on when I might be able to fit something like this in.

Welcome and I hope we will get to meet in person soon. Thank you for looking into this for us!

Jeri Clevenger
Executive Secretary
Children's Services Legal Division

Michigan Department of Health and Human Services

P.O. Box 30195

333 South Grand Avenue

Lansing, MI 48909

(517) 512-5417 (work cell)

Clevengerj1@michigan.gov

The contents of this communication, including any attachments, are intended solely for the use of the named recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure, or distribution of this communication is expressly prohibited. If you are not the intended recipient, please contact the sender by email and destroy all copies of the original message. Any interpretation or analysis contained in this communication represents the understanding and the opinion of the author, is based solely on the information provided to the author, is intended to provide guidance to Michigan Department of Health and Human Services (DHHS) staff, and does not represent the official position or interpretation of DHHS.

**From:** Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
**Sent:** Monday, July 12, 2021 11:02 AM
**To:** Clevenger, Jeri (DHHS) <ClevengerJ1@michigan.gov>
**Subject:** FW: Averhealth

Hi Jeri,
Please work with Demetrius' assistant to set meetings every other week for 30 minutes with me, Demetrius and Shayne. The re: can be called CSA/CSLD touchpoint.

Thank you,
Jennifer

**From:** Starling, Demetrius (DHHS) <StarlingD@michigan.gov>
**Sent:** Monday, July 12, 2021 10:56 AM
**To:** Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
**Subject:** RE: Averhealth

Yes, that makes sense for us to convene meetings every other week between us three, thank you.

**From:** Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
**Sent:** Monday, July 12, 2021 10:48 AM
**To:** Starling, Demetrius (DHHS) <StarlingD@michigan.gov>
**Subject:** RE: Averhealth

Thank you, Demetrius. That is very kind of you to say. I appreciate the opportunity to work with you and your team. In the last 6 weeks, I've met with so many WONDERFUL members of your team. It is an honor for me to assist in any way I can.

It may be beneficial for you, me and Shayne to have a regular 30 minute meeting on the books (maybe every other week or at least once a month). There are some issues that I'd like your guidance on with how legal handles them with your team. Let me know your thoughts.

Thanks,
Jennifer

---

**From:** Starling, Demetrius (DHHS) <StarlingD@michigan.gov>
**Sent:** Monday, July 12, 2021 10:15 AM
**To:** Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
**Subject:** RE: Averhealth

Jennifer, I want to say how much I appreciate you thus far. Your presence and guidance has been amazing, thank you.

D

---

**From:** Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
**Sent:** Friday, July 9, 2021 10:49 AM
**To:** Starling, Demetrius (DHHS) <StarlingD@michigan.gov>
**Cc:** Machen, Shayne (DHHS) <MachenS@michigan.gov>
**Subject:** Averhealth

Good Morning, Demetrius:
I am planning on attending the Averhealth meeting with you today. I'm there more as support, than as your attorney. Legal division does not appear at depositions or investigations as counsel for any employee. Since this does not appear to be an investigation against you, but more looking for information on Averhealth, I can attend. Please let me know if you have any questions or want to discuss before the meeting.
Thanks,
Jennifer

| | |
|---|---|
| **From:** | Machen, Shayne (DHHS) |
| **To:** | Campau, Wendy (DHHS); Sesti, Kelly (DHHS) |
| **Cc:** | Starling, Demetrius (DHHS) |
| **Subject:** | Averhealth Question |
| **Date:** | Friday, July 9, 2021 12:28:00 PM |

Good afternoon,

Do we know what case the Averhealth issue came up in? The US Attorney is requesting a copy of the transcript from that hearing. The issue preceded Demetrius and myself so our records are limited.

They are also asking for the dollar amount of SSBG funds we spend annually, for FY 20.

Shayne Machen, Esq.
Special Advisor to CSA Director Starling
Michigan Department of Health and Human Services
Phone | 231-655-9857
Email | MachenS@michigan.gov

**Ex. 245**

From:           Doane, Amanda (DHHS)
Sent:           Mon, 23 Aug 2021 17:51:45 +0000
To:             Hanks, Allison (DHHS)
Subject:        Ingham County Court contact?
Attachments:    Ingham County Court Opinion re Averhealth.pdf

Allison,

I hope you and yours are doing well.  It has been a while since we have spoken.

I am trying to find a court transcript from Back in May and do not know how to do that.  The case was in Lisa McCormick's court on May 28, 2021.  Our independent assessor of the Averhealth contract, Dr. Jarrad Wagner testified before the court and now our AG's office is making noises like they want the transcripts – not just the judge's opinion (attached).

Can you tell me who to contact or how to get a transcript of his testimony?

Amanda Doane
Department Analyst
Bureau of Out-of-Home Services
Children's Services Agency
235 S. Grand Ave., Suite 510
Lansing, MI 48933
517-282-5273 work
DoaneA@michigan.gov



*Michigan has a public records law. Most written communications to or from state officials regarding state business are public records available to the public and media upon request. Your e-mail communications and any attachments to them may be subject to public disclosure. E-mail Confidentiality Notice: This message, including any attachments is intended solely for the use of the named recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this e-mail is expressly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.*

*In re* MCL 15.243(1)(a) Minor(s).

FID No. 76442-1/2-NA

HONORABLE LISA MCCORMICK

**OPINION AND ORDER**

_____/

At a session of said Court held in the
City of Lansing, Ingham County, Michigan,
This 4th day of June, 2021.

### PRESENT: HONORABLE LISA MCCORMICK, Circuit Court Judge

This matter comes before the Court on Respondent-Mother's motion to suppress drug screen results from Averhealth. The Court having reviewed the pleadings, heard testimony as well as argument, and being otherwise fully advised in the premises now **DENIES** Respondent-Mothers motion.

### FINDINGS OF FACT

Petitioner admitted 12 Averhealth results for Respondent-Mother from a period of July 20, 2020 – January 21, 2021 during the Permanent Wardship Bench Trial.[1] During the course of the trial, Respondent-Mother questioned the accuracy of the Averhealth results.[2] On November 6, 2020, the Michigan State Court Administrative Office (SCAO) published a memorandum regarding concerns about the accuracy of drug test results provided by Averhealth. The

---

[1] Petitioner's Exhibit 2. The majority of the results were positive for Marijuana. All the results that were positive for marijuana were confirmed with the LC-MS/MS test and were over 2 ng/ml which is positive even under the increase to the cut off levels that went into effect on December 1, 2020.

[2] Respondent-Mother did not file a motion prior to the start of trial. The Court allowed Respondent-Mother to file its motion during the trial and argue the validity of the results.

1

memorandum set forth that an employee error led to 13 false positive test results in 2019. Averhealth sought to remedy the error through the adoption of new procedures that will provide greater oversight of the testing process. The memorandum went on to describe a subsequent false positive test result that was submitted in a court proceeding and allegations that Averhealth employee practices did not comply with the company's accreditation standards. When Department of Health and Human Services (DHHS) learned of the issue, they hired Wagner Toxicology Associates to conduct an independent investigation into the lab procedures and processes.

During the Permanent Wardship Bench Trial, witnesses were called to address concerns about the reliability of the Averhealth test results. The Court first heard testimony from Dominique Delagnes, Chief Operating Officer of Averhealth. Ms. Delagnes explained that the 13 false positive test results occurred because an employee skipped a slot when loading the samples into the testing apparatus causing each subsequently loaded sample to be sequentially off by one slot. The consequence of this error was that the test results for each sample after the skipped slot was associated with the wrong individual. Ms. Delagnes further testified that Averhealth addressed this issue by adding two more verification steps to the process in September or October of 2019 so that there are now three different individuals who check the sample sequence to prevent further error.

Ms. Delagnes explained how the false positive test result that was submitted in court and noted in the SCAO memo was not a false positive. Ms. Delagnes testified that they originally reported the test as negative. When asked to rerun the test several months later, the result was reported as positive. Ms. Delagnes explained the industry standard cutoff levels were higher than the custom Michigan cutoff levels and that Averhealth had performed an upgrade to their computer software, which caused the first test to apply the industry standard cutoffs instead of the Michigan cutoffs. Therefore, the test result was reported negative under the standard cutoff levels, but would

2

have reported positive had the lower Michigan cutoff levels been applied.[3] Beginning on December 1, 2020, Michigan has begun to apply the higher industry standard cutoff limits.

Finally, Ms. Delagnes testified that a former employee, Dr. Sarah Riley alleged that Averhealth was not complying with accreditation standards. Subsequent to those allegations, an investigation occurred by the Michigan State Police and several other individuals from different entities through Michigan.[4] Ms. Delagnes told this Court that the employee's claims were not substantiated and Averhealth's processes are valid, forensically defensible processes. DHHS also hired Wagner Toxicology Associates to conduct an independent investigation which was pending at the time of her testimony.

The Court next heard testimony from Dr. Sarah Riley, who testified as an expert in clinical lab science. Dr. Riley served as laboratory director for Averhealth from September 14, 2020 through November 3, 2020. Dr. Riley testified about her concern that Averhealth employees were not following standard operating procedures. She indicated that mass spectrometry is the "gold standard" method for testing in forensic toxicology. When using mass spectrometry, quality controls need to be included in every batch of specimens and the quality control samples should comprise ten percent of the batch. The quality control samples contain specific substances with specific intensities and are intended to ensure the accuracy of the results. Dr. Riley further testified that it was common practice at Averhealth for the analyst to continue to run the tests and report the results despite the quality control samples failing. Dr. Riley opined based on this practice and her observations that as much as 30% percent of the tests that Averhealth has done for Michigan could be false.

---

[3] Transcript of testimony of Dominique Delagnes, pgs. 24-26.
[4] Transcript of testimony of Dominique Delagnes, pgs. 14-15.

After Dr. Riley testified, DHHS received a report from an independent audit prepared by Dr. Jarrad Wagner and Dr. Larry Broussard on behalf of Wagner Toxicology Associates. Dr. Wagner testified as an expert in Forensic Science, Forensic Toxicology and Forensic Lab Science. Dr. Wagner indicated that his firm was hired by DHHS to conduct an audit of Averhealth. When Dr. Wagner was hired, he was not aware of the memo from SCAO dated November 6, 2020. Dr. Wagner and Dr. Broussard conducted a 2-day site visit on January 19-20, 2021. The purpose of the site visit was to confirm that personnel were conducting work in conformance with their standard operating procedure. As part of this site visit, a small number of reports were audited and he observed the laboratory process. There were some recommendations made but he opined the results reported were accurate and defensible.[5] In addition to his site visit and report, Dr. Wagner testified that he reviewed three laboratory results submitted by the Respondent-Mother. The collection dates were September 29, 2020, December 18, 2020. December 31, 2020.[6] It should be noted that the September 29, 2020 result was during Dr. Riley's tenure at Averhealth. He reviewed all related data from these results and confirmed the accuracy of all three results.

John Tarver from Quest Laboratories testified as an expert in Forensic Toxicology. Mr. Tarver's lab conducted two hair follicle tests submitted by Respondent-Mother. The hair specimen was collected on November 24, 2020 and February 8, 2021.[7] Both tests results were negative. Mr. Tanner did not review any of the Averhealth data or results.

## ANALYSIS

---

[5] Averhealth Lab – Site Visit Report, Dated February 28, 2021. Prepared by Dr. Jarrad R. Wagner & Dr. Larry Broussard.

[6] Petitioner's Exhibit 5. The three results admitted as Petitioner's Exhibit 5 were admitted as part of the 12 results admitted as Petitioner's Exhibit 1.

[7] Respondent-Mother's Exhibits K and L. Respondent-Mother previously admitted the same results as Exhibit A and F.

4

Respondent-Mother argues there are three primary issues effecting the reliability of the Averhealth drug screens that warrant their suppression. First, in 2019, an employee error led to 13 false positive test results. Second, a subsequent drug screen from Averhealth was submitted in a court proceeding and found to be a false positive. Third, the testimony of Dr. Sarah Riley established that Averhealth was not following proper accreditation standards in their testing process. Respondent-Mother also argues the Petitioner failed to disclose the Averhealth investigation amounting to a *Brady* violation.

## I.    THE 2019 FALSE POSITIVE DRUG TEST RESULTS.

Whether the 2019 false positive test results create ground to suppress in the case at bar depends on whether the issues that led to the faulty results has since been rectified. The evidence before the Court shows that the batch of 13 false positives was the result of an employee error wherein the employee whom loaded the batches, inadvertently skipped a slot causing each subsequent sample loaded to be off by one slot. In September or October of 2019, two more quality control checks were added to the testing process. No subsequent issues of similar nature have been brought to the Court's attention. Dr. Wagner confirmed that the additional quality control checks were occurring when he completed his site visit. Based on the testimony and evidence received by the Court, the 2019 incident appears to be a singular event that has since been rectified through the implementation of additional quality control checks. The test results in this case were provided after the two additional quality control checks were put into place and there is nothing to indicate the 2019 incident affected any of Respondent-Mother's results.

## II.   THE SUBSEQUENT FALSE POSITIVE RESULT THAT WAS SUBMITTED DURING A COURT PROCEEDING.

The discovery of the subsequent false positive test has created an issue regarding the reliability of Averhealth test results. However, the evidence before the Court shows the result was

5

not a false positive. Instead, the evidence shows that the result reported was negative, using cutoff levels that were not standard in Michigan at the time. The Averhealth computer system caused the test to be administered under the higher industry standard cutoff levels. The subsequent retest reported positive when using Michigan cut-off levels. Thus, the issue was not the accuracy or the reliability of the results, but the cutoff levels applied to the test.

## III. TESTIMONY REGARDING AVERHEALTH'S TESTING PROCESS.

Dr. Sarah Riley testified that Averhealth employees were not following standard operating procedures. Alternatively, Ms. Delagnes characterized Dr. Riley as a disgruntled employee whose claims were unsubstantiated. Dr. Riley testified how she discovered that Averhealth employees were continuing to report the results of patient samples despite the quality control samples failing. She testified that when she brought those concerns to the attention of Averhealth management, she was asked not to change anything and advised that Averhealth has contractual time constraints to report the data. Dr. Riley further testified that there were test results that she did not approve because she believed them to be inaccurate, but that she was unable to personally review every sample. When asked whether she believed the results of the tests done for the State of Michigan were erroneous, Dr. Riley indicated that she has significant concerns they were inaccurate and opined that as much as 30% of the test results could be false. However, she failed to provide any specific examples or provide the court with any examples from any results admitted in this matter.

Ms. Delagnes testified the allegations noted in the November 6, 2020 SCAO memo regarding Averhealth employees not complying with the company's accreditation standards were made by Dr. Riley who worked at Averhealth for approximately six weeks. Ms. Delagnes further testified that Averhealth employees followed standard operating procedures on a consistent basis. She informed the Court that DHHS, the Michigan State Police, and an individual named Paul

6

Kerry have conducted an independent investigation and concluded that Averhealth's processes are valid and forensically defensible.

Dr. Wagner provided an independent review of Averhealth's procedures. He was not aware of the allegations when he went to Averhealth for the site visit. He only learned of the allegations in between his site visit and his report being finalized. He had nothing to gain and did a thorough, complete review of the testing process. In addition to his findings, he randomly selected three results from this matter. He reviewed the data that supported the positive results and determined the results are reliable and accurate.

Mr. Tarver provided the Court with two hair follicle testing results. These results provide a 90-day look back as an indicator to determine use. Both results were negative. However, Mr. Tarver conceded that if a hair follicle test is negative, it is possible to have positive results from a different screen during the 90-day time period. This was confirmed by Eugene Schwilke, an expert in toxicology employed by Averhealth.[8] He testified the results may be different, even if taken at the same time, depending on whether the test is oral, urine or hair. The factors include the timing of the drug exposure, the amount of use and the sensitivity as well as the methodology used.

It is the Court's duty as the trier of fact to determine the credibility of the witnesses. The Court has heard the testimony of Ms. Delagnes, Dr. Riley, Dr. Wagner and Mr. Tarver regarding the reliability of the results.[9] Dr. Wagner conducted an independent review of Averhealth's laboratory process and testing. In addition to his independent site audit, he reviewed three results

---

[8] Eugene Schwilke explained the differences between Immunonassy and confirmation tests and the different types of tests including oral, urine and hair follicle tests. He did not testify regarding the accuracy or reliability of the results.

[9] Sarah Doane also testified. She is an employee of DHHS. She did not provide any testimony as to the validity of the Averhealth results. Eugene Schwilke did not testify as to the accuracy of the Averhealth results in this matter.

7

from this matter. He found the results accurate. The Court finds Dr. Wagner's testimony to be credible and reliable. Dr. Riley's testimony was speculative and did not provide the Court with any specific examples. Mr. Tarver indicated that it was possible to have a positive result 90 days before a hair follicle test. Therefore, the Court finds that the results admitted from Averhealth are reliable and denies suppression of Respondent-Mother's test results.

## BRADY ALLEGATION

Respondent-Mother claims that the Petitioner failed to disclose information about investigations of Averhealth in violation of *Brady* v *Maryland* 373 US 83 (1963).[10] The Court of Appeals in an unpublished opinion did not apply the Brady requirements in child protective proceedings. *In re Condron,* unpublished opinion per curiam of the Court of Appeals, decided August 20, 2020 (Docket No. 351240).[11] However, even if *Brady* did apply, the Court of Appeals adopted a four-factor Brady test. *People* v *Chenault*, 495 Mich 142, 151 (2014). The moving party must prove 1) that the state possessed evidence favorable to the defendant 2) that the evidence could not be obtained with any reasonable diligence 3) that the prosecution suppressed favorable evidence and 4) that the evidence if disclosed to the accused, a reasonable probability exists that would change the outcome of the proceedings. *Id.* at 151. There was no testimony that the prosecutor suppressed evidence or that the prosecutor suppressed any information specifically as to any of the results in this matter. There was also no testimony that DHHS withheld any information regarding these specific test results. Even assuming DHHS had the information about the Averhealth allegations, the evidence presented is not favorable to the

---

[10] Respondent-Mother's Brief in Support of Motion to Suppress Averhealth Drug Test Results.

[11] *In re Condron* was remanded to the trial court on other grounds. After the remand and a ruling from the trial court, the case was appealed *In re Condron*, unpublished opinion per curiam of the Court of Appeals, decided January 21, 2021 (Docket No. 351240). The issue of *Brady* in child protective proceedings was not addressed in the subsequent appeal.

8

Respondent-Mother. The evidence shows the Averhealth results are reliable and defensible in court. Even if the Court were to apply *Brady* to this case, the court does not find a *Brady* violation.

**THEREFORE, IT IS HEREBY ORDERED** that Respondent Mother's motion to suppress Averhealth results is **DENIED**.

6/4/2021
DATE

HONORABLE LISA MCCORMICK

# Redaction Log

Total Number of Redactions in Document: 1

## Redaction Reasons by Page

| Page | Reason | Description | Occurrences |
|------|--------|-------------|-------------|
| 2 | MCL 15.243(1)(a) | (4)(a) Information of a personal nature if public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy | 1 |

# Redaction Log

## Redaction Reasons by Exemption

| Reason | Description | Pages (Count) |
|---|---|---|
| MCL 15.243(1)(a) | (4)(a) Information of a personal nature if public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy | 2(1) |

From:              Willis, Rachel (DHHS)
Sent:              Wed, 2 Feb 2022 16:48:21 +0000
To:                Click, Tim (DHHS); Goad, Sarah (DHHS); LaHaine, Ann (DHHS)
Subject:           RE: Avertest d/b/a Averhealth

Hi Tim,

Sarah and I were able to do our background research. I just want to confirm that we are still proceeding with scheduling a meeting with the MI AG's and federal AG's to get more specific information regarding this complaint.

From: Click, Tim (DHHS) <ClickT@michigan.gov>
Sent: Tuesday, February 1, 2022 9:19 AM
To: Goad, Sarah (DHHS) <GoadS@michigan.gov>; LaHaine, Ann (DHHS) <LaHaineA@michigan.gov>; Willis, Rachel (DHHS) <WillisR4@michigan.gov>
Cc: Click, Tim (DHHS) <ClickT@michigan.gov>
Subject: RE: Avertest d/b/a Averhealth

Ann,

Please cancel this appointment for the time being.  Rachel is doing some prep work and we should hold off until that is completed.

Thanks

Tim

From: Goad, Sarah (DHHS) <GoadS@michigan.gov>
Sent: Tuesday, February 1, 2022 8:46 AM
To: LaHaine, Ann (DHHS) <LaHaineA@michigan.gov>; Click, Tim (DHHS) <ClickT@michigan.gov>; Willis, Rachel (DHHS) <WillisR4@michigan.gov>
Subject: RE: Avertest d/b/a Averhealth

You can reach back out to Carl and ask if it can be held beyond the timeframe he gave since we are having difficulty with calendars.  I'm not sure how urgent it is from their end.

Sarah Goad, MSW
Manager, Foster Care, Guardianship, and Adoption Program Office
Michigan Department of Health and Human Services
goads@michigan.gov
(517)599-8408



From: LaHaine, Ann (DHHS) <LaHaineA@michigan.gov>
Sent: Tuesday, February 1, 2022 8:41 AM
To: Click, Tim (DHHS) <ClickT@michigan.gov>; Goad, Sarah (DHHS) <GoadS@michigan.gov>; Willis, Rachel (DHHS) <WillisR4@michigan.gov>
Cc: LaHaine, Ann (DHHS) <LaHaineA@michigan.gov>
Subject: FW: Avertest d/b/a Averhealth

Good morning,

How important is this meeting?  Is it essential to have it within the next few weeks as we are running into scheduling issues.

From: Clevenger, Jeri (DHHS) <ClevengerJ1@michigan.gov>
Sent: Tuesday, February 1, 2022 8:39 AM
To: Bushinski, Vera (DHHS) <BushinskiV@michigan.gov>; LaHaine, Ann (DHHS) <LaHaineA@michigan.gov>; Reed, Erin (DHHS) <ReedE8@michigan.gov>
Subject: RE: Avertest d/b/a Averhealth

I'm sorry but Mary and Jennifer are not available any of those times.  Jeri

From: Bushinski, Vera (DHHS) <BushinskiV@michigan.gov>
Sent: Tuesday, February 1, 2022 8:18 AM
To: LaHaine, Ann (DHHS) <LaHaineA@michigan.gov>; Clevenger, Jeri (DHHS) <ClevengerJ1@michigan.gov>; Reed, Erin (DHHS) <ReedE8@michigan.gov>
Cc: Bushinski, Vera (DHHS) <BushinskiV@michigan.gov>
Subject: RE: Avertest d/b/a Averhealth

Will any time between 1:30 – 3:00 work on 2/9?

From: LaHaine, Ann (DHHS) <LaHaineA@michigan.gov>
Sent: Tuesday, February 1, 2022 7:47 AM
To: Clevenger, Jeri (DHHS) <ClevengerJ1@michigan.gov>; Reed, Erin (DHHS) <ReedE8@michigan.gov>; Bushinski, Vera (DHHS) <BushinskiV@michigan.gov>
Subject: RE: Avertest d/b/a Averhealth

02/09 4:00 -4:30

From: LaHaine, Ann (DHHS) <LaHaineA@michigan.gov>
Sent: Tuesday, February 1, 2022 7:43 AM
To: Clevenger, Jeri (DHHS) <ClevengerJ1@michigan.gov>; Reed, Erin (DHHS) <ReedE8@michigan.gov>;
Bushinski, Vera (DHHS) <BushinskiV@michigan.gov>
Cc: LaHaine, Ann (DHHS) <LaHaineA@michigan.gov>
Subject: FW: Avertest d/b/a Averhealth

Good morning,

After reviewing calendars, below are the possible options that I could find. Hopefully we can land on a
couple options, and I will offer them up the AGs office and see where we land.

02/07 8:30 -9:00, 9:00 -9:30, 3:30 -4:00
02/08 8:30 -9:00
02/09 2;30 -3:00


From: Goad, Sarah (DHHS) <GoadS@michigan.gov>
Sent: Monday, January 31, 2022 5:46 PM
To: Hammaker, Carl (AG) <HammakerC@michigan.gov>; Doane, Amanda (DHHS)
<DoaneA@michigan.gov>; LaHaine, Ann (DHHS) <LaHaineA@michigan.gov>
Cc: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>; Smitt, Zachary (AG) <SmittZ@michigan.gov>;
Starling, Demetrius (DHHS) <StarlingD@michigan.gov>; Willis, Rachel (DHHS) <WillisR4@michigan.gov>;
Click, Tim (DHHS) <ClickT@michigan.gov>; Machen, Shayne (DHHS) <MachenS@michigan.gov>
Subject: RE: Avertest d/b/a Averhealth

Carl,

Thank you for the information. In addition to the three of us we will also want Director Starling, Rachel
Willis, and Tim Click invited to the meeting. I've copied Ann LaHaine who has access to all of our
calendars and can work with you to provide available times between 2/2 and 2/7 that we are all
potentially available.

Sarah Goad, MSW
Manager, Foster Care, Guardianship, and Adoption Program Office
Michigan Department of Health and Human Services
goads@michigan.gov
(517)599-8408



From: Hammaker, Carl (AG) <HammakerC@michigan.gov>
Sent: Monday, January 31, 2022 3:44 PM
To: Goad, Sarah (DHHS) <GoadS@michigan.gov>; Doane, Amanda (DHHS) <DoaneA@michigan.gov>
Cc: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>; Smitt, Zachary (AG) <SmittZ@michigan.gov>
Subject: RE: Avertest d/b/a Averhealth

All:

Sorry for the delay in getting back to you.  We had to deal with some internal issues here within the AG's office before moving forward to setting up a call.  I have cc'd Zachary Smitt from our HEFS division, who has been advising MDHHS related to certain ongoing Averhealth issues.

Synopsis of what is to be discussed on call:



MCL 15.243(1)(g)

I am not certain who should be included on this call and will leave that to your judgment.  Looking back on previous correspondence,  Shayne Machen was involved during our previous discussions with MDHHS regarding Averhealth.

If possible, could you send me your availability for Wed. 2/2 through Monday 2/7.  I will try to find a time that everyone is available.

Thanks,
Carl

Carl Hammaker
Assistant Attorney General
Health Care Fraud Division

Michigan Department of Attorney General
P.O. Box 30218
Lansing, MI 48909
(517) 241-6500

From: Goad, Sarah (DHHS) <GoadS@michigan.gov>
Sent: Thursday, January 27, 2022 8:21 AM
To: Doane, Amanda (DHHS) <DoaneA@michigan.gov>; Hammaker, Carl (AG)
<HammakerC@michigan.gov>
Cc: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Subject: RE: Avertest d/b/a Averhealth

I am including Jennifer Warner from MDHHS Children's Services Legal Division; please include her in any
further communications and any meeting that is set up.

Sarah Goad, MSW
Manager, Foster Care, Guardianship, and Adoption Program Office
Michigan Department of Health and Human Services
goads@michigan.gov
(517)599-8408



From: Doane, Amanda (DHHS) <DoaneA@michigan.gov>
Sent: Thursday, January 27, 2022 7:04 AM
To: Hammaker, Carl (AG) <HammakerC@michigan.gov>
Cc: Goad, Sarah (DHHS) <GoadS@michigan.gov>
Subject: RE: Avertest d/b/a Averhealth

Carl,

I am the person who oversees the Averhealth contract for drug screens within DHHS.  Sarah and I will be
happy to meet with you and your team to discuss Averhealth.  Can you give me a brief synopsis on what
you would like to discuss so I can be prepared with any documentation I may need?

Amanda


Amanda Doane

Department Analyst
Bureau of Out-of-Home Services
Children's Services Agency
235 S. Grand Ave., Suite 510
Lansing, MI 48933
517-282-5273 work
DoaneA@michigan.gov

---

From: Hammaker, Carl (AG) <HammakerC@michigan.gov>
Sent: Wednesday, January 26, 2022 4:34 PM
To: Doane, Amanda (DHHS) <DoaneA@michigan.gov>
Cc: Goad, Sarah (DHHS) <GoadS@michigan.gov>
Subject: Avertest d/b/a Averhealth

Ms. Doane,



MCL 15.243(1)(g)

I cc'd your supervisor as reflected on the most recent org chart I was able to find.

If you have questions please feel free to contact me on Teams, my office phone below, or my cell 248-835-6853.

Thanks,
Carl

Carl Hammaker
Assistant Attorney General
Health Care Fraud Division
Michigan Department of Attorney General
P.O. Box 30218
Lansing, MI 48909
(517) 241-6502

# Redaction Log

Total Number of Redactions in Document: 2

## Redaction Reasons by Page

| Page | Reason | Description | Occurrences |
|------|--------|-------------|-------------|
| 4 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 1 |
| 6 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 1 |

# Redaction Log

## Redaction Reasons by Exemption

| Reason | Description | Pages (Count) |
|---|---|---|
| MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 6(1)<br>4(1) |

**Ex. 253**

| From: | Click, Tim (DHHS) |
|---|---|
| Sent: | Mon, 31 Jan 2022 20:18:08 +0000 |
| To: | LaHaine, Ann (DHHS) |
| Cc: | Bushinski, Vera (DHHS); Machen, Shayne (DHHS); Reed, Erin (DHHS); Phelps, Laurie (DHHS) |
| Subject: | FW: Avertest d/b/a Averhealth |

Ann,

Can you set up a 45 minute appointment for me, Rachel, Wendy, Demetrius, Sarah Goad, and Amanda Doane to discuss the Averhealth contract for as soon as we can all meet?

Thank you

Tim

---

From: Starling, Demetrius (DHHS) <StarlingD@michigan.gov>
Sent: Monday, January 31, 2022 12:24 PM
To: Click, Tim (DHHS) <ClickT@michigan.gov>; Willis, Rachel (DHHS) <WillisR4@michigan.gov>; Campau, Wendy (DHHS) <CampauW@michigan.gov>
Subject: RE: Avertest d/b/a Averhealth

Yes please, thanks in advance Tim.

---

From: Click, Tim (DHHS) <ClickT@michigan.gov>
Sent: Monday, January 31, 2022 12:24 PM
To: Willis, Rachel (DHHS) <WillisR4@michigan.gov>; Starling, Demetrius (DHHS) <StarlingD@michigan.gov>; Campau, Wendy (DHHS) <CampauW@michigan.gov>
Cc: Click, Tim (DHHS) <ClickT@michigan.gov>
Subject: RE: Avertest d/b/a Averhealth

I want to say that the last time we spoke about issues with the contract, we were not at the point where we could say there were performance issues.

Should the three of us have a meeting to go over the list of concerns raised in the last six months to see if our position on this point has/could change?  The last issue where I was involved turned out to be a miscommunication by a PAFC worker.  I'm not sure what Judge Allen's new concern is.

I can ask Ann to set up a meeting with the three of us, Sarah Goad and Amanda if you think it would be a good idea.

Thoughts?

Tim

From: Willis, Rachel (DHHS) <WillisR4@michigan.gov>
Sent: Monday, January 31, 2022 12:15 PM
To: Starling, Demetrius (DHHS) <StarlingD@michigan.gov>; Click, Tim (DHHS) <ClickT@michigan.gov>;
Campau, Wendy (DHHS) <CampauW@michigan.gov>
Subject: FW: Avertest d/b/a Averhealth

FYI- Also, last time we bid out this contract it took a year to get up and running.

From: Doane, Amanda (DHHS) <DoaneA@michigan.gov>
Sent: Monday, January 31, 2022 8:32 AM
To: Willis, Rachel (DHHS) <WillisR4@michigan.gov>; Goad, Sarah (DHHS) <GoadS@michigan.gov>
Subject: RE: Avertest d/b/a Averhealth

It goes until August 31, 2024 with three one-year options.

From: Willis, Rachel (DHHS) <WillisR4@michigan.gov>
Sent: Monday, January 31, 2022 8:28 AM
To: Doane, Amanda (DHHS) <DoaneA@michigan.gov>; Goad, Sarah (DHHS) <GoadS@michigan.gov>
Subject: Fwd: Avertest d/b/a Averhealth

Hi Amanda and Sarah,

Do you recall how long we have left on this contract?

From: Starling, Demetrius (DHHS) <StarlingD@michigan.gov>
Sent: Monday, January 31, 2022 8:16:25 AM
To: Campau, Wendy (DHHS) <CampauW@michigan.gov>; Click, Tim (DHHS) <ClickT@michigan.gov>;
Willis, Rachel (DHHS) <WillisR4@michigan.gov>
Cc: Machen, Shayne (DHHS) <MachenS@michigan.gov>
Subject: FW: Avertest d/b/a Averhealth

From: Starling, Demetrius (DHHS)
Sent: Thursday, January 27, 2022 1:44 PM
To: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>; Goad, Sarah (DHHS) <GoadS@michigan.gov>
Cc: Machen, Shayne (DHHS) <MachenS@michigan.gov>
Subject: RE: Avertest d/b/a Averhealth

I would like to be present, thanks all.

From: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Sent: Thursday, January 27, 2022 7:50 AM

To: Goad, Sarah (DHHS) <GoadS@michigan.gov>
Cc: Starling, Demetrius (DHHS) <StarlingD@michigan.gov>; Machen, Shayne (DHHS)
<MachenS@michigan.gov>
Subject: RE: Avertest d/b/a Averhealth

Good Morning, Sarah:

MCL 15.243(1)(g)

Thank you,
Jennifer

---

From: Goad, Sarah (DHHS) <GoadS@michigan.gov>
Sent: Thursday, January 27, 2022 7:27 AM
To: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Subject: FW: Avertest d/b/a Averhealth

Jennifer,

MCL 15.243(1)(g)

Thanks,

## Sarah Goad, MSW
Manager, Foster Care, Guardianship, and Adoption Program Office
Michigan Department of Health and Human Services
goads@michigan.gov
(517)599-8408



---

From: Hammaker, Carl (AG) <HammakerC@michigan.gov>
Sent: Wednesday, January 26, 2022 4:34 PM
To: Doane, Amanda (DHHS) <DoaneA@michigan.gov>
Cc: Goad, Sarah (DHHS) <GoadS@michigan.gov>
Subject: Avertest d/b/a Averhealth

Ms. Doane,



MCL 15.243(1)(g)

Thanks,
Carl

Carl Hammaker
Assistant Attorney General
Health Care Fraud Division
Michigan Department of Attorney General
P.O. Box 30218
Lansing, MI 48909
(517) 241-6502

# Redaction Log

Total Number of Redactions in Document: 3

## Redaction Reasons by Page

| Page | Reason | Description | Occurrences |
|------|--------|-------------|-------------|
| 3 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 2 |
| 4 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 1 |

# Redaction Log

## Redaction Reasons by Exemption

| Reason | Description | Pages (Count) |
| --- | --- | --- |
| MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 4(1) 3(2) |

| | |
|---|---|
| Subject: | MI CSA, AG & AUSA Anthony Gentner / RE: Avertest/Averhealth |
| Location: | Microsoft Teams Meeting |
| | |
| Start: | Tue 03/01/2022 01:30 PM |
| End: | Tue 03/01/2022 02:00 PM |
| Show Time As: | Tentative |

| | |
|---|---|
| Organizer: | LaHaine, Ann (DHHS) |
| Required Attendees: | LaHaine, Ann (DHHS);Starling, Demetrius (DHHS);Click, Tim (DHHS);Willis, Rachel (DHHS);Machen, Shayne (DHHS);Goad, Sarah (DHHS);Doane, Amanda (DHHS);Warner, Jennifer (DHHS);Brennan, Mary (DHHS);Hammaker, Carl (AG);Smitt, Zachary (AG);Anthony.Gentner2@usdoj.gov |
| Optional Attendees: | Bushinski, Vera (DHHS);Reed, Erin (DHHS);Clevenger, Jeri (DHHS) |

02/03 Setting a MS Teams meeting for Tuesday, March 1st at 2:30, thank you.

---

# Microsoft Teams meeting

Join on your computer or mobile app
[Click here to join the meeting](#)

Or call in (audio only)
███ MCL 15.243(1)(u) ███ United States, Pontiac
Phone Conference ID: ███ MCL 15.243(1)(u) ███
[Find a local number](#) | [Reset PIN](#)

[Learn More](#) | [Meeting options](#)

---

# Redaction Log

Total Number of Redactions in Document: 2

## Redaction Reasons by Page

| Page | Reason | Description | Occurrences |
|------|--------|-------------|-------------|
| 1 | MCL 15.243(1)(u) | (23) Records of a public body's security measures, including security plans, security codes and combinations, passwords, passes, keys, and security procedures, to the extent that the records relate to the ongoing security of the public body. | 2 |

# Redaction Log

## Redaction Reasons by Exemption

| Reason | Description | Pages (Count) |
|---|---|---|
| MCL 15.243(1)(u) | (23) Records of a public body's security measures, including security plans, security codes and combinations, passwords, passes, keys, and security procedures, to the extent that the records relate to the ongoing security of the public body. | 1(2) |

**Ex. 256**

| | |
|---|---|
| From: | Machen, Shayne (DHHS) |
| Sent: | Wed, 9 Mar 2022 14:06:01 +0000 |
| To: | Warner, Jennifer (DHHS) |
| Subject: | RE: [EXTERNAL] RE: Averhealth testing |

Yes.

From: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Sent: Wednesday, March 9, 2022 7:49 AM
To: Machen, Shayne (DHHS) <MachenS@michigan.gov>
Subject: FW: [EXTERNAL] RE: Averhealth testing

Hi Shayne,
It is next week not today.  Are you available next Wednesday at 11:00 to talk to the CAP scientist?
Thanks,
Jennifer

From: Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>
Sent: Tuesday, March 8, 2022 5:24 PM
To: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Cc: Hammaker, Carl (AG) <HammakerC@michigan.gov>
Subject: Re: [EXTERNAL] RE: Averhealth testing

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

MCL 15.243(1)(g)

Sent from my iPhone

On Mar 8, 2022, at 4:35 PM, Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov> wrote:

MCL 15.243(1)(g)

Jennifer

Jennifer Warner
*She/Her/Hers*
Children's Services Legal Division Director
Michigan Department of Health and Human Services
517-243-7645

*Confidentiality Notice: This message, including any attachments, is intended solely for the use of the named recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this email is expressly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

*The Legal Affairs Administration is committed to Race, Equity, Diversity, and Inclusion and to becoming an anti-racist, diverse, equitable, and inclusive Administration.*

From: Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>
Sent: Tuesday, March 8, 2022 2:53 PM
To: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Cc: Hammaker, Carl (AG) <HammakerC@michigan.gov>
Subject: RE: Averhealth testing

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

MCL 15.243(1)(g)

From: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Sent: Tuesday, March 8, 2022 11:05 AM
To: Gentner, Anthony (USAMIE) <AGentner@usa.doj.gov>
Subject: [EXTERNAL] RE: Averhealth testing

Hi Anthony,
I just wanted to let you know that Shayne Machen from MDHHS and Toni Harris or Veneshia Cezil from our AGs office will join the call today. Thank you!
-Jennifer

From: Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>
Sent: Tuesday, March 8, 2022 9:27 AM
To: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>; Hammaker, Carl (AG)

<HammakerC@michigan.gov>
Subject: RE: Averhealth testing

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

Thank you both. I just forwarded you the dial-in information for this afternoon. Let me know if you do not receive it.

From: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Sent: Tuesday, March 8, 2022 7:06 AM
To: Hammaker, Carl (AG) <HammakerC@michigan.gov>; Gentner, Anthony (USAMIE) <AGentner@usa.doj.gov>
Subject: [EXTERNAL] Re: Averhealth testing

I can be on the call.
Jennifer

From: Hammaker, Carl (AG) <HammakerC@michigan.gov>
Sent: Tuesday, March 8, 2022 6:57:05 AM
To: Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>; Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Subject: RE: Averhealth testing

Anthony,

I am not in the office today, but will try and hop on the call at 2. Please send the call-in info.

Carl

From: Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>
Sent: Monday, March 7, 2022 7:44 PM
To: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>; Hammaker, Carl (AG) <HammakerC@michigan.gov>
Subject: RE: Averhealth testing
Importance: High

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

Jennifer and Carl,

MCL 15.243(1)(g)

Thanks,
Anthony

From: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Sent: Friday, March 4, 2022 4:02 PM
To: Gentner, Anthony (USAMIE) <AGentner@usa.doj.gov>; Hammaker, Carl (AG)
<HammakerC@michigan.gov>
Subject: [EXTERNAL] RE: Averhealth testing

Anthony,

MCL 15.243(1)(g)

Thank you for pulling this together.
-Jennifer

Jennifer Warner
*She/Her/Hers*
Children's Services Legal Division Director
Michigan Department of Health and Human Services
517-243-7645

*Confidentiality Notice: This message, including any attachments, is intended solely for the use of the named recipient(s) and may contain confidential and/or priviledged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this email is expressly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

*The Legal Affairs Administration is committeed to Race, Equity, Diversity, and Inclusion and to becoming an anti-racist, diverse, equitable, and inclusive Administration.*

From: Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>
Sent: Friday, March 4, 2022 3:48 PM
To: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>; Hammaker, Carl (AG)
<HammakerC@michigan.gov>
Subject: RE: Averhealth testing

**CAUTION: This is an External email. Please send suspicious emails to** abuse@michigan.gov

Jennifer,



MCL 15.243(1)(g)

Thanks,
Anthony

From: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Sent: Friday, March 4, 2022 2:51 PM
To: Gentner, Anthony (USAMIE) <AGentner@usa.doj.gov>; Hammaker, Carl (AG) <HammakerC@michigan.gov>
Subject: [EXTERNAL] RE: Averhealth testing

Good afternoon, Anthony:

MCL 15.243(1)(g)

Thank you,
Jennifer

Jennifer Warner
*She/Her/Hers*
Children's Services Legal Division Director
Michigan Department of Health and Human Services
517-243-7645

*Confidentiality Notice: This message, including any attachments, is intended solely for the use of the named recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this email is expressly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

*The Legal Affairs Administration is committed to Race, Equity, Diversity, and Inclusion and to becoming an anti-racist, diverse, equitable, and inclusive Administration.*

From: Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>
Sent: Friday, March 4, 2022 1:13 PM
To: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>; Hammaker, Carl (AG) <HammakerC@michigan.gov>
Subject: RE: Averhealth testing

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

Jennifer,



MCL 15.243(1)(g)

Thanks,
Anthony

///

MCL 15.243(1)(g)



MCL 15.243(1)(g)

MCL 15.243(1)(g)

---

From: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Sent: Friday, March 4, 2022 11:27 AM
To: Gentner, Anthony (USAMIE) <AGentner@usa.doj.gov>; Hammaker, Carl (AG) <HammakerC@michigan.gov>
Subject: [EXTERNAL] RE: Averhealth testing

Good morning,

MCL 15.243(1)(g)

Jennifer

Jennifer Warner
*She/Her/Hers*
Children's Services Legal Division Director
Michigan Department of Health and Human Services
517-243-7645

*Confidentiality Notice: This message, including any attachments, is intended solely for the use of the named recipient(s) and may contain confidential and/or priviledged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this email is expressly*

*prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

*The Legal Affairs Administration is committed to Race, Equity, Diversity, and Inclusion and to becoming an anti-racist, diverse, equitable, and inclusive Administration.*

From: Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>
Sent: Wednesday, March 2, 2022 4:22 PM
To: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>; Hammaker, Carl (AG) <HammakerC@michigan.gov>
Subject: RE: Averhealth testing

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

Jennifer,

MCL 15.243(1)(g)

Thanks,
Anthony

**Anthony Gentner** | Assistant United States Attorney
United States Attorney's Office | Eastern District of Michigan
211 W. Fort Street, Suite 2001 | Detroit, MI 48226
Direct: (313) 226-9778 | Cell: (313) 670-0618
Email: anthony.gentner2@usdoj.gov

From: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Sent: Wednesday, March 2, 2022 3:06 PM
To: Gentner, Anthony (USAMIE) <AGentner@usa.doj.gov>; Hammaker, Carl (AG) <HammakerC@michigan.gov>
Subject: [EXTERNAL] Averhealth testing
Importance: High

Good afternoon,

MCL 15.243(1)(g)

Thanks,
Jennifer


Jennifer Warner
*She/Her/Hers*
Children's Services Legal Division Director
Michigan Department of Health and Human Services
517-243-7645

*Confidentiality Notice: This message, including any attachments, is intended solely for the use of the named recipient(s) and may contain confidential and/or priviledged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this email is expressly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

*The Legal Affairs Administration is committeed to Race, Equity, Diversity, and Inclusion and to becoming an anti-racist, diverse, equitable, and inclusive Administration.*

# Redaction Log

Total Number of Redactions in Document: 14

## Redaction Reasons by Page

| Page | Reason | Description | Occurrences |
|------|--------|-------------|-------------|
| 1 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 2 |
| 2 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 1 |
| 4 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 2 |
| 5 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 2 |
| 6 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 2 |
| 7 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 3 |
| 8 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 1 |
| 9 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 1 |

# Redaction Log

## Redaction Reasons by Exemption

| Reason | Description | Pages (Count) |
|---|---|---|
| MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 9(1) 8(1) 7(3) 6(2) 5(2) 4(2) 2(1) 1(2) |

**Ex. 258**

From:          Machen, Shayne (DHHS)
Sent:          Wed, 9 Mar 2022 14:06:01 +0000
To:            Warner, Jennifer (DHHS)
Subject:       RE: [EXTERNAL] RE: Averhealth testing

Yes.

From: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Sent: Wednesday, March 9, 2022 7:49 AM
To: Machen, Shayne (DHHS) <MachenS@michigan.gov>
Subject: FW: [EXTERNAL] RE: Averhealth testing

Hi Shayne,
It is next week not today.  Are you available next Wednesday at 11:00 to talk to the CAP scientist?
Thanks,
Jennifer

From: Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>
Sent: Tuesday, March 8, 2022 5:24 PM
To: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Cc: Hammaker, Carl (AG) <HammakerC@michigan.gov>
Subject: Re: [EXTERNAL] RE: Averhealth testing

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

MCL 15.243(1)(g)

Sent from my iPhone

On Mar 8, 2022, at 4:35 PM, Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov> wrote:

MCL 15.243(1)(g)

Jennifer

Jennifer Warner
*She/Her/Hers*
Children's Services Legal Division Director
Michigan Department of Health and Human Services
517-243-7645

*Confidentiality Notice: This message, including any attachments, is intended solely for the use of the named recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this email is expressly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

*The Legal Affairs Administration is committed to Race, Equity, Diversity, and Inclusion and to becoming an anti-racist, diverse, equitable, and inclusive Administration.*

From: Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>
Sent: Tuesday, March 8, 2022 2:53 PM
To: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Cc: Hammaker, Carl (AG) <HammakerC@michigan.gov>
Subject: RE: Averhealth testing

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

MCL 15.243(1)(g)

From: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Sent: Tuesday, March 8, 2022 11:05 AM
To: Gentner, Anthony (USAMIE) <AGentner@usa.doj.gov>
Subject: [EXTERNAL] RE: Averhealth testing

Hi Anthony,
I just wanted to let you know that Shayne Machen from MDHHS and Toni Harris or Veneshia Cezil from our AGs office will join the call today. Thank you!
-Jennifer

From: Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>
Sent: Tuesday, March 8, 2022 9:27 AM
To: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>; Hammaker, Carl (AG)

<HammakerC@michigan.gov>
Subject: RE: Averhealth testing

**CAUTION: This is an External email. Please send suspicious emails to**
**abuse@michigan.gov**

Thank you both. I just forwarded you the dial-in information for this afternoon. Let me know if you do not receive it.

From: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Sent: Tuesday, March 8, 2022 7:06 AM
To: Hammaker, Carl (AG) <HammakerC@michigan.gov>; Gentner, Anthony (USAMIE) <AGentner@usa.doj.gov>
Subject: [EXTERNAL] Re: Averhealth testing

I can be on the call.
Jennifer

From: Hammaker, Carl (AG) <HammakerC@michigan.gov>
Sent: Tuesday, March 8, 2022 6:57:05 AM
To: Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>; Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Subject: RE: Averhealth testing

Anthony,

I am not in the office today, but will try and hop on the call at 2. Please send the call-in info.

Carl

From: Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>
Sent: Monday, March 7, 2022 7:44 PM
To: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>; Hammaker, Carl (AG) <HammakerC@michigan.gov>
Subject: RE: Averhealth testing
Importance: High

**CAUTION: This is an External email. Please send suspicious emails to**
**abuse@michigan.gov**

Jennifer and Carl,

**MCL 15.243(1)(g)**

Thanks,
Anthony

From: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Sent: Friday, March 4, 2022 4:02 PM
To: Gentner, Anthony (USAMIE) <AGentner@usa.doj.gov>; Hammaker, Carl (AG)
<HammakerC@michigan.gov>
Subject: [EXTERNAL] RE: Averhealth testing

Anthony,

**MCL 15.243(1)(g)**

Thank you for pulling this together.
-Jennifer

Jennifer Warner
*She/Her/Hers*
Children's Services Legal Division Director
Michigan Department of Health and Human Services
517-243-7645

*Confidentiality Notice: This message, including any attachments, is intended solely for the use of the named recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this email is expressly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

*The Legal Affairs Administration is committed to Race, Equity, Diversity, and Inclusion and to becoming an anti-racist, diverse, equitable, and inclusive Administration.*

From: Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>
Sent: Friday, March 4, 2022 3:48 PM
To: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>; Hammaker, Carl (AG)
<HammakerC@michigan.gov>
Subject: RE: Averhealth testing

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

Jennifer,



MCL 15.243(1)(g)

Thanks,
Anthony

---

From: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Sent: Friday, March 4, 2022 2:51 PM
To: Gentner, Anthony (USAMIE) <AGentner@usa.doj.gov>; Hammaker, Carl (AG) <HammakerC@michigan.gov>
Subject: [EXTERNAL] RE: Averhealth testing

Good afternoon, Anthony:

MCL 15.243(1)(g)

Thank you,
Jennifer

Jennifer Warner
*She/Her/Hers*
Children's Services Legal Division Director
Michigan Department of Health and Human Services
517-243-7645

*Confidentiality Notice: This message, including any attachments, is intended solely for the use of the named recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this email is expressly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

*The Legal Affairs Administration is committed to Race, Equity, Diversity, and Inclusion and to becoming an anti-racist, diverse, equitable, and inclusive Administration.*

---

From: Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>
Sent: Friday, March 4, 2022 1:13 PM
To: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>; Hammaker, Carl (AG) <HammakerC@michigan.gov>
Subject: RE: Averhealth testing

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

Jennifer,



MCL 15.243(1)(g)

Thanks,
Anthony

///

MCL 15.243(1)(g)



MCL 15.243(1)(g)

MCL 15.243(1)(g)

---

From: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Sent: Friday, March 4, 2022 11:27 AM
To: Gentner, Anthony (USAMIE) <AGentner@usa.doj.gov>; Hammaker, Carl (AG) <HammakerC@michigan.gov>
Subject: [EXTERNAL] RE: Averhealth testing

Good morning,

MCL 15.243(1)(g)

Jennifer

Jennifer Warner
*She/Her/Hers*
Children's Services Legal Division Director
Michigan Department of Health and Human Services
517-243-7645

*Confidentiality Notice: This message, including any attachments, is intended solely for the use of the named recipient(s) and may contain confidential and/or priviledged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this email is expressly*

*prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

*The Legal Affairs Administration is committed to Race, Equity, Diversity, and Inclusion and to becoming an anti-racist, diverse, equitable, and inclusive Administration.*

From: Gentner, Anthony (USAMIE) <Anthony.Gentner2@usdoj.gov>
Sent: Wednesday, March 2, 2022 4:22 PM
To: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>; Hammaker, Carl (AG) <HammakerC@michigan.gov>
Subject: RE: Averhealth testing

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

Jennifer,

MCL 15.243(1)(g)

Thanks,
Anthony

**Anthony Gentner** | Assistant United States Attorney
United States Attorney's Office | Eastern District of Michigan
211 W. Fort Street, Suite 2001 | Detroit, MI 48226
Direct: (313) 226-9778 | Cell: (313) 670-0618
Email: anthony.gentner2@usdoj.gov

From: Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
Sent: Wednesday, March 2, 2022 3:06 PM
To: Gentner, Anthony (USAMIE) <AGentner@usa.doj.gov>; Hammaker, Carl (AG) <HammakerC@michigan.gov>
Subject: [EXTERNAL] Averhealth testing
Importance: High

Good afternoon,

Thanks,
Jennifer


Jennifer Warner
*She/Her/Hers*
Children's Services Legal Division Director
Michigan Department of Health and Human Services
517-243-7645

*Confidentiality Notice: This message, including any attachments, is intended solely for the use of the named recipient(s) and may contain confidential and/or priviledged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this email is expressly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

*The Legal Affairs Administration is committeed to Race, Equity, Diversity, and Inclusion and to becoming an anti-racist, diverse, equitable, and inclusive Administration.*

# Redaction Log

Total Number of Redactions in Document: 14

## Redaction Reasons by Page

| Page | Reason | Description | Occurrences |
|------|--------|-------------|-------------|
| 1 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 2 |
| 2 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 1 |
| 4 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 2 |
| 5 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 2 |
| 6 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 2 |
| 7 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 3 |
| 8 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 1 |
| 9 | MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 1 |

# Redaction Log

## Redaction Reasons by Exemption

| Reason | Description | Pages (Count) |
|---|---|---|
| MCL 15.243(1)(g) | (9) Information or records subject to the attorney-client privilege. | 9(1)<br>8(1)<br>7(3)<br>6(2)<br>5(2)<br>4(2)<br>2(1)<br>1(2) |

**Ex. 259**

| | |
|---|---|
| **From:** | Roubal, Lewis (DHHS) |
| **To:** | Starling, Demetrius (DHHS) |
| **Subject:** | RE: Substance Use Testing Update |
| **Date:** | Tuesday, March 8, 2022 4:26:00 PM |

What changed prompting this?

**From:** Starling, Demetrius (DHHS) <StarlingD@michigan.gov>
**Sent:** Tuesday, March 8, 2022 3:37 PM
**To:** Roubal, Lewis (DHHS) <RoubalL@michigan.gov>
**Subject:** FW: Substance Use Testing Update

Hi Lew,

Sharing this as an FYI, and one of several steps that I'm taking in regard to Averhealth that I can get you caught up with tomorrow. We have received guidance from Legal and the AG's office over the last couple of days to insure that we are making well informed decisions regarding Averhealth.

**From:** Machen, Shayne (DHHS) <MachenS@michigan.gov>
**Sent:** Tuesday, March 8, 2022 3:34 PM
**To:** Kelly Wagner <wagnerk@courts.mi.gov>
**Cc:** Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>; Starling, Demetrius (DHHS) <StarlingD@michigan.gov>
**Subject:** Substance Use Testing Update

Kelly,

We wanted to let you know that we are sending the attached Communication Issuance (CI) to our staff today. If the courts have questions about this CI, please direct them to Jen Warner and myself. Workers do not have information apart from this CI. We will have additional information to provide to our staff and the courts in the coming weeks.

Please let me know if you have any questions.

Shayne Machen, Esq.
Special Advisor to the Children's Services Agency Director
Michigan Department of Health and Human Services
Cell     | 231-655-9857
Email  | MachenS@Michigan.gov

| From: | Machen, Shayne (DHHS) |
|---|---|
| To: | Campau, Wendy (DHHS); Click, Tim (DHHS); Cross, Jason (DHHS); Lovell, Luther (DHHS); Marner, Shelly J. (DHHS); Martin, Danielle (DHHS); McDougle, Tiffany (DHHS); Sesti, Kelly (DHHS); Starling, Demetrius (DHHS); Wheaton, Bob (DHHS); Williams, Douglas (DHHS); Willis, Rachel (DHHS); Wrayno, Jennifer (DHHS) |
| Cc: | Bushinski, Vera (DHHS) |
| Subject: | Executive Briefing |
| Date: | Thursday, March 10, 2022 8:48:00 AM |

Good afternoon,

Here is the executive briefing for this week. Director Hertel received a shortened version so that I can comply with her preference for one or two line updates. If you'd like additional details about any of the below projects, please connect with staff from the areas overseeing the projects.

Have a great weekend everyone.

<u>Weekly Data</u>

## Foster Care Data

- Number of children in care – 10,003 (-23)
- Number of foster homes statewide – 4,926 (-31)
- Number of group homes - 131 (-2)
- MIC – 4.3

## CCI Data

- Number of children in CCIs - 563 (-5)
- Licensed CCIs - 133 (no change)
- Special Investigations - 61 (-19)
- Number of CCIs on 1st or 2nd Provisional License - 5 (no change)
- Number of CCIs Recommended for License Revocation - 2 (no change)

## Children Placed Out of State

- Out of State Child Caring Institution - 5 (-2)
- Out of State Foster Home – 8 (no change)
- Out of State Licensed Relative – 33 (no change)
- Out of State Parental Home - 25 (-2)
- Out of State Unlicensed Relative - 67 (-3)

## <u>Fingerprint Backlog Update</u>

- PAFC Adoption Fingerprint
  - SOP - 14 Days
  - Current status – within 22 days
- Private Adoption Fingerprints
  - SOP - 14 days
  - Current status – within 20 days

Foster Parent fingerprints
- SOP - 14 days
- Current status – on time
- CCI New Hire Fingerprints
  - SOP - 48 hours
  - Current status - on time
- Rapid Relative Fingerprints
  - SOP - 7 days
  - Current status - on time

## Comprehensive Child Welfare Information System (CCWIS)

- Interviews with field staff regarding the Intake/Investigation module began on 3/1/22 and will continue through 3/21/22.
- Planning for the Business Process Redesign (BPR) and Human Center Design (HCD) kickoff occurred on 3/4/22 with county leaders who have field staff participating in interviews.
- A Product Owner DA-13 position was posted on 3/3/22.
- A DA-12 subject matter expert position is awaiting Civil Service approval.
- OCM is in the process of developing training for DHHS staff and private agencies.
- Laurie Russell, the analyst replacing Robin Luckadoo, is actively engaged and onboard as of 3/6/22.
- Multiple data clean up and data conversion activities are in progress to prepare for the first mock run of conversion for the Child Welfare Licensing Module (CWLM).

## MiSACWIS

- The draft Memo of Understanding for the tribal government access to enter social work contacts in MiSACWIS is progressing and triggered multiple action items.
- Significant efforts are in progress cleaning up data in MiSACWIS and working with the field in parallel, in preparation for the implementation of the licensing module.
- The teams are completing Rough Order of Magnitudes (ROM) for projects recently approved as a result of surplus information technology (IT) funds.
- The project roadmap is being updated to reflect newly approved projects and CWLM considerations to support efforts for prioritization.
- MDHHS business analysts and DTMB technical resources are reviewing tools provided by the federal Administration for Children and Families that provide guidance for CCWIS development.
  - The awareness gleaned from these assessment tools will be utilized in the Business Process Review and Human Centered Design sessions to assure proper considerations when prepping for Intake and Investigation for CCWIS.

## Front-End Redesign

- Led and facilitated MIC's first Peer Review that will continue occurring each calendar year.
- Continuing to work with Evident Change to prepare Centralized Intake to complete IRR testing on the SDM intake tool.

-

<u>Families First Prevention Services Act (FFPSA)</u>

- The Children's Bureau provided feedback on the FFPSA plan on 2/15/2022. MDDHS is preparing a response to the additional questions.

<u>CSA Policy and Legislative Projects:</u>

- No updates.

## <u>Adoption and Guardianship Updates</u>

- Diversity, Equity and Inclusion (DEI) efforts:
  - Trainings have been scheduled for ERACCE introductory workshops for the remainder of 2022 for staff attendance.
  - Plans are being finalized for training on microaggressions for all staff via the REDI office.
  - The March All-Staff meeting will include a presentation on Targeted Recruitment for Children of Color in Child Welfare by the Office of Workforce Development and Training (OWDT).
  - A presenter for the March meeting celebrating International Women's Day was secured.
  - A DEI Teams channel for all AGAO staff will be posted/shared.
- The Medical Subsidy booklet was submitted for final approval by Children's Services Agency (CSA) administration.
- The extension protocol was finalized; staff training will occur by March 18th.
- Finalized planning occurred for participation in the Adoption Gallery Walk in Muskegon (community partnership with local office), to occur on March 8th.

<u>Child Welfare Payments:</u>

- Work continued with the Keweenaw Bay Indian Community on a revised Memorandum of Understanding (MOU).
- Work continued with the Hannahville Indian Community on a new state/tribal Title IVE agreement.
- Planning is underway with Bay and Kent Counties regarding the new grant appropriated for legal representation specific to these pilot counties.

<u>CSA Budget & Human Resources</u>

- Planning occurred around boilerplate Section 316(1) to issue payments to Child Caring Institution (CCI) providers.
- Payment was issued to Vista Maria in accordance with boilerplate Section 316(2).
- Meetings were held with the Children's Protective Services (CPS), Interstate Compact on the Placement of Children (ICPC), and Juvenile Justice (JJ) program areas regarding spend plans.
- Budget reviews and consultations occurred for Men of Color Workshop, ERACCE, Prevention workers, Child/Parent Legal Representation (CPLR), MiKidsNow Children's Services Agency positions, and Bay Pines Center Education grants.

## <u>DEI Work</u>

- No updates this week.

<u>Tribal Government</u>

- Shayne Machen, Jason Cross, and Lorna Elliot-Egan held three trainings last weeks with more than 11,000 participants.

## <u>Residential Collaboration Technical Assistance Unit (RCTAU)</u>

- Weekly risk meeting assessment meeting for providers
- Site visits to 6 licensed facilities to monitor action plan progress
- Selected and offered four DA12 analysts and one SAM15 whom all start effective 3-20-22
- Weekly CCI status update meeting to evaluate new assignments into MIC and DCWL

## <u>Federal Lawsuit (MiSEP)</u>

- The Governor's Office and MDHHS met with the monitors and plaintiffs on March 2, 2022. The 14-commitment corrective action plan was reviewed. Changes are being made to the plan based on monitors changes and feedback. Changes to the plan are due March 16, 2022
- MDHHS is meeting with the monitors on March 8, 2022, to review the tool being utilized by the monitors for the real time MIC.

## <u>Performance Based Funding pilot (Kent County and West Michigan Partnership for Children (WMPC))</u>

- The Fiscal Year (FY) 23 Child Welfare Continuum Care Grant and Foster Care Supportive Visitation Grant allocation information was updated in the EGrAMS SharePoint site.
- Westat provided MDHHS with the Evaluation of Michigan's Performance–Based Funding Model Fifth Annual Report for review.
- The boilerplate report for section 504(3) was submitted for review.

## <u>Governor's Juvenile Justice (JJ) Task Force</u>

- Workgroups were held in the past week for the following focus areas:
  1. Diversion
  2. Court Process
  3. Out of Home
  4. Data
  5. Funding

## <u>Fatality Reports</u>

- YTD is 59.
- Weekly fatality total is 7.
  - 3 possible unsafe sleep deaths
  - 0 possible suicides
  - 0 potentially due to abuse/neglect
  - 1 unknown
  - 3 for possible medical reasons

0 Injuries occurred through improper supervision

## Cases Receiving Noteworthy Media Attention

- CSA has discontinued the use of Averhealth drug testing company after receiving information from the US Attorney that Averhealth was under investigation for medical fraud. Specifically, they were not complying with national accreditation standards as it related to calibration of testing devices despite agreeing to do so in their contract with DTMB. We are working closely with Children's Services Legal Division and the Attorney General's office and following all of their recommendations. Bob Wheaton in Comms has been notified of this as well.

Shayne Machen, Esq.
Special Advisor to the Children's Services Agency Director
Michigan Department of Health and Human Services
Cell    | 231-655-9857
Email  | MachenS@Michigan.gov

| | |
|---|---|
| **From:** | Doane, Amanda (DHHS) |
| **To:** | Goad, Sarah (DHHS) |
| **Subject:** | FW: follow-up |
| **Date:** | Friday, March 4, 2022 7:37:00 AM |
| **Attachments:** | Debunking Drug Testing Myths.pptx |
| | MDHHC-Proven Quality vs 2.pptx |
| | MI Prosecutors Association 4.21.21.pptx |

FYI.

I think these could be shared with Rachel and Shayne and up through the AG's office. These are slides they have presented at meetings with judges in the past.

In the MDHHC-Proven Quality vs 2 slide deck – on slide 6 they discuss the timeline of events from November 2020 and one thing they mention is the "perfect CAP-FDT proficiency test…" I would like to ask Averhealth for that along with their annual CAP-FDT reports. Please let me know if I cannot do this.

Also in the MI Prosecutors Association slide deck – Slide 8 reviews the CAP-FDT review from December 2020 and discusses the instrument software settings that the AG talked about and said were manipulated. The instrument settings were actually set more stringent than their SOP and Averhealth changed the software parameters to align with the SOP. In addition slides 9-11 are interesting.

Amanda

**From:** Dominique Delagnes <ddelagnes@averhealth.com>
**Sent:** Thursday, March 3, 2022 1:07 PM
**To:** Doane, Amanda (DHHS) <DoaneA@michigan.gov>
**Subject:** follow-up

**CAUTION: This is an External email. Please send suspicious emails to** abuse@michigan.gov

Good afternoon Amanda,

As a follow-up to our call on Tuesday, below is language we have used in other contracts around TAT and verbiage around Force Majeure events.

= = = = = =

Any specimen that requires a rerun to ensure the test result is scientifically valid and forensically defensible shall be excluded from stated results reporting timeframe(s). Vendor will provide documentation of rerun samples for monthly billing and contract audits.

In no event shall the Contractor be responsible or liable for any failure or delay in the performance

of its obligations hereunder arising out of or caused by, directly or indirectly, fire, explosion, power blackout, natural disaster, pandemic, strike, embargo, labor disputes, war, terrorism, riots, acts of God, acts or decrees of governmental bodies or other causes beyond Contractor's reasonable control (hereinafter referred to as Force Majeure Event); it being understood that the Contractor shall use reasonable efforts which are consistent with accepted practices in commercial industry to resume performance as soon as practical under the circumstances.

= = = = =

In addition, attached are several PowerPoint slides put together about the chain of events that occurred.  Please let me know if you need anything else.

Best,

Dominique

**Dominique Delagnes**
Chief Operating Officer

O 804. 285. 0413
M 817. 913. 5094
2916 Marshall Street, Suite A, Richmond, VA 23230
ddelagnes@averhealth.com | averhealth.com

CONFIDENTIALITY NOTICE: This transmission and any documents accompanying same may contain confidential information which is legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in this transmission is strictly PROHIBITED. If you have received this transmission in error, please immediately notify us by telephone. Thank you.

| | |
|---|---|
| **From:** | Machen, Shayne (DHHS) |
| **To:** | Wheaton, Bob (DHHS) |
| **Cc:** | Warner, Jennifer (DHHS) |
| **Subject:** | RE: Touch Base on Aver Health Response to Reporter |
| **Date:** | Monday, March 7, 2022 9:27:00 AM |

Bob,

I'm happy to discuss this during our call today. Will that work?

Shayne

---

**From:** Wheaton, Bob (DHHS) <WheatonB@michigan.gov>
**Sent:** Monday, March 7, 2022 10:26 AM
**To:** Machen, Shayne (DHHS) <MachenS@michigan.gov>
**Cc:** Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
**Subject:** RE: Touch Base on Aver Health Response to Reporter

Hi Shayne,

I discussed this matter with my supervisor, Darice Darling, and there are a couple of important questions we believe we should be prepared to answer from media :

- How could your contractor have determined there were no issues with the AverHealth testing when it now appears that there were issues? Do we have concerns that the contractor didn't do an adequate job or has some type of conflict of interest?
- How many drug tests results might be invalid as a result? How many drug tests does AverHealth do for us? (I know I asked this question last week and you didn't have an answer, but I'm hoping that's an answer you could get.) It also would be good to clarify when AverHealth does drug tests and what impact they have on decisions about removals/reunifications/termination of parental rights.
- Can we explain in layman's terms what the issue is with the testing? I know it has something to do with the calibration, but I don't fully understand what that means.

I don't' think we necessarily need to have the answers to all of these questions today, but sooner would be better than later.

Thanks,
Bob

-----Original Appointment-----
**From:** Warner, Jennifer (DHHS) <WarnerJ19@michigan.gov>
**Sent:** Monday, March 7, 2022 9:58 AM
**To:** Wheaton, Bob (DHHS)
**Subject:** Accepted: Touch Base on Aver Health Response to Reporter
**When:** Monday, March 7, 2022 3:30 PM-3:45 PM (UTC-05:00) Eastern Time (US & Canada).

**Where:** Microsoft Teams Meeting

From:                      Avery, Deborah (DHHS)
Sent:                      Wed, 23 Mar 2022 21:05:20 +0000
To:                        O'Connor, Pamelia (DHHS); Baker, Adam (DHHS); Borja, Kimberly (DHHS);
Cleveland, Tracie (DHHS); Griffin, Tracy (DHHS); Hoover, Catherine (DHHS); Johnson, Taseanda (DHHS);
Lambert, Joanne (DHHS); LeFear, Kimberlee (DHHS); Maplanka, Ivana (DHHS); Marcath, Karen (DHHS);
Marceau, Katherine (DHHS); McDougle, Tiffany (DHHS); Milks, Michael (DHHS); Nunn, Edna (DHHS); Orr,
Scott (DHHS); Reetz, Megan (DHHS); Richards, Tracy (DHHS); Scheuer, Thomas M. (DHHS); Selden-
Johnson, Savator (DHHS); Silas, Tracey (DHHS); Vega, Franchesca (DHHS); Willingham-Davis, DeMona
(DHHS); Wrayno, Jennifer (DHHS); Wright, Angela (DHHS); Wright, Lynette (DHHS)
Cc:                        Adams, Francine (DHHS); Austin, Judith (DHHS); Averhart, Kelsey (DHHS);
Carmer, Sandie (DHHS); Gamble, Jamie (DHHS); Hammond, Kara (DHHS); Hough, Michelle (DHHS);
Schave, Debra (DHHS); Seeloff, Christina (DHHS); Albright, Marissa (DHHS); Anderson, Shayla (DHHS);
Dorman, Felicia (DHHS); Jarvis, Katie (DHHS); Jones, Adiah (DHHS); Meheidli, Maya (DHHS); Miko, Anita
(DHHS); Miller, Joi (DHHS); Webb, Danielle (DHHS)
Subject:                   RE: BSC5 June Urban Directors' Meeting
Attachments:               BSC 5 Urban Directors Meeting-Minutes.docx

Updating with the minutes from our last meeting on March 9, 2022.

-----Original Appointment-----
From: O'Connor, Pamelia (DHHS) <OConnorP@michigan.gov>
Sent: Wednesday, March 16, 2022 2:38 PM
To: O'Connor, Pamelia (DHHS); Avery, Deborah (DHHS); Baker, Adam (DHHS); Borja, Kimberly (DHHS);
Cleveland, Tracie (DHHS); Griffin, Tracy (DHHS); Hoover, Catherine (DHHS); Johnson, Taseanda (DHHS);
Lambert, Joanne (DHHS); LeFear, Kimberlee (DHHS); Maplanka, Ivana (DHHS); Marcath, Karen (DHHS);
Marceau, Katherine (DHHS); McDougle, Tiffany (DHHS); Milks, Michael (DHHS); Nunn, Edna (DHHS); Orr,
Scott (DHHS); Reetz, Megan (DHHS); Richards, Tracy (DHHS); Scheuer, Thomas M. (DHHS); Selden-
Johnson, Savator (DHHS); Silas, Tracey (DHHS); Vega, Franchesca (DHHS); Willingham-Davis, DeMona
(DHHS); Wrayno, Jennifer (DHHS); Wright, Angela (DHHS); Wright, Lynette (DHHS)
Cc: Adams, Francine (DHHS); Austin, Judith (DHHS); Averhart, Kelsey (DHHS); Carmer, Sandie (DHHS);
Gamble, Jamie (DHHS); Hammond, Kara (DHHS); Hough, Michelle (DHHS); Schave, Debra (DHHS);
Seeloff, Christina (DHHS); Albright, Marissa (DHHS); Anderson, Shayla (DHHS); Dorman, Felicia (DHHS);
Jarvis, Katie (DHHS); Jones, Adiah (DHHS); Meheidli, Maya (DHHS); Miko, Anita (DHHS); Miller, Joi
(DHHS); Webb, Danielle (DHHS)
Subject: BSC5 June Urban Directors' Meeting
When: Wednesday, June 22, 2022 10:00 AM-4:00 PM (UTC-05:00) Eastern Time (US & Canada).
Where: tbd

Blocking time for possible in person meeting

Attendees:  Tom Scheuer, Lynette Wright, Fran Vega, Kim LeFear, Megan Reetz, Chad Ulferts, Tracey Silas, Pam O'Connor, Taseanda Johnson, Danielle Webb, Ivana Maplanka, Shayla Anderson, Adam Baker, Tiffany McDougle, Mike Milks, Edna Nunn, Dawn Page, Karen Marcath, Kim Borja, Joanne Lambert, Regina Branch, Katherine Marceau, Maya Meheidi, Marissa Albright, Deborah Avery, Tracy Griffin, Cathe Hoover, Scott Orr, DeMona Willingham Davis, Savator Selden-Johnson, Anita Miko, Adiah Jones

**Jennifer Wrayno Introductions and Announcements:**

Joining or in a new role with BSC:
- Chad Ulferts in new role manager for PRMs for all BSC 5 counties.
- Regina Branch as our new DEI manager
- Maya Meheidi, who is filling behind for Hollie Panavas as BSC 5's quality assurance analyst.

The Statewide Director's meeting will be in person but is optional.  **There will be no virtual option for attendance this year**.  If you plan to go, please register.  If you've changed your initial response please let Jen know.

Our return-to-work date of May 1st appears to be moving forward.  Conversations are on-going with directors.  We're confident in saying people will not be required to come in 5 days a week, especially for field staff.  This may look different for other non-field positions.  We need to be flexible.  The goal to have something out to people by April 1st regarding minimum requirements.

We are to stop using Averhealth immediately.

**Ombudsman Updates**
Kenyatta Lewis & Ryan Speidel

The OCO was established..

As a means of **effecting changes in policy, procedure, and legislation, educating the public**, investigating and reviewing actions of the department, child placing agencies, or child caring institutions, **monitoring and ensuring compliance with relevant statutes, rules, and policies** pertaining to children's protective services,…

The OCO closed out 256 cases in 2021.  One of their most important activities is providing the public with accurate information about the child welfare system.  As a result they created a *Public Education and Intake Unit*.  Kenyatta Lewis will be the manager of this unit.

When the OCO identifies issues with cases they will be reaching out in real time (*supervisor, worker, program manager, DM, director, BSC director*) to help resolve issues so we're not awaiting final closing of the complaint.

They will share spreadsheet with their 1st and 2nd quarter of the fiscal year. Lists area, policy violation, law violation and details of violation and how complaint was closed. Broken down by BSC 5 county. They are not identifying all possible violations just the most relevant and trends. They will also provide guidance with recommendations in situations where the investigation simply could have been tighter not really issue of policy.

MCL 15.243(1)(d)

Please do not use OCO finding or information for the purposes of discipline.

CCWIS Licensing Module
**Danelle Freeman-MiSACWIS/CCWIS Communication and security coordinator**

Feb. 24th Sponsor meeting was missed most BSC 5 directors, who were not invited due to some confusion. However, the meeting was recorded, and all are invited to review it via the link below.

MCL 15.243(1)(y)

During the meeting development status of the CWLM module was discussed and CCWIS leadership introduced.

- Jennifer Tate-Director of CCWIS
- Kim Chapin-Director of MiSACWIS
- Shaun Hutchins-Product Owner of the CWLM module

The role of Change Agents, one assigned for each of our counties/districts were discussed. A list of change agents for our areas are noted below.



Meet Your BSC 5 Change Agents (CAs)!

| County | CA Name |
|---|---|
| Macomb | Angela Forney |
| Oakland | Ashleigh Brotherson |
| Kent | Ashley Brown |
| Genesee | Casey Sturk |
| Kent | Deb Smith-Jones |
| Genesee | Erica Young |
| Macomb | Jessica Toia |
| Wayne North Central | Keena Bell |
| Western Wayne | Lindsay Johnson |
| Western Wayne | Sherrie Gallagher |
| Wayne North Central | Tracey Judge |
| Oakland | Yvonne Pitris |

- May 2022 will see a partial release of the CWLM module. The full release is expected in June 2022.
- They are developing training and have scheduled End User training to begin April 25th-May 20th. Sign-up will begin March 28th.
- Additional training will be provided via:
  - Computer based
  - Virtual instructor led classes
  - User guide and Micro-learning

- Some training will be target specific groups including:
  - CPA/DHHS clerical,
  - CPA/DHHS licensing staff (directors could take part in this section)
  - DCWL
  - Foster Care Navigators
  - Help Desk
  - LOSCs

- Updates on the system have been provided through various meetings (CSA all staff, CSA leadership, CW leadership, etc.), CIs, and Business Process webinars.
  - They used *Pulse Surveys*-quick surveys to help them identify gaps in delivery of information.

Top 3 Critical Activities of Strong Sponsor
- Active and Visible Sponsorship throughout the CWLM project
- Communicate and Promote change with Impacted Groups
- Building a Coalition of Sponsorship-include your management team in supporting the messaging of support of change



Sponsor
Kick-off_2.24.22.pdf

**MISEP CAP**
Kelly Sesti



MISEP Court and CAP

During our most recent MiSEP hearing (period 19-covering January-June 2020) the court ordered MDHHS to develop a corrective Action Plan (with feedback from partners, field, program offices, etc.) to address 14 areas for additional action.

These areas include:
- Permanency in 12 months (already a focus in ChildStat, SCAO is being brought in to discuss)
- sibling separations (timely completion of PERs attached)
- emergency shelter (timely completion of PERs attached and eclipsing allowable timeframes). RPU is involved in addressing this.
- safety in relative placements (focus in ChildStat, updates to data reports)
- Service Provision-partnering with behavioral health, DV, Sub. Abuse service providers increase service availability and access to.

CAP is being reviewed by MMT-will provide feedback and adjusted CAP will be presented to the judge. We will be monitored these items on a monthly.

**CSA Updates**
Director Starling

Examples of activities resulting from the most recent MiSEP hearing/Required CAP:
- We continue to focus on recruitment and retention of licensed foster homes. We are requesting a rate increase for providers. We will continue to request increases on an on-going. Any suggestions regarding how we might recruit and retain providers. Innovative ideas regarding recruitment and retention are welcomed.
- We continue to look for additional funding to cover various types programing not already readily available (day treatment, stepdown programs, etc.).

All recommendations and approvals must be vetted through so many parties.

Due to happenings over the last 72 hours we must take immediate adverse action against Averhealth. We are working to get this resolved as quickly as possible. We

hope to have a new statewide provider identified asap well before the 90-day period identified.  Each county will need to identify their own provider.  If you have a provider currently it might be advantageous to enter into a 90-day agreement.  Questions you may have can be sent to Demetrius.

**Out of Home Updates**
Rachel Willis

Out of Home Division is in continuous motion/actions to increase access to beds.

Foster Care Program office is expanding SOGIE supports (training of staff, providing supports to SOGIE youth).

Formalization RCTAU which has been a pilot since July 2021.  They've now hired their SAM 15 and 4analysts who are working with CCIs to address concerns regarding restraints and other items of concern. CCIs are identified for intervention based on scoring of various items.  Risk scoring is based on # of restraints, investigations, etc.  Analyst help write action plan and meet with the CCI weekly to see progress.

Out of Home is meeting with providers to understand why they are rejecting youth.  Providers are saying youth need mental health stabilization and decreases in aggression as reasons for rejections.  They are doing a round robin tour of providers who seem to not be accepting our youth including DAB St. Johns, Wedgewood, Holy Cross, etc.

We are looking at accessing funds through supplemental fund request to assist CCIs due to on-going staffing issues.  They may have the beds, but they don't have the staff to manage these additional beds.  Meeting with budget office to explore whether we can get additional money to support increase in $.  We are also looking to standardize training for CCI staff and partnering with universities to help recruit staff.

Our placement shortage is highlighted by the fact that we have 329 beds in our network sitting empty while we have just over 130 youth in need of placement**.**

**Rachel will be concentrating solely on this issue for the next 6 week as a special assignment.**

Working with Mary Chaliman to expand community-based services and ease of access to these services which are sometimes complicated by PHPs providing service.

No conversations about increasing mental health hospitalization beds.

AFC Homes
- Exploring streamlining the process for getting youth transitioned to AFC homes.
- Access whether AFCs staff can address the needs of our youth.

- Development of AFC type homes that would be able to serve even younger children (13 or so) when we know they will eventually need this type of service. Get them to these homes sooner.
- Some providers are not willing to take these young people when they have adults, and this might not be a good mix.

**HR Updates**
Mike DeRose

Masks are no longer required in building. They are required at certain institutions (CCIs, hospitals, etc.). All indications seem to indicate the May 1st date will be our go date in moving forward in RTW. There is currently no blanket return to work requirements. Reach out with any questions.

**DEI**
Regina Branch

We participated in a DEI activity regarding how to address incidents when one staff member shares material that is upsetting to their coworker. Suggestions provided by groups:

- Acknowledge the incident.
- Address it with both parties. Acknowledge validity of feelings.
- Suggest trainings on topic.
- Expand conversation to all staff.

# Redaction Log

Total Number of Redactions in Document: 2

## Redaction Reasons by Page

| Page | Reason | Description | Occurrences |
|---|---|---|---|
| 3 | MCL 15.243(1)(d) | (6) Records or information specifically described and exempted from disclosure by statute. | 1 |
| 3 | MCL 15.243(1)(y) | (27) Records or information of measures designed to protect the security or safety of persons or property, or the confidentiality, integrity, or availability of information systems, whether public or private, including, but not limited to, building, public works, and public water supply designs to the extent that those designs relate to the ongoing security measures of a public body, capabilities and plans for responding to a violation of the Michigan anti-terrorism act, chapter LXXXIII-A of the Michigan penal code, 1931 PA 328, MCL 750.543a to 750.543z, emergency response plans, risk planning documents, threat assessments, domestic preparedness strategies, and cybersecurity plans, assessments, or vulnerabilities, unless disclosure would not impair a public body's ability to protect the security or safety of persons or property or unless the public interest in disclosure outweighs the public interest in nondisclosure in the particular instance. | 1 |

# Redaction Log

## Redaction Reasons by Exemption

| Reason | Description | Pages (Count) |
|---|---|---|
| MCL 15.243(1)(d) | (6) Records or information specifically described and exempted from disclosure by statute. | 3(1) |
| MCL 15.243(1)(y) | (27) Records or information of measures designed to protect the security or safety of persons or property, or the confidentiality, integrity, or availability of information systems, whether public or private, including, but not limited to, building, public works, and public water supply designs to the extent that those designs relate to the ongoing security measures of a public body, capabilities and plans for responding to a violation of the Michigan anti-terrorism act, chapter LXXXIII-A of the Michigan penal code, 1931 PA 328, MCL 750.543a to 750.543z, emergency response plans, risk planning documents, threat assessments, domestic preparedness strategies, and cybersecurity plans, assessments, or vulnerabilities, unless disclosure would not impair a public body's ability to protect the security or safety of persons or property or unless the public interest in disclosure outweighs the public interest in nondisclosure in the particular instance. | 3(1) |

Re: Pending Cases with Averhealth Drug Test Results

As indicated in a previous communication sent to tribal governments, effective March 8, 2022, CI 22-025 provides that Averhealth should no longer be used for drug testing. The purpose of this memorandum is to explain how pending/open cases will be handled by MDHHS County staff:

**New Petitions** that have not yet been filed with the court or have been filed and are pending a preliminary hearing and/or an adjudication:

- Substance abuse screen results from facilities other than Averhealth will only be used.
- Parents' admissions of substance abuse may be used.
- If substance abuse is the only allegation and there are no corroborating statements of substance abuse or admissions and Averhealth was the only facility used, the parent will be referred to a different facility and a MDHHS supervisor will be consulted.

**Preliminary Hearings and Original Termination**

- MDHHS testimony should be focused on substance abuse screen results provided by facilities other than Averhealth.
- Parents' admissions of substance abuse will be used.
- Averhealth screens already provided will be disregarded and parents will be directed to an independent screening facility instead.
- The petition should be withdrawn for any case where Averhealth screen results and/or Averhealth witnesses would be the only evidence used during trial to substantiate substance use or an abuse/neglect allegation unless the Court has ordered the agency to file the petition. If there are independent child abuse and neglect allegations the petition may be filed addressing only those allegations.
- If there is any doubt regarding if a petition should move forward, a supervisor, section manager, district manager, or the Children's Services Legal office will be consulted. If the child is an "Indian Child", the tribal government must also be consulted.
- If a determination is made to withdraw a petition, legal counsel will be contacted to determine the steps necessary to withdraw the petition.

**Reports for Dispositional Review/Permanency Planning Hearings and Testimony at those Hearings**

- Averhealth screen results will not be included in court reports. Missed screens will only be included in reports if the missed screens are being reported by an independent screening agency.
- MDHHS staff will ensure that all referrals for drug testing are completed as soon as possible.
- Parents will be communicated to in writing where they should go for drug screening. Contact information for the new screening facility and directions on how to screen at the new facility will be provided. MDHHS staff will document and include in reports the date the parents' received communication of the change in facility.

- MDHHS staff will document, note, and include in reports the date the parent started testing at the newly referred facility.

**<u>Pending Supplemental Termination and Change of Plan Petitions</u>**

- Substance abuse screen results from facilities other than Averhealth will only be used.
- Parents' admissions of substance abuse may be used.
- If substance abuse is the only allegation and there are no corroborating statements of substance abuse or admissions and Averhealth was the only facility used, the parent will be referred to a different facility and a supervisor will be consulted.

| | |
|---|---|
| **From:** | Milks, Michael (DHHS) |
| **Sent:** | Tuesday, March 29, 2022 10:19 AM |
| **To:** | LeFear, Kimberlee (DHHS) |
| **Subject:** | FW: AverHealth Update |
| **Attachments:** | Pending Case Guidance 3.24.22.pdf; Substance Use Survey |

So, I start working on a communication and plan and then stopped, reflecting on our recent interviews (and acknowledging the need to see how others plan) thoughts on sharing with the Sections and requesting an approach from one of the group based on information currently available and they could include us in a planning meeting if necessary to outline what we have been informed of?

---

**From:** Milks, Michael (DHHS)
**Sent:** Monday, March 28, 2022 8:51 AM
**To:** Hawkins, DeQuan (DHHS) <HawkinsD11@michigan.gov>; Jones, Fueschie (DHHS) <JonesF3@michigan.gov>; June, Terri (DHHS) <JuneT@michigan.gov>; Mateen, Khalilah (DHHS) <MateenK@michigan.gov>; Mozingo, Nicole (DHHS) <MozingoN@michigan.gov>; Smith, Jenessa (DHHS) <SmithJ75@michigan.gov>; Staley, Joseph (DHHS) <StaleyJ@michigan.gov>; Stallings, Deondra (DHHS) <StallingsD@michigan.gov>; Sturk, Casey (DHHS) <SturkC@michigan.gov>; Ware, Tamala K. <Waret1@michigan.gov>; Battle, Geralda (DHHS) <BattleG@michigan.gov>; Benson, Dawnika (DHHS) <BensonD5@michigan.gov>; Fisher, Wendy (DHHS) <FisherW1@michigan.gov>; Fouchea, Carrie (DHHS) <FoucheaC@michigan.gov>; Harper, Nicole (DHHS) <HarperN1@michigan.gov>; Henry, Denelle R. (DHHS) <HenryD@michigan.gov>; Herrick, Amanda (DHHS) <HerrickA@michigan.gov>; Hess, Ashley (DHHS) <HessA1@michigan.gov>; Johnson, Jennifer (DHHS) <JohnsonJ14@michigan.gov>; Linn, Joshua (DHHS) <LinnJ@michigan.gov>; Meredith, Lee (DHHS) <MeredithL@michigan.gov>; Newell, Shay (DHHS) <NewellS@michigan.gov>; Oginsky, Melissa (DHHS) <OginskyM@michigan.gov>; Ross, Kelli (DHHS) <RossK2@michigan.gov>; Sneller, Joan (DHHS) <SnellerJ@michigan.gov>; Vorhees, Shannon (DHHS) <VorheesS@michigan.gov>; Wenk, Mia (DHHS) <WenkM@michigan.gov>; Westhaus, Andrew (DHHS) <WesthausA@michigan.gov>; Williams, Angelic (DHHS) <WilliamsA31@michigan.gov>
**Cc:** LeFear, Kimberlee (DHHS) <LeFearK@michigan.gov>; Willingham-Davis, DeMona (DHHS) <WillinghamDavisD@michigan.gov>; Baxter-Brown, Kimberly M. (DHHS) <Baxter-BrownK@michigan.gov>; Page, Dawn (DHHS) <PageD1@michigan.gov>; Price, Tishara (DHHS) <PriceT5@michigan.gov>
**Subject:** FW: AverHealth Update
**Importance:** High

Good morning all, I am sharing additional information regarding our Departmental approach to pending and/or open cases that also have drug testing results obtained through Averhealth.

While not all inclusive, the highlights of the attached to understand:

- For cases where you are considering filing a petition and Averhealth drug screens are part of the supporting evidence to file, reassess the case to determine if there is sufficient other evidence to support filing without the inclusion of drug screens completed by Averhealth. All future screens are to be completed by our current provider, FFL.
- For cases with a preliminary petition pending, and Averhealth drug screen results are part of the supporting evidence for the prelim, reassess the case to determine if there is sufficient

other evidence to support obtaining jurisdiction without the inclusion of drug screens or testimony provided by Averhealth.

- For cases with upcoming review or permanency planning hearings, do not include Averhealth drug screen information in your court reports, but do document when the parent began screening with FFL.
- For pending supplemental termination and change of plan hearings, use only substance abuse screening results from facilities other than Averhealth. It is understood that this may lead to a discussion about the need to extend the current permanency goal on the case beyond the upcoming hearing and ask for an additional 90 days to service the family and obtain screening results from another testing facility.
- If there are any petitions that we determine necessary to withdraw based on this attached guidance, after consultation with your Section Manager, this information is to be shared with DeMona to assure we are reporting out to CSA Legal from one individual.

We have been informed a tracking database is being set up to input information into regarding decisions made in the field relative to cases with Averhealth drug screening results. Please understand, there is some fluidity to the direction we are receiving and there may be additional changes or reviews the field is asked to complete in the near future, we will share as we receive any additional information or changes to process. I know a lot of Sups are on leave this week, but want this information to be considered when reviewing cases immediately.

Kim will set a meeting date/time for our group to discuss if we are unable to have time following our meeting this morning, thank you.


Mike Milks
Director, Genesee County
Proud 2B Genesee
Michigan Department of Health and Human Services
125 E. Union St.
Flint, MI 48501
(810) 760-2361
milksm@michigan.gov

**From:** Bushinski, Vera (DHHS) <BushinskiV@michigan.gov>
**Sent:** Friday, March 25, 2022 8:13 AM
**To:** Adorjan, Renee (DHHS) <AdorjanR@michigan.gov>; Adrianse, Carey (DHHS) <AdrianseC@michigan.gov>; Atkins, Courtney (DHHS) <AtkinsC2@michigan.gov>; Bair, Noelle (DHHS) <BairN@michigan.gov>; Borja, Kimberly (DHHS) <BorjaK@michigan.gov>; Clore, Maureen (DHHS) <CloreM@michigan.gov>; Culp, Shaun (DHHS) <CulpS@michigan.gov>; Daniels, Stella G. (DHHS) <DanielsS@michigan.gov>; Davis, Lisa (DHHS) <DavisL6@michigan.gov>; Fernandez, Angel D. (DHHS) <FernandezA@michigan.gov>; Giori, Leo (DHHS) <GioriL@michigan.gov>; Holston, Lenier (DHHS)

<HolstonL@michigan.gov>; Houghtaling, Stacy (DHHS) <HoughtalingS@michigan.gov>; Kehoe, Carol L. (DHHS) <KehoeC@michigan.gov>; Kidd, Donata (DHHS) <KiddD1@michigan.gov>; Kwarciany, Mark (DHHS) <KwarcianyM@michigan.gov>; LaRue, Barb (DHHS) <LaRueB2@michigan.gov>; Lemay, Jamie (DHHS) <LemayJ1@michigan.gov>; Lovell, Luther (DHHS) <LovellL3@michigan.gov>; Lyons, Zoe (DHHS) <LyonsZ2@michigan.gov>; Marner, Shelly J. (DHHS) <MarnerS@michigan.gov>; Martin, Danielle (DHHS) <MartinD28@michigan.gov>; Milks, Michael (DHHS) <MilksM@michigan.gov>; Millikin, Brian (DHHS) <MillikinB@michigan.gov>; Morrison, Alison Anne (DHHS) <MorrisonA2@michigan.gov>; Mularz, Kara L. (DHHS) <MularzK@michigan.gov>; Needham, Linda Sue (DHHS) <NeedhamL@michigan.gov>; Nye, Laura (DHHS) <NyeL4@michigan.gov>; Parrott, Scott (DHHS) <ParrottS2@michigan.gov>; Prabucki, Antoinette (DHHS) <PrabuckiA@michigan.gov>; Rose, Charles (DHHS) <RoseC2@michigan.gov>; Savage, Jennifer (DHHS) <SavageJ1@michigan.gov>; Scheuer, Thomas M. (DHHS) <ScheuerT@michigan.gov>; Schlaufman, Jody L . (DHHS) <SchlaufmanJ@michigan.gov>; Schmidt, Jennifer (DHHS) <SchmidtJ3@michigan.gov>; Schultz, Lori J. (DHHS) <SchultzL2@michigan.gov>; Seigo, Michelle (DHHS) <SeigoM@michigan.gov>; Selden-Johnson, Savator (DHHS) <Selden-JohnsonS@michigan.gov>; Shores, Jennifer (DHHS) <ShoresJ@michigan.gov>; Smigelski, Tina (DHHS) <SmigelskiT@michigan.gov>; Southgate, Karen L. (DHHS) <SouthgateK@michigan.gov>; Spanjer, Kendra (DHHS) <SpanjerK@michigan.gov>; Sperling, Kathleen (DHHS) <SperlingK@michigan.gov>; Valdes, Kathleen (DHHS) <ValdesK@michigan.gov>; VyseStaszak, Janet (DHHS) <VyseStaszakJ@michigan.gov>; Waldron, Julie A. (DHHS) <WaldronJ@michigan.gov>; Williams, Douglas (DHHS) <WilliamsD11@michigan.gov>; Wrayno, Jennifer (DHHS) <WraynoJ@michigan.gov>; Wright, Lynette (DHHS) <WrightL5@michigan.gov>; Yohe, Matthew (DHHS) <YoheM@michigan.gov>; Campau, Wendy (DHHS) <CampauW@michigan.gov>; Chapin, Kim (DHHS) <ChapinK@michigan.gov>; Click, Tim (DHHS) <ClickT@michigan.gov>; Cross, Jason (DHHS) <CrossJ5@michigan.gov>; Greenberg, Suzanne (DHHS) <GreenbergS@michigan.gov>; Hawrylo, Elizabeth (DHHS) <HawryloE@michigan.gov>; Machen, Shayne (DHHS) <MachenS@michigan.gov>; Mahoney, Mary Lou (DHHS) <MahoneyM2@michigan.gov>; McCree, Derrick (DHHS) <McCreeD@michigan.gov>; Sesti, Kelly (DHHS) <SestiK@michigan.gov>; Silas, Tracey (DHHS) <SilasT@michigan.gov>; Starling, Demetrius (DHHS) <StarlingD@michigan.gov>; Willis, Rachel (DHHS) <WillisR4@michigan.gov>

**Cc:** Bushinski, Vera (DHHS) <BushinskiV@michigan.gov>; Clay, Tasia (DHHS) <ClayT10@michigan.gov>; Hobart, Donetta (DHHS) <HobartD2@michigan.gov>; Jubb, Josette (DHHS) <JubbJ2@michigan.gov>; Keathley, Faith (DHHS) <KeathleyF@michigan.gov>; Kline, Ginny (DHHS) <KlineG@michigan.gov>; Kucinsky, Patricia (DHHS) <KucinskyP@michigan.gov>; LaHaine, Ann (DHHS) <LaHaineA@michigan.gov>; Lowe, Laurie (DHHS) <LoweL@michigan.gov>; O'Connor, Pamelia (DHHS) <OConnorP@michigan.gov>; Ohtonen, Suzanne (DHHS) <OhtonenS@michigan.gov>; Pitchford, Ann (DHHS) <PitchfordA@michigan.gov>; Readus, Melissa (DHHS) <ReadusM@michigan.gov>; Reed, Erin (DHHS) <ReedE8@michigan.gov>

**Subject:** AverHealth Update
**Importance:** High

On behalf of Director Starling, please see the message below and attached, thank you.


Good morning BSC Directors, County Directors, and Private Agency Directors,

On March 8, 2022, we issued CI #22-025 which directed staff to discontinue use of Averhealth for a period of 90 days. On March 11, 2022, Director Starling emailed county leadership letting them know additional concerns regarding testing provided by Averhealth have come to our attention and out of an abundance of caution, we are not using Averhealth while we investigate the concerns that have been raised.

Today, we are issuing the attached guidance for how to review and handle current cases with Averhealth test results. If you have questions about this guidance please feel free to reach out to your BSC Director or [csarequestforlegalresearch@michigan.gov](mailto:csarequestforlegalresearch@michigan.gov).

In the near future, we will provide you access to a SharePoint site where you will document your response in pending case. For the time being, please keep records of actions taken in each case.

Thank you for your continued efforts to serve children and families. I know you, like me, want what is best for our families. This investigation and process will help ensure we continue to meet that goal.

Very Sincerely,

Demetrius Starling
Executive Director CSA

| | |
|---|---|
| **From:** | Machen, Shayne (DHHS) |
| **To:** | Bushinski, Vera (DHHS) |
| **Cc:** | Starling, Demetrius (DHHS) |
| **Subject:** | Memo for Today |
| **Date:** | Friday, March 11, 2022 3:56:00 PM |

Hi Vera,

Please send this out to all the County Directors and BSC Directors on behalf of Demetrius. Please label the email: Substance Use Testing Update. Thank you!

*Good afternoon,*

*I want to thank you all for your efforts to adjust to the change in our drug testing procedures. It never ceases to amaze me what our workforce is capable of. I know the transition to new drug testing companies came as a surprise to many of you. I want to assure you this was not pre-planned. Many of you have questions regarding the discontinued use of Averhealth drug testing. I'm writing to share with you that additional concerns regarding testing provided by Averhealth have come to our attention. Out of an abundance of caution, we are not using Averhealth while we investigate the concerns that have been raised. We ask for your patience as we work through the details. We will provide you with information as it becomes available.*

*Very Sincerely,*

*Demetrius Starling*

| | |
|---|---|
| **From:** | Doane, Amanda (DHHS) |
| **To:** | DeLois Leapheart; Jacqueline Luzi (jaci.luzi@afcsinc.org); Amy Bailey; Kristin Gietzen; Rachel Thatcher; Elin Gray; gtyndall; Vicki Schultz (VSchultz@CCSGC.org); Sue Lewis; paul@ccsem.org; Lindsey Luttinen; Hardin, Kristie; Leticia Pittman; dbellamy@ccwestmi.com; Fred Wezeman; Lt. Col. Kyle Rambo (KRambo@cssup.org); Peg Bravo; Ellen Westgate; Martine Highet; Julie Thomasma (); Chelsea Gordy (chelseagordy@childandfamily.org); Courtney Schamehorn; Stephanie Dettloff; Kim Whitley; Gina Aranki; Sara Miller; Lynda Dandridge; Carlynn D. Nichols (She/Her/Hers); Darnell Britt darnellb@communitycareorg.com; Tim Carmichael; MMuliett@dabsj.org; Jeremiah Hawkins; Kristin Sherman; Cathy Prudhomme; bob.ennis; Sherry.Thomas-Cloud@fcsource.org; Diane Marquess; Beth Lord; jvasilovski; Bob Powell; Ursula Ahart; Jean Stenzel; Mary Ramsden; Jennifer DeVivo; bvalliere; Jacque Marry; Jennifer Trotter; Jessica Girz; kpagesander; Susan Rosas (SRosas@hccsnet.org); Maria Madaj; moffetti; Lenora Hardy-Foster (Lenora_Hardy-Foster@judsoncenter.org); Eickmann, Karen L.; Khadija_Walker-Fobbs; mark@livingstoncatholiccharities.org; kroach; Katrina Edmon (kedmon@mchsmi.org); Richard Watkins; Linda Lewicki; Jaime Clayton; Kerri Gentry; Kenesia Cheatham; Larry Zolman; mwilliams; SLaskey; Natasha Doan-Motsinger; John Brooks (jbrooks@realsil.net); Sam Beals; Jill Peck; KVan3@samaritas.org; Laura Mitchell; Melissa VanLuven; Lisa Bumstead; cpeixoto; Melissa Jenovai; Stacie D Bowens; jswaninger; Janice BlackMoore; Andrea Seyka; Andrea Boruta; Mark Lambert (mark@upkids.com); Rick Sanville; Tracey Compton; popem@upfs.org; Angela Aufdemberge; Debra.Brawley@WayneCenter.org; Darcel Lawrence; April Williams; David Gehm (DGehm@wellspringlutheran.com); Jason Sroufe; Maire Tolen; Sonia Noorman; Pamela Martinez; Judy Wollack; Paul Whitney; krolickiti; "Chris Holmes" (HolmesC@wolverinehs.org); Dale Boyer |
| **Cc:** | Machen, Shayne (DHHS); Willis, Rachel (DHHS); Click, Tim (DHHS); Starling, Demetrius (DHHS); Bushinski, Vera (DHHS); Goad, Sarah (DHHS); Lovell, Luther (DHHS); Marner, Shelly J. (DHHS); Wrayno, Jennifer (DHHS); Williams, Douglas (DHHS); Martin, Danielle (DHHS); Doane, Amanda (DHHS) |
| **Subject:** | SharePoint Database Announcement for Private Agencies From Director Starling |
| **Date:** | Wednesday, April 27, 2022 9:06:02 AM |
| **Attachments:** | Pending Case Guidance 4.12.22.pdf<br>CI re Drug Testing Final .pdf<br>Case Review SharePoint Site Access List - Private Agency.xlsx |

Good morning,

On March 7, the Department issued Communication Issuance (CI) #22-025 directing staff to discontinue the use of Averhealth as a substance use testing provider for a period of 90 days. Private agencies were included on the distribution list. On March 25, the Department sent Pending Case Guidance to private agencies detailing guidance for how to review open cases where positive Averhealth test results were used. I've attached both documents here for your convenience. The decision to pause utilization of Averhealth was made after the Department received information about concerns related to Averhealth's services.

In an effort to ensure each case is reviewed, the Department created a SharePoint Database to track each case review. The SharePoint site includes a record of every open case where a positive Averhealth test result was uploaded into the Averhealth Portal. These cases are organized by county and will soon also be organized by private agency. To get access to this site, each agency must send CSA Special Advisor, Shayne Machen (MachenS@michigan.gov), a list of staff who need access to the SharePoint site. Any staff who has participated or will be participating in reviewing cases in accordance with the Pending Case Guidance should have access to the SharePoint site. Please use the attached Excel spreadsheet to submit your list.

We will also be holding a virtual training for all users to attend. At this training, we will walk through the site, how to use it, discuss the various fields and what information is required for each, and answer any questions staff have. All staff on the spreadsheet you submit will be invited to the training. Staff will not have access to the SharePoint site until after the training is complete.

Thank you for you efforts to ensure careful review of each case. We believe this level of review is necessary to ensure fair outcomes for children and families. If you have questions about this

request, please send those requests to my Special Advisor, Shayne Machen.

Very Sincerely,

Director Starling

**Ex. 269**

| | |
|---|---|
| From: | Schreier, Steven (DHHS) |
| Sent: | Mon, 11 Apr 2022 12:23:48 +0000 |
| To: | Machen, Shayne (DHHS); Click, Tim (DHHS) |
| Cc: | Catton, Kristopher (DHHS-Contractor); Thompson, Wendell (DHHS) |
| Subject: | RE: CSA Case/Hearing User guide |
| Attachments: | CSA Case_Hearing User Guide V5.docx |

Good updates and edits.

We are researching an auto save function. Stay tuned.

Attached is a clean copy to be used for training.

From: Machen, Shayne (DHHS) <MachenS@michigan.gov>
Sent: Friday, April 8, 2022 12:53 PM
To: Schreier, Steven (DHHS) <SchreierS@michigan.gov>; Click, Tim (DHHS) <ClickT@michigan.gov>
Cc: Catton, Kristopher (DHHS-Contractor) <CattonK@michigan.gov>; Thompson, Wendell (DHHS)
<ThompsonW7@michigan.gov>
Subject: FW: CSA Case/Hearing User guide

Good afternoon,

Please find the attached version with our edits. Let me know if you have any questions.

Shayne Machen, Esq.
Special Advisor to the Children's Services Agency Director Demetrius Starling
Michigan Department of Health and Human Services
Email | MachenS@Michigan.gov
Cell | 231-655-9857

From: Schreier, Steven (DHHS) <SchreierS@michigan.gov>
Sent: Friday, April 8, 2022 8:07 AM
To: Machen, Shayne (DHHS) <MachenS@michigan.gov>; Click, Tim (DHHS) <ClickT@michigan.gov>
Cc: Starling, Demetrius (DHHS) <StarlingD@michigan.gov>; Thompson, Wendell (DHHS)
<ThompsonW7@michigan.gov>; Catton, Kristopher (DHHS-Contractor) <CattonK@michigan.gov>
Subject: CSA Case/Hearing User guide

Good morning Shayne and Tim,

Attached, please find the user guide we put created. Pages 1-2 are a tutorial. Page 3 provides the field
definitions and values.   Also, here is the link to the current form:

MCL 15.243(1)(y)

Please let us know if you have any questions, need any additional changes or edits and how we can
assist further.
Have a great Friday!

Steve

Steve Schreier
Bureau Director | Strategic Integration Administration
Michigan Department of Health and Human Services
300 E. Michigan Avenue, Lansing, MI 48933
W:517-284-4903 | C: 517-930-3575
Schreiers@Michigan.gov

 



# Children Services Administration
## *Case Review SharePoint User Guide*

MCL 15.243(1)(y)

When reviewing a case, you'll note that the SharePoint is composed of two parts: the county selection area on the left side of the screen and an area for listing and updating a case on the right, figure 1.

The area for updating cases is also broken down into two parts:

- The left side is for listing and searching for specific cases.
- The right side allows the user to display and update case review details for the case.
- The case selected on the left is highlighted in blue. Once a case is selected, the case review information is shown on the right.
- Scroll bars can be seen on the right side of each pane for the user to scroll through information as needed.
- The user can update the review details and then click "Save Review Details," to save any changes made to the case review details



Figure 1.

.



To see all the details for a case, click on the pencil icon to the right in the same row as the case. This will bring the user to the Case Details screen that displays and allows the user to update certain details about the case, figure 2.

- The Case Information screen allows users to update certain case details contained within input boxes
- The input boxes can capture free form text, dates or predetermined text that can be chosen from a drop-down menu.
- Information without a box <u>cannot</u> be changed.
- After the modifications have been made, the user must click on the, "Save Changes," button at the bottom of the screen to save all changes.
- Once the button is clicked, the user will be returned to the case listing screen.



MCL 15.243(1)(d)

Figure 2.



## Field Definitions and Values

| CASE REVIEW DETAILS | | | | |
|---|---|---|---|---|
| Field Name | Alpha/Numeric | Type | Values | Editable? |
| Case Review Completed<br><br>The date you finished the review. | Numeric | Date | Date | Yes |
| Completed Case Reviewer<br><br>Name of the initial reviewer and the person who completed the final approval. | Alpha | Free Form | 1-255 | Yes |
| Was Action Taken<br><br>Did we take any action as the result of our review? For example, did we notify any of the parties in the case? | Alpha | Drop Down | Yes / No | Yes |
| Reason for No Action<br><br>Only complete this section if you did not take any action on the case. | Alpha | Free Form | 1-64,000 | Yes |
| Were the parties of the case notified?<br><br>Please answer yes if at least one person was provided the "Formal Notice" language approved by CSA. | Alpha | Drop Down | Yes / No | Yes |
| Date Notification Completed<br><br>This is the date the last person was notified. | Numeric | Date | Date | Yes |
| Names of Parties Notified<br><br>Include the name and role of all individuals who were notified | Alpha | Free Form | 1-255 | Yes |
| Notes<br><br>Please include any other information that if relevant to your review or decision making. | Alpha/Numeric | Free Form | 1-64,000 | Yes |



| CASE INFORMATION | | | | |
|---|---|---|---|---|
| Field Name | Alpha/Numeric | Type | Values | Editable? |
| First Name | Alpha | Free Form | 1-255 | Yes |
| Last Name | Alpha | Free Form | 1-255 | Yes |
| Date of Birth | Numeric | Date | Date | Yes |
| Ongoing Case ID | Alpha | Fixed | 1-255 | No |
| Person ID | Numeric | Free Form | 1-255 | Yes |
| Case Status | Alpha | Drop Down | Open / Closed | Yes |
| Case Type | Alpha | Fixed | Investigation/Ongoing/Permanent Ward | No |
| Children Reunified<br><br>Have all children in the case been reunified with the parent(s) they were removed from? | Alpha | Drop down | Yes / Now | Yes |
| Legal Status | Alpha | Free Form | 1-255 | Yes |
| Direct or PAFC | Alpha | Drop Down | Direct / PAFC | Yes |
| Responsible County | Alpha | Drop Down | 83 County Listing | Yes |
| Averhealth District | Alpha | Fixed | 1-255 | No |
| Averhealth County | Alpha | Drop Down | 83 County Listing | Yes |
| Petition Authorization Reason<br><br>Please list all the reasons the court noted the petition was authorized. | Alpha | Free Form | 1-64,000 | Yes |
| Date of Next Hearing | Numeric | Date | Date | Yes |
| Type of Next Hearing Scheduled | Alpha | Free Form | 1-255 | Yes |
| Averhealth Entry Date | Numeric | Fixed | Date | No |
| Last Positive Test | Numeric | Date | Date | Yes |
| Ongoing Case First Name | Alpha | Fixed | 1-255 | No |
| Ongoing Case Last Name | Alpha | Fixed | 1-255 | No |
| Ongoing CSE In Care | Numeric | Fixed | 1-7 | No |
| Notes<br><br>Please include any other information that if relevant to your review or decision making. | Alpha/Numeric | Free Form | 1-64,000 | Yes |

# Redaction Log

Total Number of Redactions in Document: 4

## Redaction Reasons by Page

| Page | Reason | Description | Occurrences |
|------|--------|-------------|-------------|
| 1 | MCL 15.243(1)(y) | (27) Records or information of measures designed to protect the security or safety of persons or property, or the confidentiality, integrity, or availability of information systems, whether public or private, including, but not limited to, building, public works, and public water supply designs to the extent that those designs relate to the ongoing security measures of a public body, capabilities and plans for responding to a violation of the Michigan anti-terrorism act, chapter LXXXIII-A of the Michigan penal code, 1931 PA 328, MCL 750.543a to 750.543z, emergency response plans, risk planning documents, threat assessments, domestic preparedness strategies, and cybersecurity plans, assessments, or vulnerabilities, unless disclosure would not impair a public body's ability to protect the security or safety of persons or property or unless the public interest in disclosure outweighs the public interest in nondisclosure in the particular instance. | 1 |
| 3 | MCL 15.243(1)(y) | (27) Records or information of measures designed to protect the security or safety of persons or property, or the confidentiality, integrity, or availability of information systems, whether public or private, including, but not limited to, building, public works, and public water supply designs to the extent that those designs relate to the ongoing security measures of a public body, capabilities and plans for responding to a violation of the Michigan anti-terrorism act, chapter LXXXIII-A of the Michigan penal code, 1931 PA 328, MCL 750.543a to 750.543z, emergency response plans, risk planning documents, threat assessments, domestic preparedness strategies, and cybersecurity plans, assessments, or vulnerabilities, unless disclosure would not impair a public body's ability to protect the security or safety of persons or property or unless the public interest in disclosure outweighs the public interest in nondisclosure in the particular instance. | 1 |
| 3 | MCL 15.243(1)(d) | (6) Records or information specifically described and exempted from disclosure by statute. | 1 |
| 4 | MCL 15.243(1)(d) | (6) Records or information specifically described and exempted from disclosure by statute. | 1 |

# Redaction Log

## Redaction Reasons by Exemption

| Reason | Description | Pages (Count) |
|---|---|---|
| MCL 15.243(1)(d) | (6) Records or information specifically described and exempted from disclosure by statute. | 3(1) 4(1) |
| MCL 15.243(1)(y) | (27) Records or information of measures designed to protect the security or safety of persons or property, or the confidentiality, integrity, or availability of information systems, whether public or private, including, but not limited to, building, public works, and public water supply designs to the extent that those designs relate to the ongoing security measures of a public body, capabilities and plans for responding to a violation of the Michigan anti-terrorism act, chapter LXXXIII-A of the Michigan penal code, 1931 PA 328, MCL 750.543a to 750.543z, emergency response plans, risk planning documents, threat assessments, domestic preparedness strategies, and cybersecurity plans, assessments, or vulnerabilities, unless disclosure would not impair a public body's ability to protect the security or safety of persons or property or unless the public interest in disclosure outweighs the public interest in nondisclosure in the particular instance. | 1(1) 3(1) |

# Ex. 270

| | |
|---|---|
| **From:** | Machen, Shayne (DHHS) |
| **To:** | Rosenberg, Michael (DHHS); Sesti, Kelly (DHHS); Click, Tim (DHHS) |
| **Subject:** | RE: AVH Data Set Update 2022-03-29 |
| **Date:** | Monday, April 11, 2022 2:00:00 PM |
| **Attachments:** | image001.png |

Hi Mike,

Is it possible to delineate this further and remove all permanent court wards? We just learned from legal that we do not have to review these cases?

Shayne

---

**From:** Rosenberg, Michael (DHHS) <RosenbergM2@michigan.gov>
**Sent:** Friday, April 8, 2022 11:19 AM
**To:** Machen, Shayne (DHHS) <MachenS@michigan.gov>; Sesti, Kelly (DHHS) <SestiK@michigan.gov>; Click, Tim (DHHS) <ClickT@michigan.gov>
**Subject:** RE: AVH Data Set Update 2022-03-29

Good morning,
Please find the report attached. The work book has the complete listing of the records where a positive result was recorded and a summary tab broken down by county.
Thanks, Mike

---

**From:** Machen, Shayne (DHHS) <MachenS@michigan.gov>
**Sent:** Friday, April 8, 2022 10:30 AM
**To:** Rosenberg, Michael (DHHS) <RosenbergM2@michigan.gov>; Sesti, Kelly (DHHS) <SestiK@michigan.gov>; Click, Tim (DHHS) <ClickT@michigan.gov>
**Subject:** RE: AVH Data Set Update 2022-03-29

Yes please to both.

---

**From:** Rosenberg, Michael (DHHS) <RosenbergM2@michigan.gov>
**Sent:** Friday, April 8, 2022 10:27 AM
**To:** Machen, Shayne (DHHS) <MachenS@michigan.gov>; Sesti, Kelly (DHHS) <SestiK@michigan.gov>; Click, Tim (DHHS) <ClickT@michigan.gov>
**Subject:** RE: AVH Data Set Update 2022-03-29

Good morning Shayne –
I should be able to get that to you in a couple of hours – did you just want the summary count? The number of cases per county?

Thanks, Mike

---

**From:** Machen, Shayne (DHHS) <MachenS@michigan.gov>
**Sent:** Friday, April 8, 2022 10:22 AM
**To:** Rosenberg, Michael (DHHS) <RosenbergM2@michigan.gov>; Sesti, Kelly (DHHS) <SestiK@michigan.gov>; Click, Tim (DHHS) <ClickT@michigan.gov>
**Subject:** RE: AVH Data Set Update 2022-03-29

Mike,

Are you able to provide us a list of how many cases each county had uploaded into the SharePoint? We are trying to assess which counties will need additional assistance and perhaps which counties could offer additional assistance to nearby counties.

Thank you!

Shayne

---

**From:** Rosenberg, Michael (DHHS) <RosenbergM2@michigan.gov>
**Sent:** Tuesday, March 29, 2022 3:17 PM
**To:** Sesti, Kelly (DHHS) <SestiK@michigan.gov>; Machen, Shayne (DHHS) <MachenS@michigan.gov>; Schreier, Steven (DHHS) <SchreierS@michigan.gov>; Click, Tim (DHHS) <ClickT@michigan.gov>
**Subject:** AVH Data Set Update 2022-03-29
**Importance:** High

Good afternoon,

I have been able to complete additional work on the query to connect the AverHealth information to the information that we have stored on the Data Warehouse. I wanted to bring this to your attention because I believe it will influence the decisions related to obtaining the information from the field. The table below provides an updated summary on the data that we were provided and the data that I was able to match on. Some of the original numbers listed in the first table changed due to the removal of duplicates person IDs.

Highlights of the information include that 84% of the names matched on the person name and DOB (9,333). There were 9,103 cases which were matched to the person ID and 6,646 (59.8%) of these cases the person ID matched the case reference person for the case. The 9,103 cases are made up of 7,818 unique cases. Of the unique cases, there were 1,536 cases involving 2,885 unique children who were placed in out of home care and do not have a discharge date (2,609 of these children had a removal date after 5/1/2019).

After comparing the AverHealth county provided on the sheet and the county for case management extracted from the warehouse there were 1,286 records where the county did not match. **It appears that the AverHealth sheet was divided by the county where the test was administered and not by the county for case management responsibility.** Therefore, there are 2,008 records where a record could not be connected to a case and therefore the county listed on the AverHealth sheet may not be the responsible county. I wanted to bring this to your attention since there was discussion regarding separating the sheet by counties and assigning this to the county listed. Following this process there most likely will be a projected 15-25% of the cases listed for the specific county do not have case management responsibilities for the county. If the process of dividing the cases up by the AverHealth County was used it would be necessary for the end user to be able to update the county and case ID that we do not have in order for it to be accessed by the correct county. In addition, there are 473 records with an unidentified county as provided by AverHealth – many of these records have initials or numeric codes listed for the individual's first or last name.

Using the base percentages for the cases that we have information for, the simple projection for the number of unique cases which would need to be reviewed would be 2,092 cases involving an estimated 3,653 unique children. These numbers are based on children who are currently in care and who have had at least one out of home placement.

Thanks, Mike

| SUMMARY OF AVERHEALTH DATA LOAD | COUNT | PERCENT | NOTE |
|---|---|---|---|
| TOTAL RECORDS | 16,391 | | |
| RECORDS WITH POSITIVE TESTS | 11,112 | 67.8% | OF TOTAL RECORDS |
| RECORDS WITH POSITIVE TESTS WITH MATCHING PERSON (NAME, DOB) | 9,333 | 84.0% | OF RECORDS WITH POSITIVE TESTS |
| MATCHING RECORDS WITH MATCHING CASE PARTICIPANT ON CASE | 9,103 | 81.9% | OF RECORDS WITH POSITIVE TESTS |
| PERSON ID MATCHES CASE REFERENCE PERSON ON CASE | 6,646 | 59.8% | OF RECORDS WITH POSITIVE TESTS |

| CASE SUMMARY | COUNT | PERCENT | NOTE |
|---|---|---|---|
| TYPES OF CASES | | | |
| CPS ONGOING | 7,687 | 84.4% | OF CASES |
| INVESTIGATIONS* (Investigations were linked to Ongoing Case where Possible) | 1,407 | 15.5% | OF CASES |
| PERMANENT WARD | 9 | 0.1% | OF CASES |
| | 9,103 | | |

| SUMMARY OF COUNTY INFORMATION | COUNT | PERCENT | NOTE |
|---|---|---|---|
| RECORDS WHERE COUNTY WAS IDENTIFIED ON AVERHEALTH SHEET | 10,640 | 95.8% | OF RECORDS WITH POSITIVE TESTS |
| RECORDS WHERE CASE COUNTY MATCHED AVERHEATLH SHEET | 7,818 | 73.5% | OF RECORDS WHERE AVERHEALTH COUNTY WAS LISTED |
| RECORDS WHERE CASE COUNTY WAS NOT FOUND OR MATCHED AVERHEALTH | 3,294 | 29.6% | OF RECORDS WITH POSITIVE TESTS |
| PROJECTED NUMBER OF UNIQUE CASES FROM UNMATCHED CASES | 2835 | 86.1% | PERCENT OF TOTAL CASES BEING UNIQUE |

| | | | |
|---|---|---|---|
| UNIQUE CASES FOUND | 7834 | | |
| | | | |
| UNIQUE CASES WHERE AT LEAST ONE CHILD IS IN OUT OF HOME CARE | 1536 | 19.6% | OF TOTAL UNIQUE CASES |
| CHILDREN CURRENTLY IN OUT OF HOME CARE RELATED TO CASE FOUND | 2885 | 1.9 | Average Child Per case |
| CHILDREN CONNECTED TO A CASE WHOSE REMOVAL DATE WAS AFTER 5/1/2019 | 2609 | 90.4% | OF CHILDREN ON CASES WHO ARE CURRENTLY IN OUT OF HOME CARE |
| | | 0.532409 | |
| PROJECTED ADDITIONAL NUMBER OF CASES INVOLVING OUT OF HOME CARE | 556 | | NUMBERS BASED ON THE NUMBER OF UNIQUE CASES FOUND WITH |
| PROJECTED ADDITIONAL NUMBER OF UNIQUE CHILDREN IN OUT OF HOME CARE | 1044 | | CHILDREN IN OUT OF HOME CARE PER CASE |
| | | | |
| PROJECTED TOTAL CASES | 2092 | | |
| PROJECTED TOTAL CHILDREN CONNECTED TO CASE | 3653 | | |

**From:** Rosenberg, Michael (DHHS)
**Sent:** Sunday, March 27, 2022 9:28 PM
**To:** Sesti, Kelly (DHHS) <SestiK@michigan.gov>; Machen, Shayne (DHHS) <MachenS@michigan.gov>; Schreier, Steven (DHHS) <SchreierS@michigan.gov>
**Subject:** AVH Data Set Update
**Importance:** High

Good evening,

I worked over the weekend to compile the worksheets for all the counties and created a file to load onto the warehouse to obtain additional information. I created a new Record ID on the list which is unique to each record and will allow us to tie our work back to the original source data. The master list had a total of 16,391 records with 11,112 of the records having a positive test date. I loaded the 11,112 records onto the warehouse and developed the logic to match on person first name, last name and DOB. There were a total of 9, 745 matches. These person matches connected to 8,217 cases during the period (7,488 On Going; 705 Investigations; and 24 Permanent Ward cases). The ongoing cases could either be Foster Care or CPS – further logic would need to be developed. A special note is that only 5,546 case matches include the person as the Case Reference Person – which would be the primary person on the case (49.9%). Since approximately half of the records belonged to individuals who were not the case reference person we would need to be cautious on determining what cases involved children's removals or TPRs since specific individuals may overlap between Open Ongoing Cases and Investigations.

I can share the data set as needed. I moved the records from the unidentified tab to the specific county when a county was approved. There are 745 records where the county has not been identified – 472 of these records had positive tests and would be part of the 1367 positive records where a person ID match was not made. In addition, there are 1,528 records where there was a person ID that matched but did not match to a case during the specific date.

Thanks, Mike

| SUMMARY OF AVERHEALTH DATA LOAD | COUNT | PERCENT | NOTE |
|---|---|---|---|
| TOTAL RECORDS | 16,391 | | |
| RECORDS WITH POSITIVE TESTS | 11,112 | 67.8% | OF TOTAL RECORDS |
| RECORDS WITH POSITIVE TESTS WITH MATCHING PERSON (NAME, DOB) | 9,745 | 87.7% | OF RECORDS WITH POSITIVE TESTS |
| MATCHING RECORDS WITH MATCHING CASE PARTICIPANT ON CASE | 8,217 | 73.9% | OF RECORDS WITH POSITIVE TESTS |
| PERSON ID MATCHES CASE REFERENCE PERSON ON CASE | 5,546 | 49.9% | OF RECORDS WITH POSITIVE TESTS |

| CASE SUMMARY | COUNT | PERCENT | NOTE |
|---|---|---|---|

| TYPES OF CASES | | | |
|---|---|---|---|
| CPS ONGOING | 7,488 | 91.1% | OF CASES |
| INVESTIGATIONS | 705 | 8.6% | OF CASES |
| PERMANENT WARD | 24 | 0.3% | OF CASES |
| | 8,217 | | |

Michael Rosenberg
Data Unit Manager, Data Management Unit
Division of Continuous Quality Improvement
Michigan Department of Health and Human Services
235 South Grand Avenue, Lansing, MI 48933
517-241-9737

CONFIDENTIALITY NOTICE:   The information contained in this message may be privileged and confidential, protected from disclosure under the Child Protection Law (Public Act 238 of 1975), and is intended only for use of the individual or entity to which it is addressed.  If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited, and may be subject to civil and/or criminal penalties.  If you have received this communication in error, please notify us immediately via email, delete it from your computer and destroy any copies of the original message.

No portion of this transmission may be released to the media without prior approval.



| From: | Doane, Amanda (DHHS) |
|---|---|
| To: | Adrianse, Carey (DHHS); Corbat, Amy (DHHS); Atkins, Courtney (DHHS); Beach, Nicholas (DHHS); Belmer, Melissa (DHHS); Booth, Tiffany (DHHS); Boyce, Jeffrey (DHHS); BRISCOE, ELIZABETH (DHHS); Brown, Lisa (DHHS); Bryan, Kevin (DHHS); Burgess, Bryan (DHHS); Burke, Alicia (DHHS); Castanier, Andrea (DHHS); Clifford, Shannon (DHHS); Cook, Sharon (DHHS); Cullen, Meegan (DHHS); Dewyse, Marie J. (DHHS); Duch, Jennifer (DHHS); Eurich, John D. (DHHS); Fedewa, Alexandria (DHHS); Floriano, Angela (DHHS); Fuller, Michelle (DHHS); Gatke, Kristi (DHHS); Graham, Eric (DHHS); Griffin, Tracy (DHHS); Hanks, Allison (DHHS); Hawkins, Jeff (DHHS); Hengesbach, Darren J (DHHS); Hessem, Amanda (DHHS); Hingston, Anne (DHHS); Hull, Steven (DHHS); Hunt, Rebecca (DHHS); Jackovich, Ashley (DHHS); Johnston, Bobra (DHHS); Jordan, Mary E. (DHHS); June, Terri (DHHS); King, Kelli (DHHS); Langsdale, Lisa (DHHS); Laurin, Andrew (DHHS); Lawson, DeAndre (DHHS); MacKenzie, Andrea (DHHS); Marchetti, Rebecca (DHHS); Marenger, Tammy (DHHS); McFellin, Kim (DHHS); McNiel, Christiana (DHHS); Miko, Anita (DHHS); Miller, Joi (DHHS); Mosher, Becky (DHHS); Mukka, Joel (DHHS); Nemitz, Stacy (DHHS); O'Dell, Corina (DHHS); Osborn, Elizabeth (DHHS); Parks, Colin (DHHS); Peck, Joleen (DHHS); PowellStockley, Carrie (DHHS); Rann, Holly (DHHS); Rich, Victoria (DHHS); Rivard, Joshua (DHHS); Ross, Robert (DHHS); Rynearson, Mary (DHHS); Sczykutowicz, Jennifer (DHHS); Seipelt, Alice M. (DHHS); Sharp, Craig (DHHS); Smith, Amber (DHHS); Smith, Amy (DHHS); Smith, Kay (DHHS); Stoepker, Jennifer (DHHS); Thilo, Rillie (DHHS); Venne, Nicholas (DHHS); Vert, Diana S (DHHS); Waldron, Julie A. (DHHS); Whitmyer, Sara (DHHS); Wilson, Amanda (DHHS); Amy Harding; Andrea Foley; Andrea Seyka; Angela Aufdemberge; C Gaffney; Cathey Prudhomme; cpeixoto; Darcel Lawrence; Darnell Britt; David Garvin; David Gehm; DeLois Leapheart; Elin Gray; Beth Lord; George Winn; Hgilbert; Jaci Luzi; Jack Greenfield; Jacque Marry; Jacquelynn Moffett; Jennifer DeVivo; Jennifer Trotter; jvasilovski; Jeremiah Hawkins; Jessica Girz; Jodi Shinn; John Brooks; Jolene Lepien-Doan; jswaninger; Julie Thomasma; Kenesia Cheatham; kroach; Kim Whitley; Larry Zolman; Lenora Hardy-Foster; Leticia Pittman; Lindsey Luttinen; Lisa Bumstead; Mark Robinson; Mary Ramsden; Mary Sparapani; Nicole Gillies; Nicole St. Aubin; Rachel Thatcher; Richard Watkins; Rick Sanville; bob.ennis; Bob Powell; Salhaney, Susan; Sam Beals; Sandy Sheltrow; Sara Miller; Sarah Codere; Stacie D Bowens; Stephanie Dettloff; Sue Lewis; Tim Carmichael; krolickitj; Ursula Ahart; Vicki Schultz; Klinski, Wendy; wcjackson; Natasha Doan-Motsinger |
| Cc: | Goad, Sarah (DHHS); Doane, Amanda (DHHS); Lovell, Luther (DHHS); Williams, Douglas (DHHS); Marner, Shelly J. (DHHS); Martin, Danielle (DHHS); Wrayno, Jennifer (DHHS); Machen, Shayne (DHHS); Wildfong, Sasha (DHHS) |
| Subject: | Drug Screen Information Update |
| Date: | Monday, April 18, 2022 6:47:39 AM |
| Attachments: | image001.png |

Good Morning Drug Screen Coordinators,

I hope you are all doing well and I wanted to thank each of you for the unexpected workload during the shift away from Averhealth during this 90-day pause. As most of you know, 81 of 83 counties are now utilizing Forensic Fluids for some or all of their oral fluid drug testing needs. Forensic Fluids has given me the following statistics that are as of last Thursday:

- 81 Counties are onboard with FFL Services
- 1,507 Caseworkers have Attended our How to Collect Webinar
  - Webinars are live hosted and scheduled Tuesdays & Thursdays at 2pm. If you are interested in attending a webinar please contact the FFL Customer Service line at 866-492-2517 x230
- Nine Counties, as well as 12 Private Agencies have enrolled in our Randomization program
  - Many additional counties and agencies are in the process of evaluating how the program will work for them.
- 203 Caseworkers have attended our Randomization Training Webinar
  - Webinar is live hosted and scheduled for Wednesdays at 3:00pm. If you are interested in attending a webinar please contact the FFL Customer Service line at 866-492-2517 x230
- 15,340 kits have been sent out
  - Orders are processed upon request from each county and are not refundable/returnable. FFL stresses this with each order to avoid over

ordering during this uncertain time.  Please do not stockpile test kits as we CANNOT get our money back if/when we shift back to Averhealth or another statewide contractor.

- 2,377 Samples have been tested to date.

Please let me know if you have any questions.  As always, as soon as I am able to share information I will do so.

Amanda Doane
Department Analyst
Bureau of Out-of-Home Services
Children's Services Agency
235 S. Grand Ave., Suite 510
Lansing, MI 48933
**517-282-5273 work**
[DoaneA@michigan.gov](mailto:DoaneA@michigan.gov)



*Michigan has a public records law.* Most written communications to or from state officials regarding state business are public records available to the public and media upon request. **Your e-mail communications and any attachments to them may be subject to public disclosure. E-mail Confidentiality Notice:** This message, including any attachments is intended solely for the use of the named recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this e-mail is expressly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

Results of survey given to Michigan DHHS users Week of 5/16/22.  Below are the scores (average) on a 1 out of 10 scale (10 being Very Satisfied, 1 being Very Unsatisfied).  We have also included the comments for each question.  Forensic Fluids is proudest of our NET PROMOTER SCORE of **<u>82</u>** compared to that of our competitor with a NET PROMOTER SCORE of **<u>-57</u>**.

**What is your overall satisfaction with company services?**
Forensic Fluids Laboratories          Averhealth
9.3 / 10                                              5.3 / 10

**How responsive is the company to your questions and needs?**
Forensic Fluids Laboratories          Averhealth
9.5 / 10                                              5.7 / 10

**How satisfied are you with the company customer service team?**
Forensic Fluids Laboratories          Averhealth
9.6 / 10                                              5.8 / 10

**How much do you value the laboratory test results?**
Forensic Fluids Laboratories          Averhealth
9.5 / 10                                              5.2 / 10

**How satisfied are you with the laboratory 24-hour turnaround time?**
Forensic Fluids Laboratories          Averhealth
9.5 / 10                                              4.5 / 10

**Based on your recent experience, how likely are you to recommend laboratory to other agencies or medical providers?**
Forensic Fluids Laboratories          Averhealth
**Net Promoter Score 82**               **Net Promoter Score -57**

**What is your overall satisfaction with <u>Forensic Fluids Laboratories'</u> services?   Score 9.3 / 10**

- Quick turn around on drug screens
- No real problems have occurred
- I trust your results.  Results are received in a timely manner.  You do not lose drug screens.
- My first name is constantly misspelled in your system
- Very organized, easy to utilize your systems, excellent customer service
- Due to my job title, I have no need to refer clients to your laboratories.
- I haven't used this service in over two years as I'm not a FC Specialist any longer, but when I did, it was convenient for clients.
- Screen results get back in a timely manner
- The system works well and it is fast and efficient.
- Results appear to be completed in a timely manner.  Need access to online or App referrals, random screens process
- Quick
- Because it is easy to use. The website is easy to find results of the screens. Staff is very kind and helpful when you call to get clarification. Screen's come back timely.
- The process is simple to administer a drug test and the results are relatively quick.
- The response of the screen
- There is quick turnaround time and descriptive tests.
- The response time is better than I have ever experienced, they call with concerns if levels for an individual is too high, and support services are polite and respectful.
- I wish you guys have services to do our drug test so we don't have to see our clients on our busy schedule.
- Great customer service, prompt results.
- Quick testing and results, simple form for collection, overall presentation of results is simple and easy to understand
- Easier to manage
- Reliable, knowledgeable, accessible, credible, friendly
- Easy process and quick results
- Results are quick and reliable.
- I love your services, now and in the previous contract. There is always someone available to answer questions or calls are returned timely. Screens are processed timely. The website and screens are user friendly.
- Love the ease of the systems. When talking with customer service they are always awesome!!
- Timely and for it's accuracy
- It is simple and there is responsive/timely communication from Forensic Fluids.
- The tests are easy to use and the customer service is excellent, but it's difficult not to have a location clients can come to independently
- Fast order delivery, kind customer service
- They are wonderful! Every time I've had a question, they assist me and are always willing to help.

**What is your overall satisfaction with <u>Averhealth's</u> services?   Score 5.3 / 10**

- Quick turn around on drug screens Depends on what it is.  Common problem was how long it took to get results.  No consistency
- Cannot test medication levels, lose tests, results take a long time, question about validity of results.
- Slow processing times, customer service not very responsive, system difficult to use
- Poor Customer service, slow response time for results
- I haven't used this service in over two years as I'm not a FC Specialist any longer, but when I did, it was easy to use
- Screens were not back in a timely manner
- They are terrible. The tests took several weeks to get the results and they never testified per their contract
- Drug screen results were not timely.  Referral process was streamlined and easy.
- Quick
- Website was confusing, screens would take forever to come back and sometimes they wouldn't come back at all. Never spoke to a single person from Averhealth
- I had issues logging into the mobile app to complete an entry and the results did not come back quick enough for the job that I do.
- It took too long to get the results
- Results took too long to receive.  Customer Service was a pain to use.  You could only communicate via email.
- They provide for all testing needs as a CPS worker.
- THE SCREENINGS ARE BOTH EASY TO UNDERSTAND
- Averhealth was slow to get results back, I had to wait around 2 weeks to maybe gets results back. When trying to have concerns handled, I could never get ahold of anyone via phone or email.
- Parents go to places to get Averhealth I miss that
- Terrible customer service, questionable results.
- testing takes weeks, inaccuracy of the tests, complicated process for registering clients and printing tests
- Wait too long to receive results! Sometimes not notified of results!
- Unacceptable return time, inefficient customer service, no personal contact
- They take forever to get us our screens back. There is too much controversy on whether or not they're screens are accurate.
- Smooth and quick process
- Results took forever and we had to request numerous tests to be re-run due to false negatives and positives.
- Screens weren't tested timely, contact with customer service was a headache and difficult. The website was not user friendly.
- Their online portal was so difficult to use. Results always take forever. Have to register each client.
- Not so timely and lack of consistency with the results.
- Complicated website.
- Same as above
- Orders never seem to match what I order.

**How responsive is <u>Forensic Fluids Laboratories</u> to your questions and needs?   Score 9.5 / 10**

- Very quick to respond to any emailed question sent.
- I've always had a good experience when asking questions.
- Exceptional customer service
- I haven't used this service in over two years as I'm not a FC Specialist any longer, but when I did, our local office was very good at assisting workers.
- I have not had to ask any questions but have heard back from others that FF is great.
- They know what they are doing and they are friendly
- Forensic Fluids has been very responsive with questions asked of them.
- This question should have an "NA" response as I have not asked a question.
- In the past they have always responded quickly
- I had a customer service rep contact for concern of a client and provide feedback to ensure that testing can be used in court.
- FF ALWAYS GETS BACK TO MY EMAILS QUICKLY
- you know what we need and the person(s) to provide it.
- They respond quickly, are willing to have a conversation about the questions or needs, and are polite.
- Results and supplies received quickly.
- Over the years, prior to Averhealth, I had developed an AWESOME working relationship with FF!!
- Quick results received
- I love your services, now and in the previous contract. There is always someone available to answer questions or calls are returned timely. Screens are processed timely. The website and screens are user friendly.
- Their customer service is timely and they are about to give the answers your seeking with confidence.
- They have a phone number you can call any time.
- The customer service is excellent
- No matter who I email or talk to on the phone - I don't get put down

**How responsive is <u>Averhealth</u> to your questions and needs?  Score 5.7 / 10**

- They responded to emails pretty quickly, but if it wasn't resolved quickly, I contacted Amanda Doane and she helped
- They've lost screens before, but when I've asked about them customer service was quick to look into the situation for me. It was unfortunate though that on at least 2 occasions they've lost drug screens that were sent to them.
- Never needed to ask questions
- I tried not to talk to them
- Averhealth was responsive with questions and issues.
- Takes for ever
- The responses I received were timely enough but never helpful.
- When I had a question, it took a while to get a response from them in a changed screen by them
- They typically would respond. it just took a while.
- ORIGINALLY, AVERHEALTH HAD DIFFICULTIES WITH INPUTTING BUT THEY FIGURED IT OUT
- they did not provide the correct expert witness and further the expert testified against their own results.
- I could never get a response from anyone with any phone numbers or emails.
- annoying
- Never responded timely.
- Non-responsive.
- Not responsive to my questions or needs in any way, shape or form.
- Averhealth does reply, however the concern is that I do not know if I can trust them.
- Easy to contact
- There responds time was possibly 2-days or several calls to get someone to follow-up with you.
- I have no basis for answering this, have not used it for my own case services, but have minimally used.
- Same as above
- Never seem to get the correct department -  always feel like I am in the way

**How satisfied are you with <u>Forensic Fluids Laboratories'</u> customer service team?**

**Score 9.3 / 10**

- Exceptional customer service team, have always been incredibly helpful with specific questions and issues
- They were helpful and polite
- They always know what they are doing and friendly
- Marilyn Cole has been very helpful and very responsive.
- Nonissues
- Wait time was short. They are always helpful and kind.
- Again, this question should have an "NA" response as I have not needed to contact customer service.
- There have never been any concerns
- ALWAYS NICE AND INFORMATIVE.
- Their customer service skills are excellent. They are patient and polite.
- Great customer service
- Very helpful and communication is efficient.
- Accessible, knowledgeable and credible. Take time to educate and also notify if there are client concerns regarding results.
- Forensics Fluids does an amazing job. They are always respectful and answer in a very quick time frame. They are knowledgeable and confident when they speak to you.
- No experience with the ream
- Always friendly and easy to talk to.
- Have used it historically in the past and the team is available to answer questions.
- They reach out about important screens and respond quickly

**How satisfied are you with <u>Averhealth's</u> customer service team?   Score 5.8 / 10**

- For the most part they responded quickly, but depended on what the question was if answered promptly
- Never used them
- I tried to not talk to them
- Averhealth was responsive with questions asked of them.
- Deflect
- Never spoke with them. Didn't even know how to contact them.
- They are not helpful.
- I have not talked with customer service but received a letter as to why they changed a screen from an error
- I ONLY SPOKE TO THEM WHEN SOMETHING WAS WRONG.  EVENTUALLY, THEY DID FIGURE IT OUT.
- Could never get a response.
- Poor communication, poor result times
- it's ridiculous that they have contacted state employees directly to state that they don't understand why the state has stopped using them again
- Poor customer service
- Never had contact with them even in follow up to my questions.
- Averhealth does respond when you ask them a question but again I'm not confident that I can trust them.
- Friendly and helpful.

**How much do you value the <u>Forensic Fluids Laboratories'</u> test results?   Score 9.5 / 10**

- Not sure on this one as I'm not a worker.
- Never had any issues with the validity of results from Forensic Fluids and your team was always readily available to answer any questions
- I trusted the accuracy
- The results are fast and effective
- Results have a quick turn around.  No questions regarding results are this time.
- Quick
- Because of my job I have to rely on the drug tests results and I have not heard they are unreliable.
- They have always been able to explain or give feed back for results
- N/A I AM NOT A WORKER WHO LOOKS AT THE RESULTS
- With foster care, the results are needed quick and accurate. Forensic Fluids provides that in a time frame that allows for therapeutic responses to positive screens.
- Trusted and respected by the courts.
- extremely trustworthy
- Efficient and accurate
- Credible with our agency AND the courts.
- I have work for the department for 10 years and I have never once had a concern with a friend a clue a drug screen or Franczyk fluids ability to stand behind their drug screens.
- No issues thus far
- Thank you so much its timely.
- I have not had any significant reports of discrepancy.

**How much do you value the <u>Averhealth's</u> test results?   Score 5.2 / 10**

- Numerous concerns raised on multiple occasions regarding the validity of results
- Haven't used
- They aren't accredited
- Turnaround time was dreadful.  Results were questioned on numerous occasions.
- Takes weeks
- Results seemed accurate despite the rest of their downfalls.
- Because of my job I have to rely on the drug test results and I have heard there have been issues with the testing.
- I have never called them in reference to a screen it was done through the representative
- N/A I AM NOT A WORKER WHO LOOKS AT THE RESULTS
- The results of drug tests are important but it took so long to get them back that treatment court and substance abuse therapists could not give sanctions or therapeutic responses for the positive screens.
- Not trusted
- Not received in a timely manner
- Not reliable or timely results lost credibility with courts and workers. Made more work in the end.
- Too much controversy on whether or not they're screening protocol is above board.
- No issues
- They took too long with screen results.
- No basis for answering, have not used them for my own case services.
- Concerned about the investigation and accuracy of Averhealth results

**How satisfied are you with <u>Forensic Fluids Laboratories'</u> 24-hour turnaround time?**

**Score 9.5 / 10**

- Outstanding
- Result times are completed quickly.
- I have had no issues.
- They are very quick with response
- N/A I AM NOT A WORKER WHO LOOKS AT THE RESULTS
- It is wonderful and allows for appropriate actions to be taken in a timely manner.
- Very important in making critical case decisions
- this is the best things about FF
- Efficiency is key in emergent situations.
- Guaranteed results in hours is standard!!
- Franczyk fluids does an amazing job getting us are drug screen results in a very rapid time frame.
- Quick results
- This was and absolutely great idea.
- It is important to confront clients timely/or for the safety of children involved in services.

**How satisfied are you with <u>Averhealth's</u> 24-hour turnaround time?  Score 4.5 / 10**

- Averhealth was not fast
- Workers had issues with this sometimes.
- Never saw the 24-hour turnaround time.
- It was never a quick turnaround and often times had to call asking where the results are
- There's no such thing
- Turn around rate was not quick.
- I didn't even know that was a thing because that never happened.
- What 24-hour turn-around time? I have not experienced anything take less than a week with Averhealth.
- It seems to take a while for a test
- They didn't really have one because the tests took so much longer to get to them.
- N/A I AM NOT A WORKER WHO LOOKS AT THE RESULTS
- I had no idea this was a thing.  we usually wait weeks for results.
- There is no 24 hour turn around with Averhealth.
- Frequent delays cause problems in making important case management decisions
- they take weeks to return test results; it has literally never been less than a week to get results back
- NEVER received results within 24 hours.
- All talk, no action
- Averhealth has never been able to get me a drug screen back in a 24 hour period.
- Had to wait a few times for results
- That's a joke there is no 24 hour turn around.
- Great idea but need to be more timely. It shouldn't take weeks to get back screening results.
- No basis for answering this, I have not used them for my own case services.

**Based on your recent experience, how likely are you to recommend <u>Forensic Fluids Laboratories</u> to other agencies or medical providers?   Net Promoter Score: 82**

- The only reason I deducted points here is there was a convenience factor with Averhealth where they had a way of collecting samples that didn't involve an additional contact with the worker. For some client that creates a barrier and for some clients it's extremely helpful to not have to see us again.
- Have not used in over two years.
- Absolutely
- Because I have never had issues with Forensic Fluids.
- I LIKE THEIR WORK ETHIC AND THAT THEY ARE LOCAL
- I would recommend Forensic Fluids for their turn around time, the quality of their service, and their care for those being screened.
- 10/10 would recommend always
- Most efficient!
- Forensic fluids is accurate and reliable.
- Good fast service and results
- I am confused about why Forensic Fluids was discontinued with DHHS.

**Based on your recent experience, how likely are you to recommend <u>Averhealth</u> to other agencies or medical providers?   Net Promoter Score: -57**

- As previously stated... Cannot test medication levels, lose tests, results take a long time, question about validity of results.  They've lost screens before, but when I've asked about them customer service was quick to look into the situation for me. It was unfortunate though that on at least 2 occasions they've lost drug screens that were sent to them.  Never saw the 24-hour turnaround time.
- Haven't used
- Never
- Because I have had issues with the timeliness of drug test results and answered for the results being completed.
- SOLELY BASED ON THEIR REPUTATION IN THE NEWS AND SOCIAL MEDIA LATELY.
- I would not recommend Averhealth if I could avoid it.
- overall Averhealth is an awful service. we need quick accurate results and averhealth has never delivered that
- Poor service!
- They take forever to get you your drug screen results, they do not follow through with the things that they said they were going to follow through with when they first started with us, and I am not confident that they do their drug testing above board.
- We are no longer using Averhealth services
- I have no basis of understanding the difficulties using them. Have not used for my own case services.



| Subject/Title | Substance Use Testing |
|---|---|
| Type | ☐ Informational Memorandum<br>☒ Program Instruction<br>☐ Policy Guide |
| Issuance Date<br>Obsolete Date | 3/7/2022<br>9/7/2022 |
| Contact Name<br>Email<br>Phone | Sarah Goad<br>GoadS@Michigan.gov<br>N/A |
| Due Date<br>Due to | N/A<br>N/A |
| *Distribution* | ☒ CSA Central Office Managers/Staff<br>☒ MDHHS BSC and County Directors<br>☒ MDHHS Juvenile Justice Managers/Staff<br>☒ MDHHS Child Welfare Managers/Staff<br>☒ Native American Tribes<br>☐ Office of Workforce Development and Training<br>☒ Private Agency Child Welfare Managers/Staff<br>☐ Private Residential Abuse/Neglect Managers/Staff<br>☐ Private Residential Juvenile Justice Managers/Staff<br>☐ Other: |

**MDHHS**
Michigan Department of Health & Human Services

**Children's Services Agency**

**Communication Issuance**

22- 025
*Updated
6/7/2022

The Children's Services Agency (CSA) has determined that effective immediately, CSA will discontinue the use of Averhealth for substance use testing. Staff must access other local providers for testing through September 7, 2022.

**Substance Use Testing Liaison**
Each county/district office and private agency provider has established a substance use testing liaison to assist with the substance use contract service. The liaison is responsible for identifying local substance use providers.

**Court Ordered Drug Testing**
While the local substance use testing liaisons work to set up substance use testing with local substance use testing companies, please work with clients who are court ordered to test to ensure they have the information and resources they need to comply with the court's order.

**Payment and Tracking Process for Substance Use Testing Providers**
The cost of drug testing will be covered by the CSA during this period.

Services must be paid using the paid case service process in MiSACWIS. Child welfare caseworkers should verify the provider is registered in SIGMA, enrolled in Bridges, and shows as an active medical services provider in MiSACWIS. Ensure that the case service and paid service authorizations are approved by a supervisor prior to case closure. Questions regarding the payment process should be sent to the FCD mailbox: MDHHS-FederalComplianceDivision@michigan.gov.

1



| | Subject/Title | Substance Use Testing Update |
|---|---|---|
| **Children's Services Agency** **Communication Issuance** **22-098** | Type | ☐ Informational Memorandum<br>☒ Program Instruction<br>☐ Policy Guide |
| | Issuance Date<br>Obsolete Date | 9/7/2022<br>7/1/2024 |
| | Contact Name<br>Email<br>Phone | Sarah Goad<br>GoadS@Michigan.gov<br>N/A |
| | Due Date<br>Due to | N/A<br>N/A |
| | *Distribution* | ☒ CSA Central Office Managers/Staff<br>☒ MDHHS BSC and County Directors<br>☒ MDHHS Juvenile Justice Managers/Staff<br>☒ MDHHS Child Welfare Managers/Staff<br>☒ Native American Tribes<br>☐ Office of Workforce Development and Training<br>☒ Private Agency Child Welfare Managers/Staff<br>☐ Private Residential Abuse/Neglect Managers/Staff<br>☐ Private Residential Juvenile Justice Managers/Staff<br>☐ Other: |

The Children's Services Agency (CSA) has determined that the updated Communications Issuance issued on June 7, 2022, which discontinued the use of Averhealth for substance use testing, will remain in effect. Staff must continue to access other local providers for testing going forward.

**Court Ordered Drug Testing**

Please work with clients who are court ordered to test to ensure they have the information and resources they need to comply with the court's order.

**Payment and Tracking Process for Substance Use Testing Providers**

Services must be paid using the paid case service process in MiSACWIS. Child welfare caseworkers should verify the provider is registered in SIGMA, enrolled in Bridges, and shows as an active medical services provider in MiSACWIS. Ensure that the case service and paid service authorizations are approved by a supervisor prior to case closure. Questions regarding the payment process should be sent to the FCD mailbox: MDHHS-FederalComplianceDivision@michigan.gov.

# **Exhibit A**

## DONOR TESTING AGREEMENT

1. <u>Purpose.</u> I understand that I have been sent to Avertest LLC d/b/a averhealth for sample collection and testing. averhealth's role and purpose is to competently perform these functions and, by doing so, help me to achieve and maintain sobriety and succeed in my treatment, recovery, and/or supervision program.

2. <u>Free Will.</u> I understand that I am participating in the averhealth testing and collection process voluntarily and of my own free will. While I may have to answer to a treatment provider, a case manager, and/or a court, averhealth and averhealth staff have no authority over me and cannot require me to do anything against my will. I understand that averhealth does not set or control any provisions, conditions, or requirements for my treatment or supervision program and that they are merely providing services as ordered by my treatment provider, case manager, and/or judge.

3. <u>Mutual Respect.</u> I understand that averhealth is a partner in my treatment, recovery, and/or supervision. averhealth will treat me with respect, and I will treat the averhealth staff with respect. I also understand that the averhealth staff has an important and sometimes challenging job. Similarly, averhealth understands that the procedures it performs may be uncomfortable or a source of stress for me. We will each be courteous, non-confrontational, and non-argumentative with one another and with other people in and around the averhealth location.

4. <u>Test Orders.</u> Concerning my testing, I understand that I must:
   a. Appear for testing at an approved collection location when randomly selected or otherwise instructed by the court, or my probation, treatment, or similar agency.
   b. Call the averhealth notification line or receive and respond to the averhealth text notifications promptly and during the day they are received. I understand that I must listen to or read the entire scheduling notification to hear my scheduling information, test location hours of operation, other messages/alerts, and my confirmation number.
   c. Pay a pre-determined test fee each time I arrive for my drug test via cash, credit card, my prepay account, and/or accepted insurance coverage.

5. <u>Same Gender Observed Urine Collections.</u> I understand that averhealth follows same-gender observed urine collection procedures that are approved by my court, case manager, and/or treatment provider and recommended by the National Association of Drug Court Professionals, the American Society of Addiction Medicine, and other similar organizations. I understand that these procedures are designed for my benefit and to help me. I agree to:
   a. Allow an averhealth collection technician of the same gender to accompany me into the collection room.
   b. Ensure the averhealth collection technician has an unobstructed view of urine flowing from my urethra into the collection cup by removing any coats or bulky outer garments, raising my shirt above my mid-section, lowering my bottoms to mid-thigh and during prior to providing a sample.
   c. Comply with other collection protocols as requested by my program. These protocols may include that I provide a 'mid steam sample', but in NO case will these protocols include processes that are against averhealth policy, including physical contact, any recording (e.g., audio, image, or video), or cavity searches (other than a visual inspection on the mouth during an oral fluid collection).
   d. Alert my probation officer, case manager, and/or treatment counselor as well as the local averhealth manager via confidential email at service@averhealth.com regarding my concerns related to the testing program or collection process.

6. <u>Test Results.</u> I understand that averhealth is not permitted to discuss the results of my tests with me at any time and that test results will be reported directly to the court, my probation or treatment agency and other approved parties.

7. <u>Consent, Waiver, & Release.</u> I voluntarily and knowingly consent to and agree to participate in the testing and same-gender, observed collection process to be conducted by averhealth and its employees. I understand that my participation in the averhealth testing and collection process is an approved condition of my treatment and/or supervision program, has been voluntarily agreed to by me, and does not constitute a violation of my constitutional rights. averhealth does not set or control the conditions of my treatment and/or supervision program. averhealth also does not control the actions taken by the treatment and/or supervision program based on the test and information generated by averhealth. In consideration of these facts, I agree to release averhealth from liability for, and waive my right to sue averhealth as a result of any and all claims arising from or related to my participation in the drug testing program and averhealth's collection and testing services.

8. <u>Governing Law & Venue.</u> I voluntarily and knowingly agree that this agreement shall be governed by the laws of the state where services are provided and that venue for any action brought pursuant to this agreement shall be in the local judicial district where those services are provided.

9. <u>Severability.</u> If any provision of this agreement is or may be held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions shall nevertheless survive and continue in full force and effect without being impaired or invalidated in any way.

10. <u>Agreement.</u> I HAVE CAREFULLY READ THIS AGREEMENT, UNDERSTAND ITS CONTENTS AND SIGN THIS AGREEMENT AS MY OWN FREE ACT. THE AGREEMENT REPRESENTS THE ENTIRE AGREEMENT BETWEEN AVERHEALTH AND ME, AND THIS AGREEMENT SUPERCEDES ANY OTHER AGREEMENT WHETHER VERBAL OR WRITTEN. THIS AGREEMENT MAY ONLY BE MODIFIED WITH EXPLICITLY WRITTEN APPROVAL OF AN AVERHEALTH EXECUTIVE OFFICER.

_X_____
Signature of Patient or Patient Representative

KATARZYNA     FOULGER
Print Name of Patient or Patient Representative

KATARZYNA     FOULGER
Relationship to Patient

12 / 13 / 2021
Date



5174224



**Ex. 346**

| | | | |
|---|---|---|---|
| Account: | Michigan - Department of Health &amp; Human Services | Results: | **Positive (Confirmed)** |
| | | Panel Name: | TPA Oral |
| Program: | Michigan - Muskegon County | Scheduled Date: | 01/20/2021 |
| Patient Name: | Tiffani Padilla | Collection Date: | 01/20/2021 16:22 |
| PIN: | 6925866 | Collection Location: | TPA - Services of Esperanza (Services of Hope) |
| Accession #: | 13246581-014 | | |
| Patient ID 2: | N/A | Date Received: | 01/22/2021 12:06 |
| Patient ID 3: | N/A | Date Reported: | 01/22/2021 15:44 |
| Patient ID 4: | N/A | Confirmation Order: | 01/22/2021 15:46 |
| Case Worker: | Carolyn Dixon | Confirmation Reported: | 01/24/2021 22:06 |
| Collected By: | Floyd Woods | | |
| Order Type: | Random | Billed Insurance: | N |
| | | Customer Order ID: | N/A |

| Test Class | Assay / Analyte | Result | Level | Cut-Off | ULOL | Sample Type | Testing Method |
|---|---|---|---|---|---|---|---|
| Amphetamines | Amphetamines-SI | Negative | N/A | 12.5 ng/ml | 12.5 ng/ml | Oral Fluid | Immunoassay |
| | Methamphetamines-SI | Negative | N/A | 12.5 ng/ml | 12.5 ng/ml | Oral Fluid | Immunoassay |
| Benzodiazepines | Benzodiazepines-SI 20 | Negative | N/A | 20 ng/mL | 20 ng/mL | Oral Fluid | Immunoassay |
| Buprenorphine | Buprenorphine-SI | Negative | N/A | 1.25 ng/ml | 1.3 ng/ml | Oral Fluid | Immunoassay |
| CannabinoidsNatural | Cannabinoids SI1 | Negative | N/A | 1 ng/mL | 1 ng/mL | Oral Fluid | Immunoassay |
| Cocaine | Cocaine SI 3.5 | Negative | N/A | 3.5 ng/mL | 3.5 ng/mL | Oral Fluid | Immunoassay |
| Fentanyl | Fentanyl OF | Positive | N/A | 2 ng/mL | 2 ng/mL | Oral Fluid | Immunoassay |
| | Fentanyl | Positive | 20 ng/ml | 1 ng/mL | 50 ng/ml | Oral Fluid | LC-MS/MS |
| | Norfentanyl | Negative | N/A | 1 ng/ml | 50 ng/ml | Oral Fluid | LC-MS/MS |
| Opiates | Opiates - SI 7.5 | Negative | N/A | 7.5 ng/mL | 7.5 ng/mL | Oral Fluid | Immunoassay |
| | Oxycodone-SI | Negative | N/A | 10 ng/ml | 10 ng/ml | Oral Fluid | Immunoassay |
| Tramadol | Tramadol - SI | Negative | N/A | 10 ng/mL | 10 ng/mL | Oral Fluid | Immunoassay |

**Notes:**

1. **Upper Limit of Linearity (ULOL)** - Numeric values above the upper limit of quantitation are not reported. If the amount reported is the same as the upper limit of quantitation, the concentration in the sample is at or above this level.
2. I certify I am employed by averhealth as a laboratory technician and performed the analysis and data review of the specimen contained in this report. My education, training and experience qualify me to perform the tests and certify the results. Immunoassay testing was performed to screen the specimen and LC-MS/MS (liquid chromatography double mass spectrometry) was performed to confirm the specimen for the absence or presence of a substance. These techniques are the most widely used methods of laboratory testing throughout the world and are the most accurate tests for this particular drug. Operating procedures and protocols established by the Clinical Laboratory Improvement Amendments accreditation program were followed during the testing process and I certify that the test results are reliable and accurate. I acknowledge that submission of false information may subject me to prosecution for the criminal offense of perjury. Certifying Technician: Marisa Tarpinian
3. Laboratory confirmation testing via LC-MS/MS or a comparable testing method should be completed on any positive results prior to taking judicial, employment, or similar action. All LC-MS/MS testing methods performed at averhealth are laboratory developed test methods.
4. Confirmed positive for Fentanyl 20 ng/ml
5. **averhealth Collections Statement** - Sample collected met all requirements for proper temperature and other possible adulteration indicators.
6. **Frozen Storage** - Non-negative samples will be sealed in the original container, properly marked for identification, and locked in frozen storage for 365 days from the date of collection.
7. **Testing Performed by** - Avertest, LLC d/b/a averhealth, 4709 La Guardia Drive St. Louis , MO; 63134
8. This collection was Observed

Padilla, Tiffani M (MRN 102689860) DOB: 11/30/1989                    Encounter Date: 01/07/2021

# Harbour Towne Health PLLC – Family Medicine

131 W. Seaway Drive, Suite 200 ● Muskegon, MI 49444
Phone: 231.375.8065 ● Fax: 231.375.8063



January 21, 2021

RE: Tiffani Padilla
DOB: 11/30/1989

To Whom This May Concern,

Tiffani is an established patient of Harbour Towne Health. Tiffani was in the office today to
have a hair follicle drug screen done. We are currently waiting for the results to come back.

If you have any questions or concerns, please feel free to contact the office at 231-375-
8065, extension 200 or 201.

Sincerely,

David Wilkins, PA-C

Rafael Torres, MD ● Gregory Pinnell, MD ● John Campbell, MD
David Wilkins, PA-C ● Kadence Edelblut, PA-C

Ex. 347-B

Feb 02, 2021 13:53 PM

## Padilla, Tiffani M, F, 11/30/1989

📞 231-292-1511

## CUMULATIVE REPORT

### Hair Drug Screen 12 Panel

| COLLECTION DATE | 01/21/2021 |
|---|---|
| Order Date | 01/21/2021 |
| Result Date | 01/27/2021 |
| Ordering Physician | WILKINS, DAVID |
| Amphetamines | Negative |
| | (500 pg/mg) |
| Barbiturates | Negative |
| | (200 pg/mg) |
| Benzodiazepines | Negative |
| | (200 pg/mg) |
| Cocaine | Negative |
| | (500 pg/mg) |
| Methadone | Negative |
| | (200 pg/mg) |
| Meperidine | Negative |
| | (500 pg/mg) |
| Opiates | Negative |
| | (200 pg/mg) |
| PCP | Negative |
| | (300 pg/mg) |
| Oxycodone | Negative |
| | (200 pg/mg) |
| Propoxyphene | Negative |
| | (200 pg/mg) |
| Cannabinoids | Negative |
| | (1 pg/mg) |
| Tramadol | Negative |
| | (500 pg/mg) |

### Amylase, Serum

| COLLECTION DATE | 10/20/2020 |
|---|---|
| Order Date | 10/20/2020 |
| Result Date | 10/21/2020 |
| Ordering Physician | WILKINS, DAVID |
| Amylase, Serum | 46 |
| | (31-110 U/L) |

### Lipase, Serum

| COLLECTION DATE | 10/20/2020 |
|---|---|
| Order Date | 10/20/2020 |
| Result Date | 10/21/2020 |
| Ordering Physician | WILKINS, DAVID |
| Lipase, Serum | 18 |
| | (14-72 U/L) |

### CBC With Differential/Platelet

Padilla, Tiffani M, F, 11/30/1989

App. 563