**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

KATARZYNA FOULGER, *et al.*,     )
                                        )
          Plaintiffs,        )
                                        )
v.                                    )
                                        )     Case No. 4:22-CV-00878
AVERTEST, LLC, dba Averhealth     )
                                        )
          Defendant.        )
                                        )

**<u>BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF
DOCUMENTS</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION AND FACTUAL BACKGROUND ..................................................... 1

II.    THE DOCUMENT REQUESTS AT ISSUE AND AVERHEALTH'S "CAP INFORMATION OBJECTION" ..................................................................................... 5

III.   LEGAL STANDARD ............................................................................................... 6

IV.    ARUGMENT ........................................................................................................... 8

   A.  Averhealth Has Not Borne Its Burden of Sustaining Its Objection under the CAP Laboratory Inspection Manual ......................................................................... 8

      1.  Averhealth has not shown a basis for withholding CAP's inspection findings as privileged ............................................................................................. 8

         a.   CAP's inspection findings are not privileged under Missouri law .......................... 8

         b.   Under Missouri law, Averhealth waived whatever privilege it has ...................... 10

            i.    Facts showing waiver ........................................................................ 10

            ii.   Under Missouri law, Averhealth waived its objection ......................... 14

      2.  Averhealth has no basis for withholding non-findings documents ............................... 16

   B.  Averhealth's Other Grounds for Its Objection Are Frivolous ......................... 16

   C.  Averhealth Has Not Shown that It Will Suffer Adverse Consequences from Production of CAP Documents ................................................................................ 17

   D.  Under Rule 26(b)(5)(A), Averhealth Waived the Privilege by not Describing the Withheld Documents ................................................................................................ 18

V.     CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Baranski v. United States*,
  2012 U.S. Dist. LEXIS 16242 (E.D. Mo. Feb. 9, 2012)........................................................... 7

*Carman v. McDonnell Douglas Corp.*,
  114 F.3d 790 (8th Cir. 1997) ............................................................................................. 9, 17

*Dey v. Coughlin*,
  2020 U.S. Dist. LEXIS 7515 (W.D. Mo. Jan. 16, 2020) ........................................................ 7

*Fid. Nat'l Title Ins. Co. v. Captiva Lake Invs., LLC*,
  2012 U.S. Dist. LEXIS 116206 (E.D. Mo. Aug. 17, 2012)................................................... 19

*Fluor Corp. v. Zurich Am. Ins. Co.*,
  2021 U.S. Dist. LEXIS 99230 (E.D. Mo. May 26, 2021)..................................................... 19

*Givens v. St. Louis Cty.*,
  2021 U.S. Dist. LEXIS 244869 (E.D. Mo. Dec. 23, 2021) .................................................. 19

*Mo. Dep't of Corr. v. Chase*,
  2015 Mo. Cir. LEXIS 36......................................................................................................... 9

*Parshall v. Menard, Inc.*,
  2016 U.S. Dist. LEXIS 171243 (E.D. Mo. Dec. 12, 2016) .................................................. 19

*Pritchard-Keang Nam Corp. v. Jaworski*,
  751 F.2d 277 (8th Cir. 1984) ................................................................................................. 7

*Rodriguez v. Suzuki Motor Corp.*,
  996 S.W.2d 47 (Mo. 1999) ................................................................................................... 14

*State ex rel. Barks v. Pelikan*,
  640 S.W.3d 105 (Mo. 2022) ................................................................................................. 14

*State ex rel. Garrabrant v. Holden*,
  633 S.W.3d 356 (Mo. 2021) ................................................................................................. 14

*State ex rel. Kilroy Was Here, LLC v. Moriarty*,
  633 S.W.3d 406 (Mo. Ct. App. 2021).................................................................................... 7

*State ex rel. St. Johns Reg'l Med. Ctr. v. Dally*,
  90 S.W.3d 209 (Mo. App. 2002) .......................................................................................... 15

*State ex rel. Tracy v. Dandurand*,
    30 S.W.3d 831 (Mo. 2000) .................................................................... 15

*State v. Coleman*,
    954 S.W.2d 1 (Mo. Ct. App. 1997).......................................................... 9

*State v. Williams*,
    427 S.W.3d 259 (Mo. App. 2014) ......................................................... 15

*Williams v. Hy-Vee, Inc*.,
    2023 U.S. Dist. LEXIS 30296 (S.D. Iowa Jan. 23, 2023) ..................... 19

**Statutes**

Mo. Rev. Stat. §213.010(3)..................................................................... 8

Mo. Rev. Stat. § 213.010(4) ................................................................... 9

Mo. Rev. Stat. § 213.010(5) ................................................................... 8

Mo. Rev. Stat. § 537.035 ........................................................................ 9

Mo. Rev. Stat. § 545.035.1 ..................................................................... 9

Mo. Rev. Stat. § 545.035.2 ..................................................................... 9

Mo. Rev. Stat. § 566.250 ........................................................................ 9

**Rules**

42 C.F.R. § 493.571(a)........................................................................ 6, 16

Fed. R. Evid. 501 .................................................................................... 7

Fed. R. Civ. P. 26(a)(1)........................................................................... 7

Fed. R. Civ. P. 26(b)(1)........................................................................ 6, 7

Fed. R. Civ. P. 26(b)(5)(A) ................................................................. 7, 18

**Other Authorities**

8 Fed. Prac. & Proc. Civ. (Wright & Miller) § 2016.4 (3d ed.)................ 14

Committee Notes to 1993 Amendment of Rule 26(b)(5) ......................... 14

# I. INTRODUCTION AND FACTUAL BACKGROUND

This motion presents the question of whether Plaintiffs should be entitled to discovery from Averhealth regarding two decisions by the College of American Pathologists ("CAP"), in response to a complaint by Averhealth's former Laboratory Director, Sarah Riley, Ph. D.: (1) to place Averhealth's accreditation on probation on January 29, 2021, and (2) after a non-routine inspection on May 13, 2021, to lift that suspension on July 29, 2021.

Averhealth raised those decisions in its motion to dismiss, arguing that "Dr. Riley's Complaint to CAP Was Resolved in Averhealth's Favor."[1] Averhealth relied on a letter by CAP dated May 25, 2021, reporting on "inspector findings concerning the complaint we received." SAC Ex. 115, ECF 23-1, p. 151. That letter states: "The allegations were reviewed and determined to be not applicable to the testing performed under the CAP FDT program." *Id.* (CAP FDT is CAP's forensic drug testing program. SAC ¶ 219, n. 32.).

Plaintiffs had interpreted the letter to mean the alleged problems were not present *during the inspection* because Averhealth had corrected its faulty practices. Plaintiffs believed that their interpretation was reasonable because of two facts. First, CAP's January 29 probation letter said that it was looking to Averhealth to *correct* its practices, as these statements demonstrate:



The Accreditation Committee (AC) is especially concerned about the implementation of policies and procedures to correct the following substantiated allegations:

- Concern regarding unacceptable quality assurance of mass spectrometry confirmatory testing.
  - Related Checklist items: COM.01700 PT Evaluation; GEN.13806 QM Program
- Failure to follow procedures as written.
  - Related Checklist item: COM.10300 Knowledge of Policies and Procedures
- Concern regarding the manipulation of instrument calibrations.
  - Related Checklist items: FDT.02002 QC Confirmation of Acceptability; FDT.02030 QC Acceptance Criteria; FDT.02715 QC Corrective Action
- Concern regarding the review of quality control results.
  - Related Checklist items: FDT.02002 QC Confirmation of Acceptability; FDT.02030 QC Acceptance Criteria; FDT.02715 QC Corrective Action

---

[1] Mem. in Supp. of Motion to Dism. ("MTD"), ECF 27, p. 25 (Heading A). Consistent with the Court's practice, "[a]ll references to the docket are to the auto-populated page numbers at the top of each filing on the electronic case filing system." *See* Order Denying Defendant's Motion to Dism. ("MTD Denial"), ECF 60, at 5, n. 4.

> The Laboratory will remain on probation until the Accreditation Committee determines that the conditions of probation have been successfully rectified. If you have any questions regarding the College's decision, please contact Denise Driscoll, Sr. Director Accreditation and Regulatory Affairs, at 800-323-4040, ext. 7243.

ECF 23-1, pp. 149, 150 (highlighting added). As can be seen, CAP said it was looking to Averhealth for "policies and procedures to correct" the problems and that the laboratory would remain on probation until "the conditions of probation [were] successfully rectified." *Id.*

Second, when CAP lifted the probation, it reiterated that the lab had been "out of compliance with the CAP Standards for Laboratory Accreditation" and then repeated the same concerns that had led to the probation in the first place. SAC Ex. 115, Doc. #23-1, p. 152.

In its decision denying the motion to dismiss, the Court stated that it found "the [May 25] letter difficult to understand in context." MTD Denial, ECF 60, p. 14. The Court found that Plaintiff did not correctly interpret the letter on its face but that it was "unsure how to reconcile the May 25 and July 29 letters." *Id.*

Plaintiffs must point out that there are three other statements by CAP that Plaintiffs regret not having called to the Court's attention and that confirm that Averhealth had been found to have corrected its deficiencies:

One is contained in a letter from CAP to Dr. Riley on July 29, 2021. That letter says that any problems "have been *corrected*" and the lab is "*currently* considered … in compliance":

> The College of American Pathologists' (CAP) has completed its investigation of Avertest LLC d/b/a Averhealth Laboratory in Richmond, VA. Any problems that may have been identified during the course of the investigation have been corrected as a requirement to maintain CAP accreditation. Avertest LLC d/b/a Averhealth Laboratory is currently considered to be in compliance with the CAP Standards for Laboratory Accreditation.

"Ex. 3 to Declaration of Richard S. Cornfeld ("Cornfeld Decl."; emphasis and highlighting

added). The Cornfeld Declaration is Ex. A to the motion.

Second is a CAP memo, also dated July 29, 2021, from Lena Portillo, Investigations Analyst, to "Inspection Team Leader," Re: "Closed Complaint Follow-up." Ex. 4 to Cornfeld Decl. The "Inspection Team Leader" is the head of the inspection team and responsible for submitting the report of the inspection, called "Inspector's Summation Report." CAP, Laboratory Accreditation Manual ("Lab. Acc. Man."), 2020 ed., Ex. 8 to Cornfeld Decl., p. 110. Ms. Portillo's memo asks the Inspection Team Leader to "verify that corrective actions have been implemented and sustained":

> Below is information relating to a Laboratory Accreditation Program **closed investigation** of this laboratory. As part of your inspection, please review this data, paying particular attention to the information listed below to ensure that the laboratory is employing the procedures or processes that are appropriate to meet the CAP's standards. Please verify that corrective actions have been implemented and sustained by the laboratory for accreditation.

Ex. 4 to Cornfeld Decl. (highlighting added). A "corrective action" is one that "eliminate[s] the cause of a detected nonconformity or other undesirable situation." Lab. Acc. Man., p. 107.

The third statement is contained in CAP's July 29, 2021,letter to Averhealth lifting the probation. CAP explained that the decision was "based on review of the report of the non-routine inspection conducted on May 13, 2021," and then went on to state.

> The most recent inspector confirmed significant progress in correcting deficiencies identified during investigation of complaint #10219, and we appreciate the efforts made to demonstrate improvements.

SAC Ex. 116, ECF 23-1, p. 152 (highlighting added). Thus, the probation was lifted because of Averhealth's "significant progress in correcting deficiencies." A deficiency is "[n]oncompliance with a requirement of the accreditation checklists." Lab. Acc. Man., p. 108. The checklists contain the "requirements designed to evaluate whether the laboratory or repository meets the

standards set forth in the CAP's accreditation program." *Id*, p. 102. Accordingly, Averhealth had made "significant progress" in correcting its noncompliance with its accreditation requirements.[2]

But there are still questions, such as: What did Averhealth do to correct its deficiencies? Could it have implemented those measures before being placed on probation? Why didn't it? In fact, why did it take probation to induce it to make corrections? And in light of all this, what was the basis of its denial of Dr. Riley's allegations?

Seeking answers to those questions and others, Plaintiff requested documents related to CAP in their Second Request for Production of Documents. Averhealth objected to the requests in a "CAP information Objection." It said that, under CAP guidelines, it must keep those documents confidential. In the parties' meet-and-confer, Averhealth's attorney stated that his client was unwilling to produce the documents absent a Court order so as not to risk jeopardizing its status under CAP. Cornfeld Decl. ¶ 5. However, this objection is unfounded for several reasons:

*First*, if CAP's guidelines apply at all, they merely require that CAP's *inspection findings* be kept confidential. Most of these requests are not limited to inspection findings but request documents such as Averhealth's internal emails and other internal documents, its submissions to CAP and its communications with other parties.

*Second*, even as to its inspection findings there is no basis for ruling that CAP's guidelines trump Averhealth's discovery obligations under the Federal Rules of Civil Procedure.

*Third*, even if CAP's guidelines do provide some sort of privilege, Averhealth waived it by voluntarily disclosing various CAP inspection findings to two experts hired by the State of Michigan, two of its own experts, the Michigan Attorney General's office, an Assistant U.S.

---

[2] Also, the Laboratory Accreditation Manual, cited by Averhealth in its Objection and recently produced to Plaintiffs (Cornfeld Decl. ¶ 7), defines "FDT" as "[t]he CAP *accreditation program* for laboratories that perform drug testing for nonmedical purposes …." Lab. Acc. Man., Ex. 8 to Cornfeld Decl., p. 109 (emphasis added). Thus, the reference in the May 25 letter to "the testing performed under the CAP FDT program" is to the testing in the accreditation program – *i.e.*, the inspection to determine whether the lab met accreditation requirements – not testing generally.

Attorney, the Michigan Prosecutors Association, officials with Michigan's Department of Health & Human Services ("MDHHS") and Children's Protection Services ("CPS"), a Continuing Education class, and this Court. It did so for findings it thought would be favorable to it. Under Missouri Law, it cannot now use a privilege to shield findings that may not be so favorable.

*Fourth*, although Averhealth argues it risks being harmed by producing these documents (which is not a standard for applying a privilege), when it disclosed CAP's inspection findings and test results as just mentioned, there were no consequences from CAP. There is no reason to think it would be different now. And the Protective Order would prevent the documents from becoming public in any event.

## II. THE DOCUMENT REQUESTS AT ISSUE AND AVERHEALTH'S "CAP INFORMATION OBJECTION"

The requests at issue, which are quoted in full in the accompanying Motion and attached as Ex.1 to the Cornfeld Declaration, can be summarized as follows:

- Request No. 7 (applications to CAP).

- Request No. 9 (proficiency testing results)

- Request No. 11 (documents related to CAP's investigation).

- Request No. 12 (submissions to CAP).

- Request No. 16 (documents related to the allegations in the CAP investigation).

- Request Nos. 17 and 18 (documents regarding the CAP probation).

- Request No. 19 (submissions to CAP).

- Request No. 20 (documents regarding whether to inform others of the CAP probation).

- Request Nos. 21-22 (documents containing or relating to communications regarding Averhealth's CAP accreditation and whether CAP had determined Dr. Riley's allegations were unfounded).

- Request No. 23 (documents related to Averhealth's internal consideration of whether

to inform others of less-than-perfect results on proficiency testing).

- Request No. 24 (documents related to the CAP inspection of May 13, 2021).

- Request No. 25 (Averhealth's submissions to CAP in response to CAP's letter of July 29, 2021).

- Request No. 57 (internal emails related to CAP's investigation of Dr. Riley's allegations or the CAP probation).

- Request No. 83 (documents showing that, as of December 2020, "Averhealth has a perfect CAP-FDT proficiency test, a rare industry feat," as stated in SAC Ex. 219).

In response, Averhealth interposed what it called its "CAP Information Objection."[3] In that objection, it stated that it was required to keep documents responsive to these requests confidential. It cited the following as authority:

- 42 C.F.R. § 493.571(a), which limits the circumstances under which the Centers for Medicare and Medicaid Services ("CMS") may disclose CAP inspection results to the public.

- CAP's Laboratory Accreditation Manual, 2020 ed., which states on page 14:

  All inspection findings are confidential. They should not be discussed in any context other than the inspection itself. Moreover, they should not be disclosed to anyone not associated with the accreditation process unless appropriate prior documented consent has been obtained.

- CAP Guidelines, which, Averhealth stated, "require that inspection materials and other documents used in an inspection be shredded to maintain confidentiality, with any reports that are not shredded and contain confidential comments returned to and maintained by CAP."

Averhealth's Obj. and Resp. to Plffs' Second Req. for Docs., Ex. 1 to Cornfeld Decl., p. 4.

## III.   **LEGAL STANDARD**

The scope of permissible discovery is governed by Fed. R. Civ. P. 26(b)(1), which states in relevant part:

> ... Parties may obtain discovery regarding *any nonprivileged matter* that is relevant to any party's claim or defense and proportional to the needs of the case,

---

[3] Averhealth made various other objections to these requests, but Plaintiffs believe that, if the CAP Information Objection is overruled, the parties will be able to reach agreement on these requests without Court intervention.

considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. ...

Fed. R. Civ. P. 26(b)(1) (emphasis added).

The issue presented by Averhealth's objection is whether it is excused from producing responsive documents because CAP deems them confidential. The only potential basis provided by the text of Rule 26(b)(1) for denying discovery of confidential matters is a privilege. The manner in which a party must make that claim is governed by Rule 26(b)(5)(A), which states:

> Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

Fed. R. Evid. 501 governs the application of privilege to discovery. *Baranski v. United States*, 2012 U.S. Dist. LEXIS 16242, *8 (E.D. Mo. Feb. 9, 2012); Fed. R. Evid 1101(c). That rule states: "In a civil case state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Because no Missouri law has decided a choice-of-law rule regarding privilege, federal courts sitting in Missouri apply Missouri law based on "the general rule … that the law of the forum governs the admissibility of evidence.*" Pritchard-Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 281 n.4 (8th Cir. 1984); *accord*, *Dey v. Coughlin*, 2020 U.S. Dist. LEXIS 7515, at *5 (W.D. Mo. Jan. 16, 2020). In Missouri, the party asserting privilege "bears the burden of showing the privilege applies." *State ex rel. Kilroy Was Here, LLC v. Moriarty*, 633 S.W.3d 406, 414 (Mo. Ct. App. 2021) (citation omitted).

## IV.    ARUGMENT

Plaintiffs will first explain why the CAP Laboratory Inspection Manual does not provide a ground for withholding these documents and will then discuss Averhealth's two other grounds for the objection, which are, frankly, frivolous.

### A.    Averhealth Has Not Borne Its Burden of Sustaining Its Objection under the CAP Laboratory Inspection Manual

Because the portion of the CAP Laboratory Inspection Manual on which Averhealth relies relates only to inspection findings, Plaintiffs first explain why Averhealth may not withhold those findings as privileged under Missouri law. Plaintiffs then discuss why Averhealth's objection to producing the myriad of other documents is unfounded.

### 1.    Averhealth has not shown a basis for withholding CAP's inspection findings as privileged

The findings of CAP's May 13, 2021, inspection are responsive to Request No. 24 (documents related to the CAP inspection of May 13, 2021), among others. However, Averhealth has not met its burden of showing they are privileged simply because a CAP manual says that inspection findings are confidential and "should not" (not must not) be discussed in any context other than the inspection itself and should not (again, not must not) be disclosed outside the accreditation process. And even if these findings were privileged, Averhealth has waived the privilege in a number of ways.

### a.    CAP's inspection findings are not privileged under Missouri law

Missouri recognizes various privileges by statute and common law, but there is nothing that would apply here. Statutory privileges include physician-patient and attorney-client privileges, the spousal privilege, and a "peer review" privilege covering deliberations of "peer review committees" of licensed health care professionals. Mo. Rev. Stat. §§ 213.010(3) and (5),

537.035, and 566.250.[4] Similarly, a clergy member may not testify about a communication made in his or her capacity as spiritual advisor. Mo. Rev. Stat. § 213.010(4). But Plaintiffs have found no Missouri statute creating a privilege for findings of a laboratory inspection, whether or not the inspector said they "should" not be disclosed. And Averhealth didn't cite one.

That leaves the question of whether there is an applicable common-law privilege. Such privileges are few in number, for example a privilege against disclosure of the identity of a confidential criminal informant, *State v. Coleman*, 954 S.W.2d 1, 5 (Mo. Ct. App. 1997), a "state secrets privilege" applicable to certain official state information and a "deliberative process privilege" protecting deliberations of state agencies. *See Mo. Dep't of Corr. v. Chase*, 2015 Mo. Cir. LEXIS 36, *22. But, as with a statutory privilege, Plaintiffs have not found an applicable common-law privilege, and Averhealth didn't mention one.

Nor should this Court invent a common-law privilege applicable here. As the Eighth Circuit has stated, "the public has a right to every man's evidence." *Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 793 (8th Cir. 1997) (quoting Hardwicke L.C.J). The court went on to state: "Accordingly, evidentiary privileges 'are not lightly created.' … A party that seeks the creation of a new evidentiary privilege must overcome the significant burden of establishing that 'permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Id.* (citations omitted). But there can be no public good from concealing CAP's findings from Plaintiffs. And whatever harm there might be if those findings became public (though Plaintiffs cannot conceive of what that might be) will be obviated by designating them as "Confidential" under the Court's protective order. Docket Text Order, ECF 59 (granting motion to enter

_____

[4] Because the CAP committee that reviewed Averhealth does not consist of the licensed health care professionals listed in the statute, Mo. Rev. Stat. § 545.035.1 and 2, the peer review privilege does not apply.

Protective Order, ECF 46-2). Accordingly, the Court should rule that CAP's inspection findings are not privileged.

### b. Under Missouri law, Averhealth waived whatever privilege it has

Missouri law recognizes three ways a privilege can be waived, a third-party disclosure waiver, an at-issue waiver, and a waiver under the so-called "Fairness Doctrine." Assuming CAP's inspection findings are somehow privileged, Averhealth has waived the privilege in each of those ways. Plaintiffs will first discuss the facts showing waiver and then explain why those facts support a finding of waiver under Missouri case law.

### i. Facts showing waiver

According to documents produced by MDHHS in response to Plaintiffs' counsel's FOIA request, Averhealth's disclosure of CAP's inspection findings to third parties began in early 2021 with the Averhealth Lab-Site Visit Report ("Wagner Report"). This is the report by Drs. Jarrad R. Wagner and Larry Broussard, who were hired by MDHHS to audit Averhealth's lab and on which Averhealth relied in its brief in support of its motion to dismiss ("MTD"), ECF 27, pp. 28-30. In their report, the authors *quoted the findings* of a CAP inspection predating Dr. Riley's allegations. They stated:

> It [Averhealth] was inspected by CAP in February 2020 and was given a glowing review: "The management team has done a great job at implementing and maintaining the CAP standards for accreditation. The SOP's have been updated since the last onsite inspection and provide sufficient detail in all areas. The lab is well maintained and has sufficient space for current operations and future growth. Bench staff are well trained and very knowledgeable in their duties."

Wagner Report, submitted by Averhealth as Ex. 5 to its MTD, ECF 27-5, p. 3.

The authors' source for that passage was obviously Averhealth. In the protocol he sent MDHHS describing how he would conduct the study, Dr. Wagner stated that he would "[e]nsure the testing process meets CAP standards"; elaborating, he said: "CAP is a fairly weak standard.

We will identify any accreditations held by the lab and determine if the standards are being met. This may require access to audit records in possession of the laboratory." SAC Ex. 178, ECF 23-1, p. 266. MDHHS incorporated that language in its formal Statement of Work Contract Activities for the Wagner study. *See* SAC Ex. 180, ECF 23-1, p. 269.

Note that Dr. Wagner did not say he obtained the result of the CAP audit from CAP. His report mentions no information he received from CAP. Thus, he received it from Averhealth, as he said he would in his protocol. And, in submitting the Wagner Report to this Court, Averhealth did not redact the discussion of CAP's findings, thus making them public in the Court file.

More recently, Averhealth disclosed not just the written inspection findings of the 2020 CAP audit but the very 2021 CAP study that evaluated Dr. Riley's allegations, as well as the results of other CAP investigations. This is shown in two documents sent to the Michigan Attorney General's Office on January 13, 2023, by Attorney Richard Zack with the law firm Troutman Pepper representing Averhealth, "(a) a report by Kevin Klette, a drug testing expert Averhealth retained during the investigation; and (b) a letter to the AUSA overseeing the investigation regarding the remaining issues in the case." Ex. 5 to Cornfeld Decl., pp. 1-2. These documents were produced to Plaintiffs' counsel by MDHHS in response to a Freedom of Information Act request. Cornfeld Decl. ¶ 12. Each of them refers to CAP findings.

Dr. Klette's report states that he "was retained by Averhealth to perform an independent audit of the [MDHHS] oral fluid test results." *Id.*, pp. 6, 7. As part of his audit, he says he "reviewed Averhealth's quarterly *CAP proficiency testing results*, *CAP inspection findings*, and remediation of said findings." *Id.*, p. 8 (emphasis added). He "reviewed CAP's inspection reports for 2020 and 2022[,] and the investigation and remediation of specific findings and/or recommendations were addressed by the Lab Director and appeared to be acceptable." *Id.*, p. 14.

This despite the statement in CAP's Laboratory Inspection Manual that inspection findings "should not be discussed in any context other than the inspection itself." Dr. Klette's report was not in the context of the inspection. It was in the context of the Attorney General's investigation.

Moreover, it was not just the 2020 and 2022 findings that Dr. Klette reviewed. In his list of "Materials Considered," he had a category entitled, "CAP Materials," which includes multiple items from *CAP's investigation of Dr. Riley's allegations*. *See* this screenshot:

**Materials Considered**

| Date | Description |
|------|-------------|
| | **CAP Materials** |
| 2/6/2020 | 2020 Inspection Report & Documents re: Remediation |
| 11/11/2020 | Letter from Collum (CAP) to Glinn (Averhealth), re: Reference No. 10219 |
| 11/18/2020 | Letter from Glinn (Averhealth) to CAP, re: Reference No. 10219 |
| 12/22/2020 | Letter from Portillo (CAP) to Glinn (Averhealth), re: Reference No. 10219 |
| 12/29/2020 | Letter from Glinn (Averhealth) to Portillo (CAP), re: Reference No. 10219 |
| 1/4/2021 | Letter from Glinn (Averhealth) to Portillo (CAP), re: Reference No. 10219 |
| 1/5/2021 | Letter from Portillo (CAP) to Glinn (Averhealth), re: Reference No. 10219 |
| 1/29/2021 | Letter from Datto (CAP) to Glinn (Averhealth), re: Probation Notice |
| 2/25/2021 | Letter from Glinn to Portillo (CAP), re: Requested Documentation |
| 3/2/2021 | Letter from Collum (CAP) to Glinn (Averhealth), re: Reference Nos. 10348 & 10362 |
| 3/5/2021 | Letter from Portillo (CAP) to Glinn (Averhealth) re: Reference Nos. 10348 & 10362 |
| 3/10/2021 | Letter from Portillo (CAP) to Glinn (Averhealth), re: Reference No. 10219 |
| 3/15/2021 | Letter from Glinn (Averhealth) to CAP, re: Reference Nos. 10348 & 10362 |
| 3/17/2021 | Letter from Glinn (Averhealth) to Portillo (CAP), re: Reference No. 10219 |
| 3/18/2021 | Letter from Collum (CAP) to Glinn (Averhealth), re: Reference No. 10348 |
| 5/13/2021 | Letter from Daniels (CAP) to Glinn (Averhealth), re: Reference Nos. 10219 & 10459 |
| 5/13/2021 | Laboratory Accreditation Program, Inspector's Summation Report |
| 6/17/2021 | Letter from Portillo (CAP) to Glinn (Averhealth), re: Request for additional information |
| 6/25/2021 | Letter from Glinn (Averhealth) to Portillo (CAP), re: Request for Additional Documentation |

*Id.*, p. 16 (highlighting added).

Most significantly, he includes the "Inspector's Summation Report" of May 13, 2021, the date of the non-routine inspection. An Inspector's Summation Report is "used to record the findings of an on-site CAP inspection." Lab. Acc. Man., p. 64. Thus, this is *the very report of findings Averhealth refuses to provide Plaintiffs. Id.* There is also a CAP letter "re: Request for additional information" on June 17, 2021, along with Averhealth's response a week later. Since this request post-dates the May 13 inspection, that inspection apparently did not resolve all

outstanding issues, but we won't know that for sure until we can see these documents.

Curiously, although Dr. Klette knew of the probation (his Materials Considered includes the probation letter), he didn't mention it in the text of his report. Why not? Did Averhealth's expert know that CAP *hadn't* absolved Averhealth of Dr. Riley's allegations? Otherwise, wouldn't he have said, as Averhealth did to this Court, "Dr. Riley's complaint to CAP was resolved in Averhealth's favor?" Undoubtedly, he would have. Nonetheless, Averhealth gave the findings to him even though the Manual says not to discuss them outside the context of the inspection itself.

The second item that Averhealth's attorney sent to the Michigan AG's office, "the letter to the AUSA," reads like an expert report in letter form, but it was written by another Troutman Pepper attorney, Miranda Hooker, who describes *no* expertise in forensic toxicology or any other scientific field. *Id.*, pp. 35-45. She devotes a section of her letter to "Averhealth's CAP proficiency test results," which she summarizes in a table. *Id.*, p. 38. These all predate CAP's decision to place Averhealth on probation – something that, like Dr. Klette, she fails to mention (though in fairness to her, it's not clear whether Averhealth told her about the probation). During the parties' meet-and-confer, Averhealth's counsel said that Plaintiffs' requests for proficiency tests fall within the CAP objection. Cornfeld Decl. ¶ 8. But Averhealth disclosed them to the AUSA and Michigan Attorney General through the Klette report and Hooker letter.

In other instances, while not providing the actual CAP reports, Averhealth described their findings. For example, on December 1, 2020, Averhealth CEO Jason Herzog asked officials with CPS and MDHHS to reject Dr. Riley's allegations and for support said: "Further, all of the concerns raised by Riley have been inspected by CAP on April 13, 2016, March 15, 2018 and February 7, 2020. These inspections always concluded with glowing remarks from the on-site inspectors." SAC Ex. 170, ECF 23-1, pp. 252-53. Were CAP's findings *really* confidential?

Well, he didn't say, "I'm sorry, I can't tell you the findings." Instead, he called them "glowing."[5]

In a March 2021 presentation to MDHHS, Averhealth included a "Timeline of Events" stating that in December 2020, "Averhealth has a perfect CAP-FDT proficiency test, a rare industry feat." Ex. 6 to Cornfeld Decl., p. 5. Was *that* result confidential? Not so much that Averhealth couldn't call it "perfect." And Averhealth said the same thing to the Michigan Prosecutors Association on April 21, 2021, Ex. 7 to Cornfeld Decl., p. 5, and in a Continuing Education presentation titled, "Debunking Drug Testing Myths." Ex. 9 to Cornfeld Decl., p. 10.[6]

### ii.      Under Missouri law, Averhealth waived its objection.

Missouri law holds that privileges are waived through "an act showing a clear, unequivocal purpose to divulge the confidential information." *State ex rel. Barks v. Pelikan*, 640 S.W.3d 105, 108 (Mo. 2022) (quoting *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 63 (Mo. 1999)).

Thus, "[a]n individual can waive the attorney-client privilege by disclosing a privileged communication to a third party." *State ex rel. Garrabrant v. Holden*, 633 S.W.3d 356, 360 (Mo. 2021). As Wright and Miller state generally:

> Discovery may reveal that privileged material has been disclosed to a nonparty outside the discovery context. Because in most instances privilege depends upon confidentiality and broaching this confidentiality as to one person destroys it as to the world, courts regularly find that such disclosures justify discovery of formerly privileged materials by current litigants unless the disclosure was itself privileged.

8 Fed. Prac. & Proc. Civ. (Wright & Miller) § 2016.4 (3d ed.) (footnotes omitted).

---

[5] As Plaintiffs allege, even if true "[t]his was hardly an exonerating fact because, if it were, CAP would not have sent its November 11, 2020, letter asking that Averhealth defend the validity of its practices against Dr. Riley's allegations." SAC, ECF 23, ¶ 170. Mr. Herzog did not mention that CAP letter to the Michigan officials.

[6] What Averhealth said about a supposedly perfect December 2020 proficiency test is either false or a distortion. On December 22, 2020, CAP wrote Averhealth: "Several proficiency testing challenges show *unacceptable results* or *significant bias*"; it asked Averhealth to "[s]ubmit detailed corrective actions …." SAC Ex. 95A, ECF 23-1, p. 23 (emphasis added). Averhealth responded, but CAP was unhappy with the response. One reviewer wrote: "This laboratory has many quality assurance issues in the areas of quality control and *proficiency testing*." *Id.*, p. 17 (emphasis added). Another referred to "several *failed* PT [proficiency testing] challenges." *Id.*, p. 23-1 (emphasis added). In its letter placing Averhealth on probation, CAP said, "The committee is particularly concerned about the evaluation of bias and root cause analysis in regard to *proficiency testing results*." *Id.*, p. 149 (emphases added). Averhealth should not be allowed to boast about one lonely perfect result without owning up to all its failures.

Invoking that principle in a case directly applicable here, the Missouri Supreme Court held that a party had waived the attorney-client privilege by providing privileged documents to "an *expert*, who was, after all, a third party." *State ex rel. Tracy v. Dandurand*, 30 S.W.3d 831, 835 (Mo. 2000) (emphasis added). Averhealth did the same thing by providing the report of the May 13 inspection to *its expert*, Dr. Klette. In so doing, Averhealth simply ignored the CAP statement that inspection findings should not be disclosed outside the context of the inspection. The same is true for the inspection findings it provided Dr. Klette and Dr. Wagner, as well as the proficiency-test results it gave Dr. Klette and Ms. Hooker. Under the *Tracy* authority, Averhealth has thus waived whatever privilege attaches to CAP's inspection findings.

Second, the "at issue" waiver occurs "when the privilege holder makes assertions in a litigation context that put its otherwise privileged communications in issue." *State ex rel. St. Johns Reg'l Med. Ctr. v. Dally*, 90 S.W.3d 209, 215 (Mo. App. 2002) (citation omitted). That waiver applies here because Averhealth argued in support of its motion to dismiss that CAP had resolved Dr. Riley's allegations in Averhealth's favor. Having made those assertions, Averhealth put CAP's inspection findings at issue and waived whatever privilege might apply to them.

Finally, under the "fairness doctrine," a party waives privilege by invoking it "in some fundamentally unfair way." *State v. Williams*, 427 S.W.3d 259, 267 (Mo. App. 2014). This waiver "is grounded in the notion that it is unfair to permit a party to make use of privileged information as a sword when it is advantageous for the privilege holder to do so, and then as a shield when the party opponent seeks to use privileged information that might be harmful to the privilege holder." *Id.* In *Williams*, the court ruled that a criminal defendant had waived a privilege against testimony from his parole officer by asserting, as an alibi, that he had complied with the restrictions of his supervised probation. Here, Averhealth made use of CAP's findings

when it believed they would be advantageous, as in providing them to Dr. Wagner, Dr. Broussard, Dr. Klette, Ms. Hooker, the Michigan Attorney General, an Assistant U.S. Attorney, the Michigan Prosecutors Association, MDHHS, CPS, and this Court. It would be unfair to allow it to withhold CAP's findings that might be harmful to it – for example, to allow it to boast about one perfect proficiency test while concealing multiple failures. *See* p. 14, n. 5, *supra.*

### 2. Averhealth has no basis for withholding non-findings documents

Pursuant to its "CAP Information Objection," Averhealth has also withheld many documents other than Averhealth's inspection findings, such as its submissions to CAP, its internal emails and other documents, and correspondence with other parties (including CAP). These can be discussed briefly. The authority on which Averhealth relies, a statement in CAP's Laboratory Accreditation Manual, refers only t*o inspection findings*. Even if those findings are privileged, Averhealth has no basis for withholding other responsive documents.

### B. Averhealth's Other Grounds for Its Objection Are Frivolous

The two remaining grounds for Averhealth's objection, a CMS regulation, 42 C.F.R. § 493.571(a), and CAP guidelines requiring that certain documents be shredded, can be easily dispensed with.

The CMS regulation states:

> Accreditation organization inspection results. CMS may disclose accreditation organization inspection results to the public only if the results are related to an enforcement action taken by the Secretary.

42 C.F.R. § 493.571(a). On its face, this regulation applies only to CMS, not Averhealth. During the meet-and-confer, Averhealth's counsel said he knew of no authority indicating that it bars anyone other than CMS from disclosing information. Plaintiffs asked him to provide any such authority he learned of. Averhealth has not done so. Cornfeld Decl. ¶ 6. There is therefore no basis to find Averhealth's compliance with these document requests barred by the regulation.

16

The last remaining ground, CAP guidelines that require that inspection materials and documents used in an inspection be shredded or returned to CAP (*see* Lab. Acc. Man., p. 68), has no greater relevance. If documents were shredded or returned to CAP as required, Averhealth can simply state that, pursuant to CAP requirements, it no longer has possession, custody or control of them. Averhealth has provided no support for the notion that the requirement to shred *some* documents makes *other documents* undiscoverable. The very idea makes no sense.

### C. Averhealth Has Not Shown that It Will Suffer Adverse Consequences from Production of CAP Documents

In its objection, CAP states: "CMS also has the power under federal law to issue sanctions, which could include sanctions against Averhealth risking its accreditation under CAP should any confidential information be disclosed." Assume for a moment that this is true (it's not; *see* below): What privilege protects a party from risking accreditation under CAP? It would have to be a newly created one. As the Eighth Circuit has held, that would require Averhealth to "overcome the significant burden of establishing that … excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Carman*, 114 F.3d 790, 793. It has offered nothing to overcome that burden.

But even if it were relevant, Averhealth has not supported the proposition that it risks consequences by complying with these requests. Because Averhealth has the burden of establishing the basis of its claim of privilege, it should have stated what federal law it was invoking. It did not. In a follow-up to their meet-and-confer, Plaintiffs asked Averhealth to specify the legal provisions to which Averhealth was referring, but again it did not. Cornfeld Decl. ¶ 7. In particular, Averhealth has not explained what authority **CMS** has to take away a **CAP** accreditation for violating a statement in **CAP's** Laboratory Accreditation Manual.

Nor has Averhealth explained why CMS would care if Averhealth provided relevant

documents to Plaintiffs in response to discovery. What interest does CMS (or CAP for that matter) have in keeping these documents from Plaintiffs or this Court? Averhealth hasn't identified one, and Plaintiffs are hard-pressed to imagine what it could be. For those reasons alone, this basis of its objection should be rejected.

Moreover, the proposition that Averhealth would risk losing its accreditation by complying with Plaintiffs' discovery requests is self-evidently false. Over the last three years, Averhealth has freely revealed matters it now claims must be kept confidential, including to Dr. Wagner, Dr. Broussard, Dr. Klette, Ms. Hooker, an Assistant U.S. Attorney, the Michigan Attorney General, MDHHS, CPS, the Michigan Prosecutors Association, attendees at a Continuing Education program, and even this Court and its public files (by filing an unredacted Wagner Report). Despite all those disclosures, Averhealth is still safely accredited. It has identified no action that CMS has taken against it. And in producing these documents to Plaintiffs, Averhealth can do what it could not do with those other persons and entities, claim confidentiality under the Protective Order, making sure they stay out of the public domain.

### D. Under Rule 26(b)(5)(A), Averhealth Waived the Privilege by not Describing the Withheld Documents

As noted above, Rule 26(b)(5)(a) requires that a party withholding discoverable material on grounds of privilege "expressly make the claim" and "describe the nature of" the withheld documents "in a manner that, without revealing information itself privileged or protected will enable other parties to assess the claim." Averhealth failed to meet either requirement.

Averhealth did not "expressly" claim privilege. However, that claim can at least be inferred, so perhaps this shortcoming can be overlooked.

But not so its failure to describe the nature of the withheld documents in a manner that would enable other parties to assess the claim. It not only did not describe them sufficiently to allow

assessment of the claim, it said *nothing about them*. It didn't mention the CAP Inspector's Summation Report or other CAP materials that we know Averhealth possesses because it provided them to Dr. Klette. And what else does it possess? For example, it objected to Request No. 57 asking for emails regarding CAP's investigation of Dr. Riley's allegations without saying whether it has such emails. Similarly, it described nothing in response to Nos. 7 and 12 seeking applications and submissions to CAP, No. 57 seeking emails regarding Dr. Riley's allegations, and Nos. 16-18, seeking documents concerning Dr. Riley's allegations and the CAP probation.

Courts have generally interpreted this rule "to require the party asserting privilege to produce a document index or privilege log of sufficient detail to avoid waiving privilege." *Givens v. St. Louis Cty.*, 2021 U.S. Dist. LEXIS 244869, at *11 (E.D. Mo. Dec. 23, 2021). Here, Averhealth didn't even *purport* to provide a privilege log. In such circumstances, courts in the Eastern District of Missouri have repeatedly held that parties have waived privilege. *See Fluor Corp. v. Zurich Am. Ins. Co.*, 2021 U.S. Dist. LEXIS 99230, at *14-15 (E.D. Mo. May 26, 2021); *Parshall v. Menard, Inc.*, 2016 U.S. Dist. LEXIS 171243, at *4-6 (E.D. Mo. Dec. 12, 2016); *Fid. Nat'l Title Ins. Co. v. Captiva Lake Invs., LLC*, 2012 U.S. Dist. LEXIS 116206, at *11 (E.D. Mo. Aug. 17, 2012). This court should do the same, even if it finds CAP documents privileged and that the other grounds for waiver don't apply. *See* Committee Notes to 1993 Amendment of Rule 26(b)(5) ("To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection.").

In one case in the Southern District of Iowa, *Williams v. Hy-Vee, Inc.*, 2023 U.S. Dist. LEXIS 30296, at *7 (S.D. Iowa Jan. 23, 2023), the court ordered the party within one week to file a detailed privilege log. But there the party had at least provided an inadequate log first. Because Averhealth simply flouted the rule altogether, the Court should not give it that benefit.

19

## V. CONCLUSION

Plaintiff's respectfully request that Averhealth's CAP Information Objection be overruled and that it be ordered to produce all documents responsive to the requests set forth in the accompanying Motion.

In the alternative, if Averhealth declines to produce these documents, it should be barred from introducing any evidence regarding its CAP accreditation or CAP's inspections of its lab, contesting in any way the allegations Dr. Riley made to CAP, or contending that CAP rejected Dr. Riley's allegations or otherwise upheld Averhealth's practices against those allegations.

Dated: July 28, 2023

Respectfully submitted,

**GOLDENBERG HELLER & ANTOGNOLI, P.C.**

By:/s/*Richard S. Cornfeld*
Richard S. Cornfeld, #31046MO
Daniel S. Levy, #66039MO
2227 S. State Route 157
Edwardsville, Illinois 62025
618.656.5150
rick@ghalaw.com
daniel@ghalaw.com

And

Anthony S. Bruning, #30906MO
Anthony S. Bruning, Jr., #60200MO
Ryan L. Bruning, #62773MO
THE BRUNING LAW FIRM, LLC
555 Washington Avenue, Suite 600
St. Louis, Missouri 63101
P. 314-735-8100 / F. 314-898-3078
tony@bruninglegal.com
aj@bruninglegal.com
ryan@bruninglegal.com

And

J.C. Pleban, MO Bar No. 63166
jc@plebanlaw.com

C. John Pleban, Mo. Bar No. 24190
cpleban@plebanlaw.com
Pleban & Associates Law LLC
2010 South Big Bend Blvd.
St. Louis, MO  63117
(314) 645-6666 – Telephone
(314) 645-7376 – Facsimile

And

Mike Arias, #115385(CA)
Arnold Wang, #204431(CA)
Craig S. Momita #163347(CA)
Arias Sanguinetti Wang & Torrijos, LLP
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Tel: (310) 844-9696 / Fax: (310) 861-0168
mike@aswtlawyers.com
arnold@aswtlawyers.com
craig@aswtlawyers.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of July, 2023, the foregoing was served by operation of the Court's electronic filing system on all counsel of record in this matter.

/s/ *Richard S. Cornfeld*