**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

KATARZYNA FOULGER, *et al.*,    )
                                )
      Plaintiffs,             )
                                )
v.                              )
                                )  Case No. 4:22-CV-00878
                                )
AVERTEST, LLC, dba Averhealth   )
                                )
      Defendant.              )
                                )

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF
DOCUMENTS RELATED TO GOVERNMENT INVESTIGATIONS**

**TABLE OF CONTENTS**

I. INTRODUCTION AND FACTUAL BACKGRGOUND .................................................. 1

II. LEGAL STANDARD ........................................................................................................ 4

III. ARGUMENT ..................................................................................................................... 6

   A. Averhealth Has Not Borne Its Burden of Showing that Documents Related to Government Investigations Are Protected from Discovery Under a Privilege ................... 6

   B. Under Rule 26(b)(5)(A), Averhealth Waived Privilege by Not Expressly Making the Claim or Describing the Withheld Documents ................................................................. 8

   C. Documents Related to the Government Investigations Are Relevant to Plaintiffs' ........... 9

IV. CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Baranski v. United States*,
 2012 U.S. Dist. LEXIS 16242 (E.D. Mo. Feb. 9, 2012) ............................................................ 5

*Blount v. Major*,
 2016 U.S. Dist. LEXIS 150872 (E.D. Mo. Nov. 1, 2016) ......................................................... 6

*Dey v. Coughlin*,
 2020 U.S. Dist. LEXIS 7515 (W.D. Mo. Jan. 16, 2020) ........................................................... 5

*Fid. Nat'l Title Ins. Co. v. Captiva Lake Invs., LLC*,
 2012 U.S. Dist. LEXIS 116206 (E.D. Mo. Aug. 17, 2012) ....................................................... 9

*Fluor Corp. v. Zurich Am. Ins. Co.*,
 2021 U.S. Dist. LEXIS 99230 (E.D. Mo. May 26, 2021) .......................................................... 9

*Frey v. Fed. Reserve Bank of St. Louis*,
 2015 U.S. Dist. LEXIS 164102 (E.D. Mo. Dec. 8, 2015) ......................................................... 6

*Givens v. St. Louis Cty.*,
 2021 U.S. Dist. LEXIS 244869 (E.D. Mo. Dec. 23, 2021) ....................................................... 9

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
 846 F. Supp. 2d 1335 (N.D. Ga. 2012) ...................................................................................... 7

*Jackson v. Equifax Info. Servs. LLC*,
 2014 U.S. Dist. LEXIS 199646 (N.D. Ga. May 21, 2014) ........................................................ 7

*Liberty Mut. Fire Ins. Co. v. Centimark Corp.*,
 U.S. Dist. LEXIS 19007 (E.D. Mo. Mar. 4, 2009) ................................................................ 5, 6

*Pandora Jewelry, LLC v. Bajul Imps., Inc.*,
 2011 U.S. Dist. LEXIS 27340 (E.D. Mo. Mar. 17, 2011) ......................................................... 6

*Parshall v. Menard, Inc.*,
 2016 U.S. Dist. LEXIS 171243 (E.D. Mo. Dec. 12, 2016) ....................................................... 9

*Pritchard-Keang Nam Corp. v. Jaworski*,
 751 F.2d 277 (8th Cir. 1984) ..................................................................................................... 5

*State ex rel. Kilroy Was Here, LLC v. Moriarty*,
 633 S.W.3d 406 (Mo. Ct. App. 2021) ....................................................................................... 5

*Sussex Fin. Enters. v. Bayerische Hypo-Und Vereinsbank*,
   2010 U.S. Dist. LEXIS 163474 (N.D. Cal. Mar. 2, 2010) ...................................................... 7

*Williams v. Hy-Vee, Inc.*,
   2023 U.S. Dist. LEXIS 30296 (S.D. Iowa Jan. 23, 2023) ...................................................... 9

**Rules**

Fed. R. Civ. P. 26(b)(1) ............................................................................................................ 4, 5, 6

Fed. R. Civ. P. 26(b)(5)(A) ........................................................................................................... 5, 8

Fed. R. Civ. P. 37(b)(2) ..................................................................................................................... 9

Fed. R. Evid 1101(c) ......................................................................................................................... 5

Fed. R. Evid. 501 .............................................................................................................................. 5

**Other Authorities**

Committee Notes to 1993 Amendment of Rule 26(b)(5) ................................................................. 9

## I. INTRODUCTION AND FACTUAL BACKGRGOUND

This motion presents the question of whether Defendant Avertest, LLC, dba Averhealth ("Averhealth") may refuse discovery regarding investigations of its drug testing practices by the United States Department of Justice ("DOJ") and Michigan Department of Attorney General ("Michigan AG"). Plaintiffs placed those investigations at issue in their Second Amended Complaint ("SAC"), *See* ECF 23, ¶¶ 122, 134-136, 238-239, 252, 255, 260-262. Specifically, they alleged that, based on allegations of Dr. Sarah Riley, whose opinions form the centerpiece of Plaintiffs' substantive claims, those bodies were investigating Averhealth for medical fraud by violating its national accreditation standards but billing for the tests anyway. *Id.* ¶¶ 122, 134. According to an "Executive Briefing" to the top officials of the Michigan Department of Health and Human Services ("MDHHS"), "Averhealth was under investigation for medical fraud. Specifically, they were not complying with national accreditation standards as it related to calibration of testing devices ...." SAC ¶ 260 (quoting email from Shayne Machen, 3/10/22, Ex. 260, ECF 233-3, pp. 115-119 at p. 119). In addition, the Michigan AG had told MDHHS that Averhealth had "manipulated" its "instrument software settings." *Id.* ¶ 261, *id.*, p. 120.

Plaintiffs served two pairs of document requests directed to those investigations. In their Third Request for Production of Documents ("Third Request"), they asked for various documents pertaining to the DOJ's Civil Investigative Demand (Request No. 1) and the Michigan AG's investigation (Request No. 3). As authorized by 31 U.S.C. § 3733, a Civil Investigative Demand ("CID") is a demand for discovery in a federal false claims investigation. With respect to the CID, the requested documents included the actual CID, documents submitted with the CID, documents relating to the CID, documents submitted by Averhealth in response to the CID, Averhealth's interrogatory answers in response to the CID, and documents, including transcripts, relating to testimony taken with respect to the CID. Regarding the Michigan AG's

1

investigation, the request included, broadly, all documents related to the investigation.[1]

In Plaintiffs' Fourth Request for Production of Documents ("Fourth Request"), they asked for documents pertaining to two specific Averhealth documents submitted in response to the investigations. One was an expert report by Kevin L. Klette, Ph. D., that Averhealth submitted to the Michigan AG (and presumably to the DOJ as well); the other was a letter by Attorney Miranda Hooker to the Assistant United States Attorney overseeing the investigation. *See* transmittal email by Attorney Richard J. Zack, ECF 63-6, pp. 1-2. The Hooker letter bears the Re: line "Avertest, LLC—Civil Investigative Demand No. 22-078" (*id.*, p. 35), confirming that it relates to the Averhealth CID. These submissions, which Plaintiffs' counsel obtained from MDHHS in response to a Freedom of Information Act request, are further described in Plaintiffs' Brief in Support of Plaintiffs' Motion to Compel Production of Documents ("CAP Brief"), ECF 63-11, pp. 11-13, and are contained in the court file at ECF 63-6, pp. 6-34 and 35-43. Regarding the Klette report, Plaintiffs requested a full, accurate and complete version of the report, all prior drafts, all correspondence with Dr. Klette regarding the report and/or its preparation, all documents referring or relating to the report, and the many sources and "Materials Considered" cited therein. The requests regarding the Hooker letter were similar except that, because of her status as an attorney, Plaintiffs did not request prior drafts or correspondence with her.

Averhealth objected to these requests on two grounds each, grounds that are similar from request to request. First, they claimed the documents are confidential. In response to the three requests related at least in part to the DOJ investigation (Third Request No. 1 and the two requests in the Fourth Request), they objected "to the extent [the request] seeks production of confidential materials held by the Department of Justice that are not subject to public disclosure

---

[1] Averhealth did not object that this request was overly broad.

or production pursuant to the Freedom of Information Act (FOIA)." Ex. 1, pp. 3, 4, and Ex. 2, to Declaration of Richard S. Cornfeld ("Cornfeld Decl."). Regarding the Michigan AG investigation (Third Request No. 3), they simply objected to the "production of confidential materials" without any explanation of the source of confidentiality. Ex. 1 to Cornfeld Decl., p. 4. Averhealth is withholding all documents responsive to these requests. Cornfeld Decl. ¶¶ 5, 6.

In requesting a meet-and-confer regarding these objections, Plaintiffs stated: "It doesn't matter whether these documents are in the possession of the Department of Justice. This request is directed to documents in Averhealth's possession, custody or control." Cornfeld Decl. Ex. 3 (Cornfeld email dated 7/1/23, related to Fourth Request; *see also* Cornfeld email dated 6/23/2023, also in Ex. 3 to Cornfeld Decl., related to Third Request). During their meet-and-confer regarding the requests in the Fourth Request, as Mr. Cornfeld stated in a confirming email to Averhealth's counsel, "You [*i.e.*, Mr. Kozak] explained that the reference in your objection to documents in possession of the Department of Justice was to documents that Averhealth had produced to DOJ. You also said that Averhealth was unwilling to produce these documents without a court order because it did not want to jeopardize its position in the government's investigation." Cornfeld Decl. Ex. 3 (Cornfeld email dated 7/10/23). Regarding Third Request No. 1, Mr. Cornfeld stated: "Similar to the CAP issue, you said that, absent a court order, you were unwilling to produce these documents for fear of jeopardizing the investigation. If you have any supporting authority for this position, please provide it." *Id*. (Cornfeld email dated 7/10/23). Averhealth has provided no such authority. In fact, Averhealth's counsel did not respond to the email. Cornfeld Decl. ¶ 4.

Averhealth's other objection was one of relevance. It stated that the requested documents were "irrelevant to the claims asserted by the Plaintiffs, who have provided no information or

3

basis to establish a nexus between any investigation and the claims asserted in the Second Amended Complaint." Of course, on its face, this objection is ill-founded because the investigations are alleged in the complaint. But during their meet-and-confer, Averhealth's counsel said he understood that the government's investigation was of an entirely different nature. As Mr. Cornfeld said in his confirming email: "You also said that, based on your understanding, this investigation does not relate to the claims in this lawsuit but to the contrary is based on the claim that Averhealth billed Michigan for tests it never even conducted. That is not my understanding based on the FOIA documents produced by the Michigan Department of Health and Human Services, but if you have anything to support it, please provide it." Again. Averhealth's counsel did not respond.

## II.     LEGAL STANDARD[2]

The scope of permissible discovery is governed by Fed. R. Civ. P. 26(b)(1), which states in relevant part:

> ... Parties may obtain discovery regarding *any nonprivileged matter* that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. ...

Fed. R. Civ. P. 26(b)(1) (emphasis added).

The issue presented by Averhealth's objection is whether it is excused from producing responsive documents because <u>documents submitted in response to, or simply related to, a government investigation are considered confidential by the government and not subject to FOIA</u>. The only potential basis provided by the text of Rule 26(b)(1) for denying discovery of confidential matters is a privilege. The manner in which a party must make that claim is

---

[2] Except for the underlined words, the first three paragraphs of this section are identical to the "Legal Standard" section in the CAP Brief. *See* ECF 63-11, pp. 6-7.

governed by Rule 26(b)(5)(A), which states:

> Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> > (i) expressly make the claim; and
> >
> > (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

Fed. R. Evid. 501 governs the application of privilege to discovery. *Baranski v. United States*, 2012 U.S. Dist. LEXIS 16242, *8 (E.D. Mo. Feb. 9, 2012); Fed. R. Evid 1101(c). That rule states: "In a civil case state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Because no Missouri law has decided a choice-of-law rule regarding privilege, federal courts sitting in Missouri apply Missouri law based on "the general rule … that the law of the forum governs the admissibility of evidence*.*" *Pritchard-Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 281 n.4 (8th Cir. 1984); *accord*, *Dey v. Coughlin*, 2020 U.S. Dist. LEXIS 7515, at *5 (W.D. Mo. Jan. 16, 2020). In Missouri, the party asserting privilege "bears the burden of showing the privilege applies." *State ex rel. Kilroy Was Here, LLC v. Moriarty*, 633 S.W.3d 406, 414 (Mo. Ct. App. 2021) (citation omitted).

Regarding relevance, Rule 26(b)(1)'s phrase "relevant to the claim or defense of any party … has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Liberty Mut. Fire Ins. Co. v. Centimark Corp*., U.S. Dist. LEXIS 19007, at *2 (E.D. Mo. Mar. 4, 2009). at *1-2 (citation omitted). Put another way, "a request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense of any

party." *Pandora Jewelry, LLC v. Bajul Imps., Inc.*, 2011 U.S. Dist. LEXIS 27340, at *2 (E.D. Mo. Mar. 17, 2011) (emphasis in original; citation omitted). Plaintiffs must "mak[e] a threshold showing of relevancy," *Liberty* at *2, but, at that point, "the party resisting discovery 'must demonstrate to the court that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" *Blount v. Major*, 2016 U.S. Dist. LEXIS 150872, at *4 (E.D. Mo. Nov. 1, 2016) (quoting *Frey v. Fed. Reserve Bank of St. Louis*, 2015 U.S. Dist. LEXIS 164102, at *4 (E.D. Mo. Dec. 8, 2015).

### III. ARGUMENT

#### A. Averhealth Has Not Borne Its Burden of Showing that Documents Related to Government Investigations Are Protected from Discovery Under a Privilege

In Plaintiffs' pending motion to compel production of documents related to the investigation of Averhealth's practices by the College of American Pathologists ("CAP"), Plaintiffs explained why the CAP documents were not privileged simply because a CAP manual said that its inspection findings were confidential and should not (not must not) be disclosed. As Plaintiffs explained, no privilege recognized by Missouri law protects inspection findings from discovery, even if the inspector considers them confidential and asks the party being inspected not to disclose them. *See* CAP Brief, pp. 8-10, and authority cited therein.

This case is even stronger. First, as with the CAP investigation, no privilege recognized by Missouri law protects documents simply because they are related to a government investigation. *See* cases and statutes cited, *id.*, pp. 8-9.

Moreover, Averhealth cites nothing – not a statute, not a regulation, not an order, not even a nonbinding manual – providing that a party investigated under the False Claims Act or the

comparable Michigan statute may not – or even should not – disclose any documents pertaining to the investigation. It doesn't matter whether the documents are the CID itself, Averhealth's internal documents that have never been in the government's possession, or something in between. Averhealth cites nothing providing that such documents are privileged.

Contrary to Averhealth's position, courts have repeatedly held that documents submitted to the government in response to an investigation are discoverable. *See In re Delta/AirTran Baggage Fee Antitrust Litig.,* 846 F. Supp. 2d 1335, 1362-1365 (N.D. Ga. 2012) (compelling production of correspondence with DOJ regarding CID, and citing cases); *see also Jackson v. Equifax Info. Servs. LLC*, 2014 U.S. Dist. LEXIS 199646, at *7-9 (N.D. Ga. May 21, 2014) (granting motion to provide witness knowledgeable about defendant's response to FTC investigation); *Sussex Fin. Enters. v. Bayerische Hypo-Und Vereinsbank*, 2010 U.S. Dist. LEXIS 163474, at *19 (N.D. Cal. Mar. 2, 2010) ("Tellingly, Chenery fails to cite a single authority supporting its argument that discovery concerning government investigations into its business practices … should be limited in any way").

Nevertheless, during the parties' meet-and-confer, Averhealth's counsel stated that his client was unwilling to produce any documents that might "jeopardize its position in the government's investigation," but he failed to state how or why that might happen. How could producing documents in response to a valid discovery request jeopardize Averhealth's position in the investigation, especially when the documents can be produced as confidential under a protective order? Plaintiffs asked Averhealth for supporting authority, but that request went unanswered. Averhealth's support for the notion that it is somehow barred from producing these documents is nothing more than its own say-so.

In sum, not only has Averhealth come woefully short of meeting its burden to show that

these objections are well-founded, it hasn't even *attempted* to meet that burden. The objections on this ground should therefore be overruled.

**B.  Under Rule 26(b)(5)(A), Averhealth Waived Privilege by Not Expressly Making the Claim or Describing the Withheld Documents**

As noted above, Rule 26(b)(5)(A) requires that a party withholding discoverable material on grounds of privilege "expressly make the claim" and "describe the nature of" the withheld documents "in a manner that, without revealing information itself privileged or protected will enable other parties to assess the claim." Averhealth failed to meet either requirement.

Averhealth did not "expressly" claim privilege. In fact, its objection is a model of confusion. It objected "to the extent [the request] seeks production of confidential materials held by the Department of Justice that are not subject to public disclosure or production pursuant to the Freedom of Information Act (FOIA)." Cornfeld Decl. Ex. 1, p. 3. The only logical interpretation is that Averhealth objected to production *from the government*. Only in their meet-and-confer did Averhealth's counsel state that this was meant to encompass documents that Averhealth had submitted in response to the investigation even though it didn't so state. And even that oral clarification did not provide a legal basis for protecting such documents. Counsel merely stated that Averhealth would not produce documents that might jeopardize its position in the investigation though he didn't explain how that could possibly happen.

Moreover, Averhealth did not, as required, describe the nature of the withheld documents in a manner that would enable other parties to assess the claim. It not only did not describe them sufficiently to allow assessment of the claim, it said nothing about them. What submissions to the government is it withholding? It doesn't say. Is it withholding the actual CID, which, of course, is not a submission to the government? Presumably, but again it is silent. What about communications *from* the government? It says nothing. And finally, is it withholding internal

8

documents related to the investigation that were *never sent* to the government? Again, silence.

Courts have generally interpreted this rule "to require the party asserting privilege to produce a document index or privilege log of sufficient detail to avoid waiving privilege."[3] *Givens v. St. Louis Cty.*, 2021 U.S. Dist. LEXIS 244869, at *11 (E.D. Mo. Dec. 23, 2021). Here, Averhealth didn't even purport to provide a privilege log. In such circumstances, courts in the Eastern District of Missouri have repeatedly held that parties have waived privilege. *See Fluor Corp. v. Zurich Am. Ins. Co.*, 2021 U.S. Dist. LEXIS 99230, at *14-15 (E.D. Mo. May 26, 2021); *Parshall v. Menard, Inc.*, 2016 U.S. Dist. LEXIS 171243, at *4-6 (E.D. Mo. Dec. 12, 2016); *Fid. Nat'l Title Ins. Co. v. Captiva Lake Invs., LLC*, 2012 U.S. Dist. LEXIS 116206, at *11 (E.D. Mo. Aug. 17, 2012). This court should do the same, even if it finds <u>these</u> documents privileged ~~and that the other grounds for waiver don't apply~~. *See* Committee Notes to 1993 Amendment of Rule 26(b)(5) ("To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection.").

In one case in the Southern District of Iowa, *Williams v. Hy-Vee, Inc.*, 2023 U.S. Dist. LEXIS 30296, at *7 (S.D. Iowa Jan. 23, 2023), the court ordered the party within one week to file a detailed privilege log. But there the party had at least provided an inadequate log first. Because Averhealth simply flouted the rule altogether, the Court should not give it that benefit.

**C.     Documents Related to the Government Investigations Are Relevant to Plaintiffs'**

Averhealth's objection that the requested documents are "irrelevant to the claims asserted by the Plaintiffs, who have provided no information or basis to establish a nexus between any investigation and the claims asserted in the Second Amended Complaint" is utterly misplaced.

As noted above, the complaint contains multiple allegations regarding these investigations.

---

[3] The remainder of this section is taken nearly verbatim from Plaintiffs' CAP Brief, ECF 63-11, p. 23. Changes are denoted by underlining and cross-outs.

Moreover, the investigations are based on the same allegedly improper practices that Plaintiffs allege. To take one example, Averhealth's alleged improper use of historical calibration curves to verify the accuracy of test results, a practice alleged in SAC ¶ 85: In her letter to the Assistant United States Attorney in charge of the DOJ's investigation, Ms. Hooker states in her first sentence: "I wish to address concerns you raised regarding Averhealth's … use of *historical calibration curves* to troubleshoot quality control failures." ECF 63-6, p. 35 (emphasis added). This practice was directly at issue in the investigation.[4]

During the parties' meet-and-confer, however, Averhealth's counsel said that he understood the investigation was based on the claim that Averhealth had billed Michigan for tests it hadn't conducted. As Plaintiffs' counsel wrote in an email confirming their discussion, "You also said that, based on your understanding, this investigation does not relate to the claims in this lawsuit but to the contrary is based on the claim that Averhealth billed Michigan for tests it never even conducted." Cornfeld Decl. Ex. 3; *see also* Cornfeld Decl. ¶ 7. If that is so, it's hard to imagine why Averhealth submitted the Klette Report and Hooker letter defending its lab practices.

Nevertheless, assume counsel is correct (he did not send a correction or clarification). If so, there is all the more reason why Averhealth's objection is unfounded. Averhealth issued reports for every test it claimed to conduct for MDHHS. If it didn't actually conduct them, Plaintiffs are entitled to know whether any of their own "tests" were not conducted even though Averhealth

---

[4] As explained in Plaintiffs' CAP Brief, Attorney Hooker "describes *no* expertise in forensic toxicology or any other scientific field." ECF 63-11, p. 17 (emphasis in original). And her defense of Averhealth's use of historical calibration curves is at odds with the views of CAP's experts. For example, on December 22, 2020, Lena Portillo, Investigations Analyst, CAP Accreditation Programs, wrote Averhealth that the "use [of] a historical calibration curve" while "keep[ing] the current QCs [Quality Controls]" was an unacceptable practice; it was, she said, "data manipulation to accommodate poor responses and accept runs on a patient sample without understanding why there are discrepancies." SAC Ex. 95-A, ECF 23-1, p. 23, cited in SAC ¶¶ 95-96. *See also* CAP's letter placing Averhealth on probation, stating that the CAP Accreditation Committee was "particularly concerned about … the use of historical QC and QC acceptance practices." SAC ¶ 113, quoting SAC Ex. 112, ECF 23-1, p. 149. Ms. Hooker did not mention these documents specifically or CAP's views on the use on historical data in general, much less attempt to refute them. In fact, she was silent on CAP's decision to place Averhealth on probation.

issued reports for them. This discovery is clearly relevant. However, if Averhealth asserts that the investigation is irrelevant because it relates only to a claim that Averhealth defrauded the government by billing for tests it never conducted, it should submit the CID to the Court for in camera review so that the Court can determine if that is the true nature of the investigation.

## IV.     CONCLUSION

Averhealth's objections to the requests in the accompanying motion should be overruled and it should be ordered, within ten days of the Court's order, to provide the documents requested, other than those protected by attorney-client privilege or the attorney work-product doctrine, as to which it should be ordered to provide a privilege log at the same time.

Dated: August 11, 2023

Respectfully submitted,

**GOLDENBERG HELLER & ANTOGNOLI, P.C.**

By:/s/*Richard S. Cornfeld*
Richard S. Cornfeld, #31046MO
Daniel S. Levy, #66039MO
2227 S. State Route 157
Edwardsville, Illinois 62025
618.656.5150
rick@ghalaw.com
daniel@ghalaw.com

And

Anthony S. Bruning, #30906MO
Anthony S. Bruning, Jr., #60200MO
Ryan L. Bruning, #62773MO
THE BRUNING LAW FIRM, LLC
555 Washington Avenue, Suite 600
St. Louis, Missouri 63101
P. 314-735-8100 / F. 314-898-3078
tony@bruninglegal.com
aj@bruninglegal.com
ryan@bruninglegal.com

And

J.C. Pleban, MO Bar No. 63166
jc@plebanlaw.com
C. John Pleban, Mo. Bar No. 24190
cpleban@plebanlaw.com
Pleban & Associates Law LLC
2010 South Big Bend Blvd.
St. Louis, MO  63117
(314) 645-6666 – Telephone
(314) 645-7376 – Facsimile

And

Mike Arias, #115385(CA)
Arnold Wang, #204431(CA)
Craig S. Momita #163347(CA)
Arias Sanguinetti Wang & Torrijos, LLP
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Tel: (310) 844-9696 / Fax: (310) 861-0168
mike@aswtlawyers.com
arnold@aswtlawyers.com
craig@aswtlawyers.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of August, 2023, the foregoing was served by operation of the Court's electronic filing system on all counsel of record in this matter.

/s/ *Richard S. Cornfeld*