IN THE UNITED STATES DISTIRCT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| KATARZYNA FOULGER, DAVID SHNITZER, TIFFANI PADILLA, STEPHEN PADILLA, RANDI HEKKEMA, JOSEPH HEKKEMA, ALEXANDRA HODOR, and NICOLE WHITE,<br><br>Plaintiffs,<br><br>vs.<br><br>AVERTEST, LLC d/b/a AVERHEALTH<br><br>Defendant. | Case No: 4:22-CV-00878 |

# DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.     INTRODUCTION ......................................................................................................1

II.    BACKGROUND ........................................................................................................2

        A.     Supplemental Test Record Data ....................................................................3

        B.     Chain of Custody Documents .......................................................................5

        C.     Foulger's hair specimen ................................................................................7

        D.     Statements to the Court ................................................................................8

III.   ARGUMENT ............................................................................................................10

        A.     Legal standard .............................................................................................10

        B.     Averhealth's reproduction of certain analyses is not sanctionable as spoliation. ....................................................................................................11

        C.     The absence of chain of custody for seven tests is not sanctionable as spoliation. ....................................................................................................12

        D.     Averhealth took reasonable efforts to preserve Foulger's hair sample. ..................13

        E.     Averhealth has defended this action in good faith. ....................................13

        F.     Plaintiffs' proposed remedies are drastic and unwarranted. ......................14

        G.     Averhealth requests a hearing should the Court disagree. ........................15

IV.   CONCLUSION .........................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Builders & Contractors Supply Co. v. Roofers Mart, Inc*
 2012 WL 2992627 (E.D. Mo. Jul. 12, 2012) ............................................................... 11

*Ameriwood Indus., Inc. v. Liberman*,
 No. 4:06CV524-DJS, 2007 WL 5110313 (E.D. Mo. July 3, 2007) ............................ 15

*Anderson v. BNSF R. Co.*,
 681 F. Supp. 3d 899 (S.D. Iowa 2023) ........................................................................ 14

*Hairston v. Alert Safety Light Products, Inc.*,
 307 F.3d 717 (8th Cir. 2002) ....................................................................................... 14

*Hallmark Cards, Inc. v. Murley*,
 703 F.3d 456 (8th Cir. 2013) ....................................................................................... 10

*Morris v. Union Pacific R.R.*,
 373 F.3d 896 (8th Cir. 2004) ................................................................................. 10, 14

*Stepnes v. Ritschel*,
 663 F.3d 952 (8th Cir. 2011) ....................................................................................... 14

*System Spray-Cooled, Inc. v. FCH Tech LLC*,
 No. 1:16-cv-01085 (W.D. Ark. Feb. 22, 2017) ............................................................ 11

*Vogt v. MEnD Correctional Care, PLLC*,
 Case No. 21-cv-1055, 2023 WL 2414551 (D. Minn. Jan. 30, 2023) ........................... 11

**Other Authorities**

Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2284 (3d ed.) .......................................... 15

Rule 11 ......................................................................................................................... 9, 14

Rule 37 ............................................................................................................................. 14

I.       INTRODUCTION

Defendant Avertest, LLC d/b/a Averhealth ("Averhealth") takes its responsibility to perform high-quality drug testing seriously. This is a case in which Plaintiffs accuse Averhealth of doing otherwise, and in so doing, producing inaccurate results on their individual drug tests. This, they claim, caused them to lose custody of their children. Plaintiffs, however, are unable to show their test results were, in fact, inaccurate, and they similarly cannot prove (or at least to date have not produced court records that would show) their purportedly false test results caused the removal of their children.

As with its drug testing, Averhealth takes seriously its discovery obligations in this case. Again, by this motion, Plaintiffs accuse Averhealth of not doing so and request sanctions. As detailed below, these allegations of discovery misconduct are meritless, and the motion should be denied. While Plaintiffs' motion takes a somewhat scattershot approach to alleging perceived deficiencies in Averhealth's litigation and discovery conduct, the motion highlights three areas in which Plaintiffs claim Averhealth has not sufficiently met its discovery obligations under the Rules: *first*, the destruction of certain chain of custody documents; *second*, the missing hair specimen of Katarzyna Foulger; and *third*, the reproduction of seven missing drug test analyses.

Plaintiffs claim, without evidence, that these deficiencies were intentional and therefore should subject Averhealth to discovery sanctions. They request the most severe sanction: entry of a default judgment against Averhealth and the effective end of this lawsuit. And while Plaintiffs accuse Averhealth of "egregious" underlying discovery misconduct, each one of the three areas of putative deficiency has a far more benign and objectively reasonable explanation than that Plaintiffs ascribe to it. Averhealth presents its best understanding and explanation for each

1

perceived deficiency below and explains why, in these circumstances, sanctions (and especially those as extreme as are being requested by Plaintiffs here) are unwarranted.

**II.     BACKGROUND**

This is a complex case. It has involved complex and extensive discovery. Limited only to requests for production, Plaintiffs have made 129 requests, exclusive of subparts, to Averhealth. In every instance, Averhealth has undertaken a reasonable search for responsive records and materials, consistent with its obligations to do so under the Federal Rules. Averhealth has produced over 90,000 pages during discovery in this case. Averhealth is not the corporate behemoth Plaintiffs paint it to be, with only 63 laboratory testing personnel involved in day-to-day testing operations. Exhibit A, Affidavit of Dominique Delagnes, ¶ 4. The process of responding to Plaintiffs' voluminous requests has required yeoman's efforts on the part of eight of its employees who have had to repeatedly divert attention away from their day-to-day tasks to attempt to meet Plaintiffs' demands. *Id*. at ¶ 5.

Averhealth acknowledges that, in responding to a huge breadth of discovery requests and due, in part, to the volume of its testing enterprise, it has been unable to locate certain items that might be responsive to one or more of the 100-plus requests that have been propounded to it. It has, however, continuously worked to ensure that its discovery responses are as complete and accurate as possible, and to supplement its discovery responses where necessary. Averhealth has made numerous affirmative and voluntary disclosures upon discovering that its earlier productions and responses may have been in some way incomplete. These supplemental productions include items with which Plaintiffs take issue in their motion.

In some instances, the identified alleged deficiencies appear to have been simple human error. In others, they can be readily and plausibly explained as other than intentional spoliation of

2

Case: 4:22-cv-00878-SHL   Doc. #: 112   Filed: 09/05/24   Page: 6 of 20 PageID #: 4450

evidence. Plaintiffs, however, jump to the conclusion that any discovery issues they may have identified, for which they claim Averhealth should have judgment entered against it, are rooted in bad faith and were purposeful. This is not so, and sanctions are unwarranted under this Circuit's law.

A.   **Supplemental Test Record Data**

Throughout discovery, Plaintiffs have requested "data packs" for each of the Plaintiffs' unexpected-positive tests. After testing a specimen, Averhealth creates and maintains a one- or two-page laboratory report for each test that reflects the substances tested and the test results. Exhibit B, Affidavit of Dr. Michele Glinn, ¶ 3. As Averhealth has explained to Plaintiffs, it does not create "data packs" until it receives a request for one from a client, typically a court or other State official. *Id*. at ¶ 4. Moreover, these data-pack requests typically occur shortly after the test at issue, when a test is used as evidence in court or when a litigant challenges the accuracy or validity of the test. *Id*. at ¶ 6. Creating a data pack requires trained Averhealth scientists to manually search its systems to collate documents and data across multiple file and system locations, including test results, chains of custody for the specimen, instrument data, maintenance logs, quality control logs, chromatographs, and applicable Standards of Procedure. *Id*. at ¶ 8. This exercise becomes more difficult and complex as time passes due to the volume of data processed by Averhealth on a daily basis. *Id*. at ¶ 10.

In response to Plaintiffs' requests, Averhealth undertook the painstaking work of creating data packs for 118 specimens reaching back to 2019. Following production of those data packs and during continuing review of the produced materials, counsel for Averhealth identified certain data packs that contained incomplete data or analyses. On July 30, 2024, Averhealth made a supplemental production of materials to fill gaps in the produced data packs, and its counsel provided a letter describing the reasons for the supplemental production (the "July 30 letter").

3

The letter explained that, among other data, the production contained analyses for seven data packs that were incomplete and for which Averhealth did not have the original analyses. Averhealth test batches undergo two levels of review by certifying lab technicians before the results are reported. Prior to 2021, certifying technicians sometimes saved their batch analyses locally, rather than uploading them to the Averhealth system. Ex. A, Delagnes Aff., at ¶ 26. Upon review, there were 7 instances across the 118 test data packs where the certifying technician saved their batch analyses locally and those analyses could not be retrieved. Five of these seven data packs were past the required two-year retention window when the Amended Complaint was filed on January 26, 2023. In addition, since 2021, Averhealth has changed its standard practice to include uploading batch analyses to Averhealth's SharePoint system. *Id*. at ¶ 30. To fill the gaps in these data packs, Averhealth recreated the chromatograph analyses to reflect what it believes the certifying technician may have done during the review process.

In four instances raised by Plaintiffs, the certifying technician was Anthony Hall. The specimens in those instances belonged to Plaintiffs Joseph Hekkema, Randi Hekkema, Stephen Padilla, and Tiffani Padilla. Mr. Hall left Averhealth on July 1, 2021, and did not save some of his final analyses to Averhealth's SharePoint system before departing. *Id*. at ¶ 27. Shortly after his departure, and well before this case was filed, the hard drive of Mr. Hall's computer was erased, consistent with Averhealth's policy for treatment of computer hardware following the departure of an Averhealth employee. *Id*. at ¶ 29. Because Averhealth does not frequently receive requests for data packs, it was not on notice that relevant data for the affected Plaintiffs existed on Mr. Hall's laptop prior to its erasure, nor that the affected Plaintiffs had potential claims against Averhealth. Prior to this litigation, Averhealth had not received a request to reproduce data that was erased from a former employee's hard drive. *Id*. at ¶ 31.

4

In one additional instance from 2019, a second-level certifying technician still employed by Averhealth did not save her batch analysis to Averhealth's system. Averhealth, by internal policy, is only required to retain documents related to testing specimens for two years. *See* Exhibit C, Accessioning and Internal Chain of Custody Standard Operating Procedure. This analysis related to a specimen collected on December 18, 2019—well before this lawsuit was filed, and outside of the two-year document retention window at the time this lawsuit was filed. In the final two instances, subsequent to sending the July letter, Averhealth located and produced to Plaintiffs the original analyses that were prepared during review and certification of the related batches.

B.   **Chain of Custody Documents**

Averhealth maintains its chain of custody documentation for two years following collection of the specimen. Ex. A, Delagnes Aff., at ¶ 8. In almost every instance, that chain of custody documentation is maintained electronically. Plaintiffs identify 19 tests for which the electronic chain of custody documentation begins on the date of receipt at the lab. This is apparently the case because, in a small number of instances, specimens are delivered to the lab from a case worker or private partner that does not maintain electronic records, but instead sends paper records evidencing custody from the point of collection through delivery to Averhealth's laboratory. *Id*. at ¶ 10-11. All of the 19 missing records originated with a case worker or at a private partner location—for example, Catholic Charities of West Michigan. *Id*. at ¶ 12.

The Amended Complaint, which joined all of the current Plaintiffs, was filed on January 26, 2023.[1] At that time and subject to its two-year retention policy, Averhealth would still have records of tests from January 26, 2021, to present. The earliest of the subject tests identified by

---

[1] Foulger was the only Plaintiff identified in the original Complaint, filed August 22, 2022, and Plaintiffs do not take issue with the chain of custody produced for her test.

5

Plaintiffs was in November 2019, more than three years before Plaintiffs filed their Amended Complaint and all current Plaintiffs were joined in the case. Only seven of the tests with incomplete chain of custody documentation were completed within two years of the Amended Complaint. One such test has a complete chain of custody which was unintentionally omitted during data pack creation, and it will be produced to Plaintiffs promptly. Plaintiffs do not suggest that Averhealth should have been on notice to retain records for the twelve tests performed prior to January 26, 2021. Accordingly, only six tests are properly at issue for the purpose of the spoliation analysis. All six tests belong to Tiffani and Stephen Padilla.

The paper chain of custody is a two-ply form; one copy is retained by the private partner that collected the specimen, and the other is sent with the specimen to Averhealth's lab. *See* Exhibit D, Sample Paper Chain of Custody Form. When laboratory staff receive a specimen accompanied by a paper chain of custody, the staff member first reviews the barcode on the paper form to ensure it matches the barcode on the specimen. Ex. A, Delagnes Aff., at ¶ 16. The staff member also ensures that the seal is intact and has not been broken and there is no evidence of tampering. *Id*. at ¶ 17. If the barcodes on the form and specimen do not match, or the seal of the specimen is broken or has been tampered with, the specimen is rejected. *Id*. at ¶ 21. If the specimen is acceptable, the information from the paper chain of custody is entered into Aversys, Averhealth's internal specimen- and test-tracking software, and the specimen is processed for testing. *Id*. at ¶ 20.

Averhealth does not test specimens that do not have chain of custody documentation when received at the lab. Stated affirmatively, Averhealth tests specimens only when those specimens are accompanied by chain of custody documentation. *Id*. at ¶ 24. Averhealth's Standard Operating Procedure ("SOP") for Workflow and Chain of Custody confirms this procedure. *See* Exhibit E. The SOP states that upon receipt of a specimen, laboratory personnel must review the

6

accompanying chain of custody for acceptability. *Id*. If it is deemed unacceptable, lab staff determine whether the flaw is fatal or correctable. *Id*. Specimens with fatal flaws, or correctable flaws for which a correction is not received within a reasonable period, are rejected. *Id*.

Plaintiffs' position incorrectly implies that Averhealth's tests are *only* defensible when a complete chain of custody is present for a specimen. This contention misconstrues the purpose of the chain of custody documentation maintained by Averhealth. The chain of custody is one procedure among several that ensure the defensibility of a test. The review of the barcode on the form and the specimen container, as well as the seal on the container, also confirm chain of custody and defensibility of collection. Ex. A, Delagnes Aff., at ¶ 23. Moreover, the tests with incomplete chain of custody records represent only 6 tests out of the Padillas' 85 tests with unexpected positive results, and 118 total tests at issue in this case.

### C. Foulger's hair specimen

Plaintiffs seize on language in Averhealth documents indicating that drug testing specimens are retained for 365 days, making the assumption that all such specimens are retained for one year. This is not always the case, at least with respect to hair testing. With respect to hair testing, there is an obvious concern that the hair specimen taken from each person undergoing drug screening be minimized to the extent possible to only that amount of hair which is needed to conduct an appropriate test and avoid needing to take too much of any given person's hair for that test. Averhealth follows this practice to avoid embarrassment to those it tests by hair specimen. Additionally, as part of the process for testing hair specimens, Averhealth must pulverize and liquify the hair in order to perform the test and obtain the test's results. Ex. B, Glinn Aff., at ¶ 13. If after pulverizing and liquifying the required amount of hair for testing there remains excess hair, then the excess hair is retained for 365 days as certified in the lab report. Exhibit F, July 8, 2024, Deposition of Dominique Delagnes at 110:25, 111:1-19.

7

Plaintiff Foulger's specimen was collected on December 13, 2021, and she requested her hair specimen in January 2022. The Averhealth employee who received her request incorrectly reported that her specimen was not retained. On July 11, 2023, during its evidence preservation efforts in connection with this case, Averhealth found the remaining hair specimen and took photographs of it. Those photographs were produced to Plaintiffs' counsel on November 10, 2023. Despite several extensive searches for the specimen in the year following, Averhealth has been unable to recover it.

### D. Statements to the Court

Plaintiffs also take issue with other actions of, and statements made by, Averhealth that bear no relation to alleged spoliation, in an attempt to bolster their spoliation arguments with general, unrelated allegations of bad faith. Though the Court should disregard these claims because they are improperly raised, each of Plaintiffs' complaints has a simple and reasonable explanation.

*First*, Plaintiffs allege that Averhealth has misrepresented the College of American Pathologists' ("CAP") conclusion regarding Dr. Sarah Riley's complaints. In support of its Motion to Dismiss, Averhealth asserted that CAP found Dr. Riley's complaints to be unsubstantiated. (Doc. 27 at p. 25.) Plaintiffs point to recent deposition testimony by Averhealth CEO Dominique Delagnes to assert that Averhealth knew that its assertion was false.

The explanation is straightforward. Around the time Dr. Riley left Averhealth, CAP received two sets of complaints about Averhealth's testing practices. The first, regarding Averhealth's quality assurance adherence to its standards and protocols, is Reference Number 10219. The second and more serious complaint, alleging false positive test results and noncompliance with CAP Terms of Accreditation related to media reports, bears Reference Number 10459. Exhibit G.

8

The May 25, 2021, letter cited by Averhealth in its Motion refers to Reference Number 10459. Exhibit H. It states that CAP "has reviewed the inspector findings concerning the complaint we received. The allegations were reviewed and determined to be not applicable to the testing performed under the CAP FDT program." *Id*. Plaintiffs themselves cite to and attach this letter to their Second Amended Complaint as Exhibit 115. (Doc. No. 16, ¶ 115; Ex. 115.) Averhealth maintains its contention, as it stated in the Motion to Dismiss, that Plaintiffs' factual and conclusory statements regarding the CAP investigation and probation are "irrelevant to and divorced from the central proposition – were Plaintiffs' test results 'false positives' due to alleged improper testing practices at Averhealth." (Doc. No. 27 at p. 27.)

Plaintiffs previously took issue with Averhealth's statements in its Motion to Dismiss on November 3, 2023, in a purported Rule 11 letter, which did not attach a proposed motion. *See* Exhibit I. Averhealth responded on November 17, 2023, confirming that it maintained the position asserted in the motion and denying that it had misrepresented its interactions with CAP. *See* Exhibit J. Plaintiffs' counsel did not respond or raise the subject again until this motion.

*Second*, Plaintiffs allege that Averhealth misrepresented the scope of its production when it asserted in February 2024 that it had produced all of the underlying data for Plaintiffs' positive tests. Averhealth further stated that the data provided was "more than sufficient to allow review by an independent toxicologist to determine the validity of those tests," which was how Plaintiffs defined the data they sought in the relevant request for production.

Following the deposition of Averhealth CEO Dominique Delagnes, Averhealth's counsel became aware that certain spreadsheets with data regarding some of Plaintiffs' tests had not been produced. As soon as counsel for Averhealth became aware of the spreadsheets, it immediately produced them, along with some supplemental data for Plaintiffs' positive tests, to Plaintiffs'

9

counsel. Again, this is a complex case with complex discovery, and Averhealth takes its discovery responses seriously. It has conducted reasonable searches for responsive materials since the outset of the case and voluntarily and proactively supplemented its discovery responses when appropriate. Additionally, Plaintiffs have had the initially produced data packs since June 16, 2023, and could have identified any gaps in the data which were later filled by the supplemental production.

### III.    ARGUMENT

#### A.    Legal standard

"[I]n a case involving the alleged spoliation of evidence, a district court is required to make two findings before an adverse inference instruction is warranted: (1) 'there must be a finding of intentional destruction indicating a desire to suppress the truth,' and (2) '[t]here must be a finding of prejudice to the opposing party.'" *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 460 (8th Cir. 2013) (quoting *Stevenson v. Union Pacific R.R. Co.*, 354 F.3d 739, 746 & 748 (8th Cir. 2004)). In the context of prelitigation spoliation of evidence, "a district court must issue explicit findings of bad faith and prejudice prior to delivering an adverse inference instruction." *Id.* at 461.

"Intent rarely is proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Morris v. Union Pacific R.R.*, 373 F.3d 896, 901 (8th Cir. 2004). A finding of intent is a highly contextual exercise, and particularly when "a corporation is involved, the inquiry depends in part on corporate policies, but also to some extent on the intent of corporate employees, not all of whom will play the same role in every case." *Id.* at 902-03. "Prejudice exists when spoliation prohibits a party from presenting evidence that is relevant to its underlying case," and may also be established by the nature of the evidence

10

destroyed. *Vogt v. MEnD Correctional Care, PLLC*, Case No. 21-cv-1055 (WMW/TNL), 2023 WL 2414551, at *10 (D. Minn. Jan. 30, 2023).

      **B.**      **Averhealth's reproduction of certain analyses is not sanctionable as spoliation.**

Plaintiffs have not shown, or attempted to show, that the missing analyses were intentionally destroyed. With respect to the reproduction of a limited set of analyses, Plaintiffs rely on *American Builders & Contractors Supply Co. v. Roofers Mart, Inc.* to argue that the reproduction was sanctionable. No. 1:11-CV-19, 2012 WL 2992627 (E.D. Mo. Jul. 12, 2012). *American Builders* is inapposite. That case involved evidence of intentional destruction of relevant evidence. There, among other things, the spoliating party ran a reset of the operating system after the case had been instituted and 2 days after his first deposition. *Id*. at *2. His testimony further buttressed the claim that he did so in order to either delete the company's records or at least ensure there were no such records on the laptop (which he had used while employed at ABC for business purposes). *Id*. The court used the timing and the spoliating party's testimony to infer that the installation of the software could not have been an innocent action but was instead intended to ensure no ABC records were on the laptop during a period in which the preservation obligation existed. *Id*.

While Plaintiffs do not cite it, *System Spray-Cooled, Inc. v. FCH Tech LLC*, No. 1:16-cv-01085 (W.D. Ark. Feb. 22, 2017), is another case in this Circuit that provides a helpful comparator. There, within days of a relevant discovery motion being filed, the spoliating party destroyed company hard drives and ran software designed to erase information from replacement hard drives. *Id*. at *5. The Court used the timing to infer that it was beyond serious dispute that the purported spoliator had knowledge of the requests and acted to prevent access by the other party to them. And while the court there did issue an adverse inference, even in circumstances that extreme, it

11

declined to grant a default judgment. *Id*. at *6. The circumstances here, detailed above, do not indicate an intentional suppression of evidence to prevent Plaintiffs from accessing the truth.

Plaintiffs have also not been prejudiced by the supplementation and correction of the data packs. At the time of the supplementation, only two fact witness depositions had been completed – that of the current CEO and of a 30(b)(6) corporate representative. Since that time, Averhealth has voluntarily agreed to re-open the 30(b)(6) deposition for the purposes of providing testimony on the supplemental data. Further, Plaintiffs have not even identified experts yet, and trial of this matter is scheduled to commence just over one year from now.

### C.     The absence of chain of custody for seven tests is not sanctionable as spoliation.

Any errors, omissions, or destruction of documents or evidence related to Plaintiffs' tests were unintentional. Averhealth is a high-volume laboratory that processes over 25,000 testing specimens each week. Ex. A, Delagnes Aff., at ¶ 6. Moreover, the paper form is a departure from the typical procedure and is used for specimens collected by case workers and private partners. As detailed above, Plaintiffs have identified a total of 19 data packs with incomplete chains of custody, out of 118 specimens. Plaintiffs have not offered any basis on which the Court could determine that the complete chains of custody were intentionally destroyed. The most they identify is that they are missing. Nor have they established any motive for Averhealth to destroy the 6 chains of custody within the two-year document retention window, particularly as they relate to only 6 of the Padillas' 85 tests at issue. Even if the incomplete chains of custody are material, the fact that they are missing cannot be understood to be intentional.

The lack of chain-of-custody documentation is also not prejudicial. Chain of custody is not the only way to establish defensibility or validity of a test. As established by the Chain of Custody SOP, Averhealth does not test specimens with either fatal or uncorrected flaws. Accordingly, there

is a presumption that the specimens' chains of custody were not flawed. Averhealth would not have run the test without proper chain of custody documentation at the time of receipt in the lab.

### D.     Averhealth took reasonable efforts to preserve Foulger's hair sample.

As with the previous categories of evidence, Plaintiffs assume that Averhealth intentionally destroyed Foulger's hair specimen, without citing any evidence for that assumption. In July 2023, in connection with evidence preservation efforts, Averhealth located and photographed the remaining portions of Foulger's hair specimen. Following that photograph, despite efforts to preserve the evidence, Averhealth has been unable to locate the specimen.

Further, while Averhealth concedes that Foulger's hair specimen is relevant to the litigation, any prejudice to Plaintiffs is minimal. When Averhealth performs hair testing, it extracts the root end and pulverizes it until the specimen is liquified. Glinn Aff., Ex. C, at ¶ 13. The photograph of the remnants of the Foulger specimen does not appear to contain the root end, which Averhealth uses to test the hair. *Id*. at ¶ 14; Exhibit K. Accordingly, any testing performed with the remnants of Foulger's hair specimen may yield different results than the original specimen because they would not have tested the root end of the hair. Glinn Aff., Ex. C, at ¶¶ 14–15; Exhibit L, Deposition of Dr. Michele Glinn at 111:5–16.

### E.     Averhealth has defended this action in good faith.

Plaintiffs' effort to claim that Averhealth has exhibited bad faith generally in this case is meritless for the reasons recited above. In short, it has made extensive efforts to comply with Plaintiffs' many discovery requests and to be accurate in its representations to the Court and counsel. To the extent Plaintiffs disagree, a discovery motion is not the appropriate way to address that contention, which does not bear on whether documents were intentionally destroyed and caused them prejudice.

13

This is not a case, for example, like *Anderson v. BNSF R. Co.*, 681 F. Supp. 3d 899 (S.D. Iowa 2023), which Plaintiffs cite, in which the Court considered as evidence of intentional spoliation a party's extreme "demonstrated pattern of abuse" in the discovery process in at least seven cases in courts nationwide and had been repeatedly admonished for those actions in those cases. *Id*. at 912–14. As detailed above, the facts here bear out a party that has done its best to comply with the Rules and the many requests propounded to it, and one that has undertaken voluntary efforts to bring potential issues with its prior responses and productions to the attention of the other side. It is not one that has committed "intentional destruction indicating a desire to suppress the truth" in this or any other case. *Id*. at 910 (quoting *Stevenson*, 354 F.3d at 746). While Averhealth disputes the merit of the points Plaintiffs make that are more akin to those more properly considered in the context of Rule 11 and not Rule 37, those assertions are not germane to or evidence of intentional spoliation of any of the three items Plaintiffs highlight.

  **F.**  **Plaintiffs' proposed remedies are drastic and unwarranted.**

As outlined above, each instance about which Plaintiffs complain has a reasonable explanation, and Plaintiffs have failed to show intentionality and prejudice, much less bad faith. And "[s]evere spoliation sanctions, such as an adverse inference instruction, are only appropriate upon a showing of bad faith." *Stepnes v. Ritschel*, 663 F.3d 952, 965 (8th Cir. 2011); *see also Morris v. Union Pacific R.R.*, 373 F.3d at 903 ("The adverse inference instruction, when not warranted, creates a substantial danger of unfair prejudice.") No sanctions are appropriate here, and the remedies Plaintiffs seek are particularly severe and unwarranted.

Plaintiffs ask the Court to order a default judgment against Averhealth. Such a request is extreme and unjustified on the facts here. A "court should resort to the sanction of dismissal only when the failure to comply has been due to willfulness, bad faith, or any fault of petitioner." *Hairston v. Alert Safety Light Products, Inc.*, 307 F.3d 717, 718–19 (8th Cir. 2002). Review of

14

Eighth Circuit spoliation cases in which a dismissal or a default judgment was granted reveals that, in many cases, the sanctioned litigant acted intentionally and in the face of court orders to the contrary.

For example, in *Ameriwood Indus., Inc. v. Liberman*, which Plaintiffs heavily rely upon, the court found that the defendants intentionally destroyed documents *after* the court granted a motion to compel. *Ameriwood Indus., Inc. v. Liberman*, No. 4:06CV524-DJS, 2007 WL 5110313, at *6 (E.D. Mo. July 3, 2007). The court there also determined that the plaintiff was prejudiced because it could not determine exactly what information and documents were destroyed. *Id*. at *7. That is not the case here, where Averhealth has not intentionally destroyed evidence, but rather has made its best efforts to preserve and produce the evidence requested by Plaintiffs.

### G. Averhealth requests a hearing should the Court disagree.

For the reasons detailed above, sanctions are unwarranted, and the Court should deny the motion. Should the Court, however, believe that more than summary consideration is warranted, Averhealth requests the opportunity to be heard at a hearing on Plaintiffs' motion prior to any decision. *See* Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2284 (3d ed.), at n. 48 ("Because so much is entrusted to the discretion of the district courts in choosing sanctions, a hearing will ordinarily be required before sanctions are imposed.") (citing, *inter alia*, *Edgar v. Slaughter*, 548 F.2d 770 (8th Cir. 1977)).

## IV. CONCLUSION

For the reasons above, Plaintiffs' Motion for Sanctions for Spoliation of Evidence should be denied. Plaintiffs have not established Averhealth intentionally destroyed any evidence or that they have suffered prejudice as a result.

ARMSTRONG TEASDALE LLP

By: _____
Timothy J. Gearin          #39133MO
David G. Ott               #30449MO
Nicolas Cejas              #65829MO
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
314.621.5070   FAX: 314.237.1535
314.237.1535 (facsimile)
tgearin@atllp.com
dott@atllp.com
ncejas@atllp.com
E-serveBTC@atllp.com

ATTORNEYS FOR DEFENDANT
AVERTEST, LLC D/B/A AVERHEALTH

16

## CERTIFICATE OF SERVICE

The undersigned certifies that on the **5th** day of **September**, **2024**, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Richard S. Cornfeld
Daniel S. Levy
Goldenberg Heller & Antognoli, P.C.
2227 South State Route 157
Edwardsville, IL  62025
rick@ghalaw.com
daniel@ghalaw.com
roxie@ghalaw.com
*Attorneys for Plaintiffs*

Anthony S. Bruning
Anthony S. Bruning, Jr.
Ryan L. Bruning
Jamie L. Boyer *(PHV pending)*
The Bruning Law Firm, LLC 555 Washington Avenue, Suite 600
St. Louis, Missouri 63101
tony@bruninglegal.com
aj@bruninglegal.com
ryan@bruninglegal.com
jamie@bruninglegal.com
makenzie@bruninglegal.com
dominic@bruninglegal.com

*Attorneys for Plaintiffs*

J.C. Pleban
C. John Pleban
Pleban & Associates Law, LLC
2010 South Big Bend Blvd.
St. Louis, MO 63117
jc@plebanlaw.com
cpleban@plebanlaw.com
maubuchon@plebanlaw.com
*Attorneys for Plaintiff*

Mike Arias
Arnold Chen-Yuan Wang
Michael Anthony Jenkins
Elvin Cruz
Arias Sanguinetti Wang & Torrijos, LLP
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
mike@aswtlawyers.com
arnold@aswtlawyers.com
anthony@aswtlawyers.com
ladonna@aswtlawyers.com
elvin@aswtlawyers.com
*Pro Hac Vice Attorneys for Plaintiffs*

_____