# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| KATARZYNA FOULGER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:22-CV-00878 |
| AVERTEST, LLC, dba Averhealth | ) |
| | ) |
| Averhealth. | ) |
| | ) |

## REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS FOR AVERHEALTH'S SPOLIATION OF EVIDENCE

I. **INTRODUCTION**

In support of this motion, Plaintiffs postulated that, at a minimum, Averhealth "didn't take its discovery responsibilities seriously ...." Brief in Supp. of Plffs' Motion for Sanctions ("Brief"), ECF 106-1, p. 14. Averhealth's resistance to this motion unquestionably shows that.

Averhealth spends much of its argument bemoaning the burden of producing data packs on Plaintiffs' 118 tests, something it says "becomes more difficult and complex as time passes ...."[1] That production took more than a year, even apart from some stragglers. *See* Ex. HH (Cornfeld Declaration), ¶ 2. But why it took so long is simply unfathomable. In August 2022, Averhealth retained forensic toxicologist Kevin Klette to conduct a three-day audit in connection with a Department of Justice investigation.[2] *With only five-days' notice*, Averhealth CEO Jason Herzog told his staff that Dr. Klette wished to review its data regarding 100 tests, which Dr. Klette would select from positive results *over the past three years* (so much for it becoming "more difficult and complex as time passes"). *See id.* ¶ 3 and attached Ex. 1. As it happened, Dr. Klette audited roughly 200 tests (*see id.*, ¶¶ 4-5, and attached Ex. 2 and 3), much more than the 118 data packs Averhealth produced to Plaintiffs for over a year. Five days there; over a year here.

Moreover, it now turns out that Averhealth's production of data packs *is still incomplete*. In her affidavit, after describing the tasks involved in assembling a data pack, Dr. Glinn states, "Finally, an affidavit must be composed listing all of the information to be sent." Glinn Aff., ¶ 8. But inexplicably, *not a single affidavit* accompanied Plaintiffs' data packs. Cornfeld Decl., ¶ 6. Dr. Glinn's statement, in fact, is the first notice Plaintiffs received that a data pack *should* include an affidavit. Will they be produced? Dr. Glinn didn't say.

This just starts to show why Averhealth's arguments fail to refute the basis of this motion.

---
[1] Def.'s Response ("Resp."), ECF 112, pp. 2, 3; Delagnes Aff., ECF 112-1, ¶ 5; Glinn Aff., ECF 112-2, ¶¶ 7-10.
[2] Averhealth recently settled the allegations being investigated – which were based on Dr. Riley's claims – for more than $1.3 million. *See* Ex. II (U.S. Attorney Press Release, 6/20/24).

## II. ARGUMENT

### A. Acts of Spoliation

#### 1. Spoliation of chain-of-custody documents

Averhealth offers no direct defense to its destruction of chain-of-custody records. Instead, it argues that a chain of custody is unnecessary to support its tests' validity. Resp. at 12 ("not the only way to establish defensibility or validity of a test."). But days after it filed its Response, Dr. Glinn *testified to the contrary*, stating that, without a chain of custody, "[w]e can't tie those results to that sample." *See* Cornfeld Decl. ¶ 7 and attached Ex. 4.

Averhealth also argues that spoliation of these records pertains to only six tests (and says it plans to produce another). For this it relies on an *internal policy* to preserve records for only two years and contends that those it destroyed pre-lawsuit are therefore not at issue. But where did that policy come from? Averhealth's business is *forensic* toxicology, meaning creating records for courts. See https://averhealth.com/what-is-cap-fdt-certification/ ("our focus [is] on forensic toxicology"). Michigan's statute of limitations for these cases is three years; Massachusetts' is four. *See* Brief, p. 6. Averhealth offers no justification for its destruction of forensic records where potential claims were still alive.

#### 2. Spoliation of Plaintiff Foulger's hair sample

Averhealth states that Ms. Foulger's hair sample was not destroyed in the testing process in January 2022 but was located and photographed in July 2023 and "those photographs were produced to Plaintiffs' counsel." Resp., p. 7; Delagnes Aff. ¶¶ 32-34. Why then did Ms. Delagnes, the affiant attesting to the hair's discovery, testify *this summer* that the hair was "used up to be tested?" ECF 106-3, 111:20-112:1). She doesn't explain.

Ms. Delagnes purports to verify what she's saying now by stating that metadata "indicates that the photographs were taken on July 11, 2023." Delagnes Aff. ¶ 34. Well, where *is* that

2

metadata? Not in Averhealth's exhibits. Nor in what it produced to Plaintiffs. In fact, in what it produced, the metadata was inexplicably *stripped* in another act of spoliation. *See* Declaration of Ian Agbator, Ex. JJ. Without Averhealth's "secret" metadata, there was no way for Plaintiffs to know the photos weren't taken when the sample was first received in the lab, the only logical conclusion given that its area manager had said the sample had been destroyed. Brief, pp. 7-8.

Moreover, when Averhealth found the hair, why didn't it tell Ms. Foulger? It knew that she wanted to retest it. *See* Second Amended Complaint, ¶¶ 290-296. Instead, it waited four months to produce the metadata-less photos but not the hair. Again, it wasn't taking its discovery responsibilities seriously.

But that's not the end of the story. Ms. Delagnes states that Averhealth put the hair "in a safe place with the intent to preserve it" but now *somehow can't find it*. Delagnes Aff. ¶¶ 35-36. Where did the hair go? It obviously didn't walk out of that "safe place" on its own. Someone must have intentionally gotten rid of it, another clear act of purposeful spoliation.

### 3. Spoliation of test records

Averhealth does not deny destroying records on local computers. It simply explains how it happened. It cites its two-year destruction policy and, in the case of one employee, says his computer was wiped when he left Averhealth. Resp., pp. 4-5. Did Averhealth look at his hard drive first? Who knows? But wiping a hard drive can't be done by mistake.[3]

And, once again, what's with this two-year policy? Apparently, it only applies to local computers and paper chains-of-custody; otherwise, Averhealth would have had no records for *any tests* performed more than two years before this case was filed. But it provided Plaintiffs data packs going back nearly four years (Cornfeld Decl. ¶ 8), plus three-year old records to Dr.

---

[3] Nor does Averhealth say how these re-creations of what its staff "believe[s] the remote certifier may have done" can possibly be relied on as valid data. *See* ECF 106-27 at 1.

3

Klette. And, again, Averhealth makes no attempt to defend this two-year policy as a reasonable basis on which to destroy evidence; it's just its policy, so take it or leave it.

### B. False Statements to Courts

#### 1. Averhealth's false statement that CAP had rejected Dr. Riley's allegations

Averhealth never defends its assertion in support of its motion to dismiss that CAP rejected Dr. Riley's allegations. It never says it was correct to rely on the May 25, 2021, letter as proof of that assertion. Instead, it confusingly attempts to distinguish between the CAP complaints subject to Reference Nos. 10219 and 10459. But it never clearly explains which one relates to the probation based on Dr. Riley's allegations. *See* Resp. pp. 8-9. In fact, only 10219 does. *See* ECF 106-32 (CAP 7/29/2021 letter lifting probation and referring to No. 10219). CAP's inspection of Averhealth's lab was part of both investigations (*see* Averhealth's Ex. G, ECF 112-7), but the May 25, 2021, letter relates only to the *non*-Riley complaint, as its reference to No 10459 clearly shows. In response to this motion, Averhealth does not argue to the contrary, and the falseness of its reliance on the May 25 letter in its motion to dismiss stands unrebutted.

Averhealth does imply that, in response to the non-Riley complaint, which related in part to a pattern of false positives, CAP found there was no such pattern. *See* Resp., pp. 8-9. That is also false, as Ms. Delagnes testified. Explaining the May 25 letter, she said, "At our laboratory, we have two SOPs [Standard Operating Procedures]. So we have specimens that fall under the CLIA SOP and specimens that fall under the CAP SOP. So they're saying that this followed the CLIA SOP, so it was not applicable to their program." ECF 106-29, 227:18-22 (responding to question beginning at 227:16). (CLIA stands for "Clinical Laboratory Improvement Amendments," a separate certification program from CAP.) Thus, CAP didn't say there were no false positives, just that the complaint had to do with CLIA, not CAP.

4

### 2. Averhealth's false statement that it had produced all underlying test data

No one can take issue with a party's supplemental document production if it learns of unproduced responsive documents. That's how things are supposed to work. But another way they're supposed to work is that a party's statement to the Court must have a good-faith basis.

On February 25, 2024, Averhealth told the Court that it had produced all underlying test data for Plaintiffs' positive tests. *See* Brief, p. 13. It didn't say it "believed" it had done so. It didn't say it had produced all records it had located. It said it "ha[d] produced all the underlying data for, and evidencing, Plaintiffs' positive tests," with no qualifications. *Id.* Nonetheless, Averhealth later produced another 1,115 pages of Plaintiffs' testing documents, plus 14 large Excel spreadsheets with Plaintiffs' testing data. Cornfeld Decl., ¶ 9. And apparently some chain-of-custody documents are still on their way (they haven't arrived yet). *See* Resp., p. 6.

In response to this motion, Averhealth never apologizes to the Court for its untrue February statement. Nor does it say it believed it was true *and why*. It obviously had no basis for it.

### 3. Ms. Delagnes' false testimony

Averhealth ignores Ms. Delagnes' false testimony in a Michigan case on which it relied in its motion to dismiss. *See* Brief, pp. 15-16. It evidently has no legitimate explanation.

### C. The remedy

Averhealth argues that it didn't act with intent and thus default judgment is an unsuitable remedy. Resp. 14-15. But it never argues that it destroyed anything by mistake. Everything was with intent. And its bad faith is now even clearer, given its arguments in response to this motion.

### III. CONCLUSION

Plaintiffs reiterate the Conclusion in their Brief, p. 20. As to Averhealth's request for oral argument (which did not comply with Local Rule 7.c), Plaintiffs simply leave it to the Court's judgment as to whether it would find oral argument helpful.

Dated: September 19, 2024	Respectfully submitted,

**GOLDENBERG HELLER & ANTOGNOLI, P.C.**

By:/s/*Richard S. Cornfeld*
Richard S. Cornfeld, #31046MO
Daniel S. Levy, #66039MO
2227 S. State Route 157
Edwardsville, Illinois 62025
618.656.5150
rick@ghalaw.com
daniel@ghalaw.com

And

Anthony S. Bruning, #30906MO
Anthony S. Bruning, Jr., #60200MO
Ryan L. Bruning, #62773MO
THE BRUNING LAW FIRM, LLC
555 Washington Avenue, Suite 600
St. Louis, Missouri 63101
P. 314-735-8100 / F. 314-898-3078
tony@bruninglegal.com
aj@bruninglegal.com
ryan@bruninglegal.com

And

J.C. Pleban, MO Bar No. 63166
jc@plebanlaw.com
C. John Pleban, Mo. Bar No. 24190
cpleban@plebanlaw.com
Pleban & Associates Law LLC
2010 South Big Bend Blvd.
St. Louis, MO  63117
(314) 645-6666 – Telephone
(314) 645-7376 – Facsimile

And

Mike Arias, #115385(CA)
Arnold Wang, #204431(CA)
Craig S. Momita #163347(CA)

          Arias Sanguinetti Wang & Team, LLP
          6701 Center Drive West, 14th Floor
          Los Angeles, California 90045
          Tel: (310) 844-9696 / Fax: (310) 861-0168
          mike@aswtlawyers.com
          arnold@aswtlawyers.com
          craig@aswtlawyers.com

          *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of September, 2024, the foregoing was served by operation of the Court's electronic filing system on all counsel of record in this matter.

*/s/ Richard S. Cornfeld*